# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH; | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST MOTION TO COMPEL
## AND TO DEEM RULE 36 REQUESTS ADMITTED

Plaintiff respectfully requests that this Court enter an order compelling defendant to respond to discovery in this case, and to deem overdue requests to admit as admitted.

In support of this motion, the plaintiff states:

### Nature of The Case

1.      This lawsuit alleges that M.R.S. Associates, Inc. ("MRS") violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), by sending illegal form letters to persons who owed K-Mart money.

2.      Specifically, the letter that MRS sent to the plaintiff states that "If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter." This language is a misstatement of the debtor's verification rights under 15 U.S.C. §1692g, because the debtor may dispute and request verification of the debt for a variety of reasons, not just because she does not believe it is invalid. For example, a consumer might send a verification letter if:

1

      a.      she simply does not recognize the debt;

      b.      she questions the amount of the claimed debt or how it was

computed;

      c.      she believes that the debt is valid but that credit has not been given

for all payments made;

      d.      in the case where two or more collection agencies have sought

payment and the debtor is unsure who the creditor has authorized to act;

      e.      or any of a number of other reasons which do not require that the

debtor believe that the debt is not valid.  DeSantis v. Computer Credit, Inc., 269 F.3d 159 (2d

Cir. 2001).

      3.      In addition, the MRS's form letter is confusing and misleading with

respect to the amount the recipient must pay.  The letter gives an "account balance" at the top,

but states that "interest may accrue on unpaid balances."  The debt is a credit card, which

normally does accrue interest; however, the letter does not definitely state whether or not it does

accrue.  The letter then demands that the debtor "honor your contractual obligation," which

could be the "account balance," or the "account balance" plus interest.  Nothing informs the

debtor how to compute or find out the amount to be paid.  See Chuway v. National Action

Financial Services, 362 F.3d 944 (7th Cir. 2004).

### Local Rule 12(k) and 37.2 Certification

      4.      Todd Stelter for defendant and Alexander Burke for plaintiff have

conferred in good faith via telephone and email with respect to this discovery (Exhibit A), and

plaintiff has exhausted all resources to procure this discovery.  As of the filing of this motion,

defendant has not responded to plaintiff's discovery requests at all, has not given adequate reason why, and has not given indication of when it would, or could, respond.

5.      On August 19, 2004, plaintiff and defendant agreed via email that plaintiff and defendant's first discovery responses would originally be due within 30 days, which date was September 20, 2004. (Exhibit B). Plaintiff and defendant subsequently agreed to an extension for both parties until September 24, 2004. Plaintiff responded to discovery on that date, and requested that defendant fax its discovery responses to plaintiff on that date. (Exhibit C). Plaintiff received no indication that defendant wanted or needed more time.

6.      On October 4, 2004, Mr. Burke, again spoke with Mr. Stelter on the telephone regarding this outstanding discovery and requests to admit. Mr. Burke initiated the discussion with a letter (Exhibit D) pursuant to Local Rules 12(k) and 37.2, because Mr. Stelter had been forming a practice of not returning Mr. Burke's telephone calls. Mr. Burke reminded Mr. Stelter that the discovery was two weeks late, and that the requests to admit had defaulted. Mr. Stelter told Mr. Burke that he was aware of this, and that he needed his client's approval, and that he did not yet have it. Mr. Burke agreed to another week-long extension for the discovery responses, until October 8, 2004, and informed Mr. Stelter that if he did not receive responses by that date, he would be forced to file a motion to compel. Mr. Stelter did not commemorate this conversation through written confirmation.

7.      Defendant has still not responded to the discovery, and has made no effort to request another extension. That these discovery talks have not been successful is through no fault of plaintiff. Enough is enough. Plaintiff has exhausted his resources, and requests that this Court compel defendant to respond, and deem overdue requests to admit as admitted for the

3

purposes of this case.

### Discovery Standard

8.    All of the information sought in the Plaintiff's First Discovery Requests is
calculated to aid in the speedy disposal of this case.  "Mutual knowledge of all the relevant facts
gathered by both parties is essential to proper litigation. To that end, either party may compel the
other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507
(1947).  The Rules have broadened the scope of discovery to "any matter, not privileged, that is
relevant to the claim or defense of any party.... Relevant information need not be admissible at
the trial if the discovery appears reasonably calculated to lead to the discovery of admissible
evidence." Fed.R.Civ.P. 26(b)(1).

9.    "[T]he discovery-deposition provisions of the Federal Rules, were
intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more
a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Goldman
v. Checker Taxi Co., 325 F.2d 853, 855 (7th Cir. 1963)(internal citations and quotations omitted).
Furthermore, complete interrogatory responses may help the parties avoid unnecessary
depositions and further cost to the parties.  In re Shopping Carts Antitrust Litigation, 95 F.R.D.
299, 307-308 (S.D.N.Y. 1982).

Furthermore, failure to timely object to discovery requests results in waiver of any
potential objections.  "Having failed to answer or make specific legitimate objections to
particular interrogatories within the time allowed, defendants were held to have waived
objections to all interrogatories." Hobley v. Burge, 2003 U.S. Dist. LEXIS 20585 (N.D.Ill. Nov.
12, 2003) (internal quotations omitted).

This Court should compel production of the materials sought herein to promote justice and quick resolution of this matter.

## Requests to Admit

10. Fed.R.Civ.P. 36 permits a party to propound requests to admit upon another party. "The matter[s requested are] admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed.R.Civ.P. 36(a).

11. In other words, "[a] party who fails to respond to requests for admissions within 30 days is deemed to have admitted those requests. Walsh v. McCain Foods, 81 F.3d 722, 726 (7th Cir. 1996).

12. Because defendant has not responded within the agreed time period, and did not bother to request another extension, all of the requests to admit propounded should be deemed admitted. After such extensions and prior warning, it certainly is not up to plaintiff to again remind defendant that these requests to admit are overdue: they have simply been ignored. Such flagrant disregard for the discovery process should not be tolerated, and these requests to admit should be deemed admitted.

## Interrogatories

13. Interrogatory 1 requests that defendant "State the name, address, title and job description of each officer, director and employee (present or former) of defendant who authorized, approved, or was aware of the letter in the form used in Exhibit A and the date such

person first authorized, approved or was aware of the letter in the form used in <u>Exhibit A</u>."
<u>Exhibit A</u> is the plaintiff's letter. Since this case contests the particular wording in plaintiff's letter, and the amount requested in the letter, plaintiff is entitled to enquire as to the drafting of the letter.

14. Interrogatory 2 requests that defendant "Identify by code name or number and date sent all documents transmitted to plaintiff in an effort to collect the debt described in <u>Exhibit A</u>." This request relates to information about the plaintiff herself, and is directed at ascertaining what code system defendant uses on its letters. That information will assist plaintiff in reformulating the class definition, if needed.

15. Interrogatory 3 requests that defendant "Describe, step-by-step, the process which resulted in <u>Exhibit A</u> being transmitted to plaintiff, beginning with the date and method of transmission of debtor information from the person that sent it, and including all other steps with respect to, for example, computer tapes or other media delivered (when, by whom, where and to whom); the content of computer tape or media; data input (where and by whom); computer entry or other means of directing transmission letters (where and by whom entry made), the printing of <u>Exhibit A</u> itself, (where, how and by whom); the mailing of <u>Exhibit A</u> (from where and by whom), and Identify all persons who participated in the process."

16. This information is relevant because the production of plaintiff's letter is directly at issue: plaintiff has alleged that the letter is inadequate because it does not state the amount of the debt sufficiently clearly, and because it is confusing. Purposefully designing a letter to be confusing mitigates against defendants in determining whether the letter contains an FDCPA violation. See <u>Johnson v. Revenue Management Corp.</u>, 169 F.3d 1057, 1060 (7th Cir.

1999).

17.     Interrogatory 4 requests that defendant "Describe what further collection steps are taken if no response is received to letters in the form represented by <u>Exhibit A</u>." This is important in order for the plaintiff to understand the internal operations of defendant. That information is relevant to determine if this case is proper for class action status.

18.     Interrogatory 5 requests that defendant "Describe all document destruction and retention policies of the defendant." Document request 15 requests documents relating to document destruction. These requests are aimed at the possibility that relevant documents have already been destroyed, and at preventing further or future destruction of relevant documents.

19.     Interrogatory 6 requests "State whether information regarding your accounts is retrievable by computer and, if so, each field by which data is searchable or retrievable. State whether your computer can determine the number of instances in which the form letter represented by <u>Exhibit A</u> was mailed within a specified period to collect a K-Mart debt, and the persons to whom such letters were sent."

20.     This is aimed at determining how defendant's computers work, so that plaintiff may make a follow-up request directed at a class easily ascertainable by use of defendant's computers.

21.     Interrogatory 7 requests a number for the class defined in the complaint, and a class list: "State the number and name and address of the  (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or

7

before June 20, 2004." This information is relevant to determine numerosity in this case.

22.     Interrogatory 12 requests information regarding whether defendant plans to bring a bona fide error defense, pursuant to 15 U.S.C. § 1692k(c): "Explain the basis for your claim that any violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures are maintained and how they are adapted to avoid the matters complained of." If defendant has no procedures, or inadequate procedures, it cannot assert that its violation was the result of a bona fide error. Contrariwise, if defendant had procedures that were not followed, they cannot assert this defense.

## Document Requests

23.     Document requests 1 and 2 request documents relating to plaintiff: "All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff." and "All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff." These documents are clearly relevant to plaintiff's individual claim, and should be compelled.

24.     Document request 3 requests "All documents relating to any testing done of defendant's collection letters (surveys, focus groups, readability analysis, etc.)." Testing on defendant's letters is important in this case. For example, if defendant did testing on how best to confuse consumers with verbiage with respect to consumer rights, this would be relevant to how confusing the letter is.

25.     Document requests 4 through 6 request manuals and internal memoranda

relating to FDCPA compliance, and the plaintiff's letter specifically. This information will be readily available from the marketing department, and by doing a search of internal memoranda (including a search of emails) relating to FDCPA compliance. The request is relevant to damages, as delineated in 15 U.S.C. § 1692k(b)(2):

> In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors -
>
> > (2) in any class action..., the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

The court should compel this discovery.

      26.    Document Requests 8 through 11 and 16 request information regarding communications with external agencies and courts relating to the defendants' compliance or non-compliance with the FDCPA, or other collection activities. These requests are calculated to discover whether the defendants had knowledge or notice that the print complained of was (or was not) difficult to read for consumers. These documents also relate to class damages under §1692k(b)(2), supra.

      27.    Document requests 12 and 13 request information relating to the printing and mailing of letters such as plaintiff's. Request 12 relates to any third party that may have been involved in plaintiff's letter, and 13 requests documents that may give plaintiff a better idea of what letters were sent where.

      28.    Request 14 "All organizational charts of defendant," will help plaintiff figure out what persons, if any, should be deposed in this case.

      29.    Request 22 requests "One copy of each different form letter defendant

sends to debtors." This is relevant to determine whether defendants' violations are persistent and frequent, which are relevant to class damages under 15 U.S.C. § 1692k(b)(1), supra.

30.     Request 23 asks for "The complete file, including but not limited to computer information, for all (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004."

31.     This information is relevant because the plaintiff must have the names and addresses of the class members in order to notify the class.

### Net Worth Discovery

32.     The plaintiff propounded several interrogatories and document requests related to the defendant's net worth. The FDCPA puts the defendant's net worth directly in issue in a class case. 15 U.S.C. § 1692k states that the maximum damages is "the lesser of $500,000 or 1 per centum of the *net worth* of the debt collector." § 1692k(a)(2)(B)(ii). Plaintiff must be able to ascertain whether the net worth of the defendants is sufficiently high to warrant filing her motion for class certification. This is therefore an issue that is relevant to the Court's decision to certify a class, and therefore should be produced. If there is a zero or negative net worth, then there would be no class recovery, and plaintiff would not file a motion for class certification.

33.     Production of this information is proper at this stage of the proceeding. Scott v. Universal Fidelity Corp., 42 F.Supp.2d 837 (N.D.Ill.1999)(compelling net worth information in FDCPA case), abrogated on other grounds by Saunders v. Jackson, 299 F.3d 998 (7th Cir. 2000); Mailloux v. Arrow Financial Services, LLC., 2002 WL 246771 (E.D.N.Y. Feb.

21, 2002)(In FDCPA class action, net worth is "unquestionably relevant and discoverable.").

WHEREFORE, plaintiff respectfully requests that this Court enter an order compelling defendant to respond to discovery in this case, and to deem overdue requests to admit as admitted.

Respectfully submitted,

Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

J:\Case\mrs11.388\pleading\mot.compel.wpd

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH, | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

TO:    David M Schultz, Esq.
       Todd Stelter, Esq.
       HINSHAW & CULBERTSON, LLP
       222 N LaSalle St, Ste 300
       Chicago, IL 60601-1081
       (312) 704-3000
       (312) 704-3001 FAX

   **PLEASE TAKE NOTICE** that on Wednesday, October 20, 2004, at 9:00 a.m. or as soon thereafter as we may be heard, we will appear before Judge Reinhard, Courtroom 220, 211 S. Court St., Rockford, IL 61101, and present **PLAINTIFF'S FIRST MOTION TO COMPEL AND TO DEEM RULE 36 REQUESTS ADMITTED**, a copy of which is attached and hereby served upon you.

Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603



(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Alexander H. Burke, certify that on October 12, 2004 I had a copy of this notice and the documents referred to therein sent via facsimile and U.S. Mail to the person to whom this notice is addressed.

Alexander H. Burke