**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ALICE RUTH; | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiffs have requested that this Court enter an order determining that this Fair Debt

Collection Practices Act ("FDCPA") action may proceed as a class action. This memorandum is

submitted in support of that motion.

**I.    NATURE OF THE CASE**

This lawsuit alleges that M.R.S. Associates, Inc. ("MRS") violated the Fair Debt

Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), by sending illegal form letters to

persons who owed K-Mart money. Specifically, the letter sent to plaintiff (attached hereto as an

exhibit to Appendix A) states that "If for some reason you believe this debt is not valid, please

review your rights listed at the bottom of this letter." The quoted language is a misstatement of the

debtor's exercise of verification rights under 15 U.S.C. §1692g. The debtor may dispute and request

verification of the debt for a variety of reasons, not just because she does not believe it is invalid.

For example, a consumer might send a verification letter if:

a.    she simply does not recognize the debt;

1

b.      she questions the amount of the claimed debt or how it was computed;

c.      she believes that the debt is valid but that credit has not been given for all payments made;

d.      in the case where two or more collection agencies have sought payment and the debtor is unsure who the creditor has authorized to act;

or any of a number of other reasons which do not require that the debtor believe that the debt is not valid. DeSantis v. Computer Credit, Inc., 269 F.3d 159 (2d Cir. 2001).

In addition, the letter in Appendix A is confusing and misleading with respect to the amount the recipient must pay. The letter gives an "account balance" at the top, but states that "interest may accrue on unpaid balances." The debt is a credit card, which normally does accrue interest; however, the letter does not definitely state whether or not it does accrue. The letter then demands that the debtor "honor your contractual obligation," which could be the "account balance," or the "account balance" plus interest. Nothing informs the debtor how to compute or find out the amount to be paid. See Chuway v. National Action Financial Services, 362 F.3d 944 (7th Cir. 2004).

## II.    THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors". 15 U.S.C. §1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also

2

requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the --

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." Avila v. Rubin, 84 F.3d 222, 227 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254. 1257(7th Cir. 1994). Even the "naive and credulous" are entitled to protection. Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993). The standard is an objective one -- whether the plaintiff or any class member was misled is not an element of a cause of action. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 392 (D.Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

3

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D.N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D.Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D.Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D.Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. at 505.

## III.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in Eshaghi v. Hanley Dawson Cadillac Co., 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

**In a large and impersonal society, class actions are often the last barricade of**

**consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766)

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. Shea v. Codilis, 99 C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill. Mar. 27, 2000); Roe v. Publishers Clearing House, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Nielsen v. Dickerson, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); Sledge v. Sands,182 F.R.D. 255 (N.D. Ill. 1998); Shaver v. Trauner, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); Davis v. Suran, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. July 31, 1998); Francisco v. Doctors & Merchants Credit Service, Inc., 98 C 716, 1998 WL 474107, 1998 U.S. Dist. LEXIS 12234 (N.D. Ill., July 29, 1998); Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., March 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998); Wells v. McDonough, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill. Mar. 23, 1998); Miller v. Wexler & Wexler, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); Wilborn v. Dun & Bradstreet, 180 F.R.D. 347 (N.D. Ill. 1998); Arango v. GC Services LP, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); Avila v Van Ru Credit Corp.,94 C 3234, 1995 WL 683775,

5

1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), aff'd, Avila v. Rubin, supra, 84 F.3d 222; Carr v. Trans Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.   THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A.   Rule 23(a)(1) -- Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D.Ill.1986). Where the class numbers at least 40, joinder is generally considered impracticable. Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25

6

sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient);

Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).

In this case, discovery has revealed that there are 3,806 persons who meet the class

definition. (Appendix B). This number far exceeds the requisite 25-40 persons. Numerosity is met.

**B.     Rule 23(a)(2) -- Commonality; and**
**Rule 23(b)(3) -- Common**
**Questions of Law or Fact Predominate**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law or fact. Rule

23(b)(3) requires that the questions of law or fact common to all members of the class predominate

over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual

link between all class members and the defendant for which the law provides a remedy. Halverson

v. Convenient Food Mart, Inc., 69 F.R.D. 331 (N.D. Ill. 1974). Where a question of law involves

"standardized conduct of the defendants toward members of the proposed class, a common nucleus

of operative facts is typically presented, and the commonality requirement . . . is usually met."

Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984); Patrykus v. Gomilla, 121 F.R.D.

357, 361 (N.D.Ill. 1988). The authorities hold that cases dealing with the legality of standardized

conduct are generally appropriate for resolution by means of a class action because the document or

conduct is the focal point of the analysis. Halverson, 69 F.R.D. 331; Haroco v. American Nat'l Bank,

121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); Kleiner v. First Nat'l Bank,

97 F.R.D. 683 (N.D.Ga. 1983) (same); Heastie, 125 F.R.D. 669 (execution of home improvement

financing documents in sequence that evaded consumers' rescission rights). This is true even though

the nature and amount of damages may differ among the members of the class. Id.

In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at 335, is that defendant sent over 3,800 persons in the class the same letter. The dispositive issue -- indeed, the only issue -- is whether the form letters violate the FDCPA.

The only individual issue is the identification of the consumers who were sent the letters. If, as is likely, defendant used a computer to generate the letters, it is simply necessary to instruct the computer to print a list of addressees. Defendant has already provided the number of persons who meet the class definition, indicating that such a computer query is possible. Even if it is necessary to look at debtors' files, questions readily answerable from defendant's files do not present an obstacle to class certification. Heastie v. Community Bank, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank"); Wilkinson v. F.B.I., 99 F.R.D. 148, 157 (C.D.Cal. 1983) ("a need for individual proof of damages would not preclude class certification. `The amount of damages is invariably an individual question and does not defeat class treatment.'"); Franklin, 102 F.R.D. at, 949 (similar).

**C.**     **Rule 23(a)(3) -- Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

8

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been sent the same letters as the named plaintiffs.

**D.**      **Rule 23(a)(4) -- Adequacy of Representation**

The rule also requires that the named plaintiffs provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiffs understand the obligations of a class representative, and have retained experienced counsel, as is indicated by Appendix C, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiffs and the class members seek money damages as the result of defendants' unlawful collection demands. Given the identity of claims between plaintiffs and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiffs and those of the class.

**E.**      **Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy.**

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D.

9

Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. Scholes, 143 F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, persons from whom defendant is attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be

**overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

<u>Lake v. First Nationwide Bank</u>, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. <u>Zanni</u>, 119 F.R.D. 32.

## V.     **CONCLUSION**

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiffs respectfully request that this Court certify this action as a class action.

Respectfully submitted,

_Alexander H. Burke_
Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A



M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002



Office Hours :
Mon - Thurs  8am - 9pm E
Fri  - 8am - 5pm  EST
Sat  - 8am - 12pm EST
Sun  - 9am - 12pm EST

January 19, 2004

M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

04019377-001   21982
ALICE RUTH
407 GOODELL CT
ROCK FALLS IL 61071-1360

*FEB 0 2 2004*

| CLT ACCT # : | MRS ACCT # : | ACCOUNT BAL. |
|---|---|---|
| 5307582055271676 | 04019377 | $634.36 |

RE : CAPITAL ONE (K-MART CARD)

(Interest may accrue on unpaid balances)

--

✄ IMPORTANT: TO RECEIVE PROPER CREDIT BE SURE TO ENCLOSE THIS PORTION WITH YOUR PAYMENT IN FULL ✄
SEE REVERSE SIDE FOR CREDIT CARD AND WESTERN UNION PAYMENT INFORMATION

RE: CAPITAL ONE (K-MART CARD)
CLT ACCT#: 5307582055271676
MRS ACCT#: 04019377
**ACCOUNT BALANCE : $634.36**    (Interest may accrue on unpaid balances)

| M.R.S.ASSOCIATES, INC. |
| 3 EXECUTIVE CAMPUS, SUITE 400 |
| CHERRY HILL NJ 08002 |

Dear ALICE RUTH,

The above referenced client has placed your account with our office for collection. This decision was made due to you
continued failure to meet your contractual obligation. If for some reason you believe this debt is not valid, please review
your rights listed at the bottom of this letter.

If the debt is not in dispute, then you have an important decision to make: honor your contractual obligation and receive
significant positive benefits from satisfying the debt or continue not honoring your contractual obligation and face the
possibility of negative consequences. The negative consequences are determined by the terms and conditions of you
contract, the applicable laws in your state, and our client's willingness to incur additional costs and expenses (which may i
turn be passed on to you!).

Clearly our client would prefer to work with you than against you, however, the decision to proceed with further collection
activity is determined by you and your willingness to honor your commitment.

**Which would you prefer the positive benefits or negative consequences? The choice is yours!**

### IMPORTANT CONSUMER INFORMATION

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion
thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice
that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy
of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after
receiving this notice, this office will provide you with the name and address of the original creditor, if different from the
current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collection agency.

Sincerely,

*Dawn Hasenjager*

Dawn Hasenjager
Collection Manager 1-877-508-6306
M.R.S.ASSOCIATES, INC.

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION

# APPENDIX B

# HINSHAW

& CULBERTSON LLP

November 8, 2004

Alex Burke
EDELMAN, COMBS, LATTURNER & GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603

**ATTORNEYS AT LAW**
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081

312-704-3000
312-704-3001 (fax)
www.hinshawlaw.com

   **Re: Case Name: Ruth v. MRS**

Dear Alex:

Please be advised that MRS indicates that the estimated class size, pursuant to your class definition in the above captioned matter, consists of 3,806 letters. If you have any additional questions, please contact me.

      Sincerely,

      HINSHAW & CULBERTSON LLP

      Todd P. Stelter
      tstelter@hinshawlaw.com

:tps

cc: David M. Schultz

5844468v1 843461

Arizona California Florida Illinois Indiana Minnesota Missouri New York Oregon Wisconsin

# APPENDIX C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH; | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by the laws of the United States (28 U.S.C. §1746), that the following statements are true:

1.     Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin and Michelle R. Teggelaar, and 9 associates.

2.     Daniel A. Edelman is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Predatory Lending and Potential Class Actions, ch. 6 of Illinois Mortgage Foreclosure Practice (IICLE 2003); author of Illinois Consumer Law, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); author of Predatory Lending Litigation in Illinois (2001); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12

1

Rev. of Banking & Financial Services 71 (April 24, 1996); author of <u>Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers</u>, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, <u>Attorney Liability Under the Fair Debt Collection Practices Act</u> (Chicago Bar Ass'n 1996); author of <u>The Fair Debt Collection Practices Act: Recent Developments</u>, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994).

3.     Cathleen M. Combs is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs & Latturner in early 1991 as an associate. Decisions in which she was involved prior to joining the firm include: <u>Johnson v. Heckler</u>, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D.Ill. 1983); <u>Sanders v. Shephard</u>, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); <u>Maller v. Cohen</u>, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); <u>Wright v. Department of Labor</u>, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); <u>Barron v. Ward</u>, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); <u>City of Chicago v. Leviton</u>, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); <u>Jude v. Morrissey</u>, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983).

4.     James O. Latturner is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwantes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in <u>Federal Practice Manual for Legal Services Attorneys</u> (M. Masinter, Ed., National Legal Aid and Defender Association 1989); <u>Governmental Tort Immunity in Illinois</u>, 55 Ill.B.J. 29 (1966); <u>Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations</u>, 2 Loy.Consumer L.Rep. 64 (1990), and <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.

5.     Tara L. Goodwin is a graduate of the University of Chicago (B.A., 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., 1991). She has been with the firm since her graduation and has participated in many of the cases described below.

6.     Michelle R. Teggelaar is a graduate of the University of Illinois (B.A., 1993), and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). She began working for the firm during law school, and was made a principal in June 2004. She has participated in many of the cases described below.

7.     We also have 13 legal assistants, as well as other support staff.

8.     Since its inception, the firm has recovered more than $500 million for consumers.

9.     The types of cases handled by the firm are illustrated by the following:

10.     <u>Mortgage charges</u>: The firm has been involved in some 30 cases complaining of illegal charges on mortgages. Decisions in these cases include: <u>Metmor Financial, Inc. v. Eighth Judicial District Court</u>, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); <u>GMAC Mtge. Corp. v. Stapleton</u>, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); <u>Leff v. Olympic Fed. S. & L. Ass'n</u>, 1986 WL 10636 (N.D.Ill. 1986); <u>Aitken v. Fleet Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); <u>Poindexter v. National Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); <u>Sanders v. Lincoln Service Corp.</u>, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); <u>Robinson v. Empire of America Realty Credit Corp.</u>, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); <u>In re Mortgage Escrow Deposit Litigation</u>, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); <u>Greenberg v. Republic Federal S. & L. Ass'n</u>, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

11.     The recoveries in the escrow overcharge cases alone are over $250 million. <u>Leff</u> was the seminal case on mortgage escrow overcharges.

12.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

13.     <u>Automobile sales and financing practices</u>: The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.     Hidden finance charges resulting from pass-on of discounts on auto purchases. <u>Walker v. Wallace Auto Sales, Inc.</u>, 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

b.     Misrepresentation of amounts disbursed for extended warranties. <u>Taylor v. Quality Hyundai, Inc.</u>, 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); <u>Slawson v. Currie Motors Lincoln Mercury, Inc.</u>, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); <u>Cirone-Shadow v. Union Nissan, Inc.</u>, 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); <u>Chandler v. Southwest Jeep-Eagle, Inc.</u>, 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); <u>Shields v. Lefta, Inc.</u>, 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

c.     Spot delivery. <u>Janikowski v. Lynch Ford, Inc.</u>, 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); <u>Diaz v. Westgate Lincoln Mercury, Inc.</u>, 1994 U.S.Dist. LEXIS

16300 (N.D.Ill. 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

        d.      Force placed insurance. Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

        e.      Improper obligation of cosigners. Lee v. Nationwide Cassell, 174 Ill.2d 540, 675 N.E.2d 599 (1996); Taylor v. Trans Acceptance Corp., 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

        f.      Evasion of FTC holder rule. Brown v. LaSalle Northwest Nat'l Bank, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

        14.      These cases also had a substantial effect on industry practices. The warranty cases, such as Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler, and Shields, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

        15.      Other consumer credit issues: The firm has also brought a number of other Truth in Lending and consumer credit cases, involving such issues as:

        a.      Phony nonfiling insurance. Edwards v. Your Credit Inc., 148 F.3d 427, 1998 U.S.App. LEXIS 16818 (5th Cir. 1998); Adams v. Plaza Finance Co., 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); Johnson v. Aronson Furniture Co., 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997).

        b.      The McCarran Ferguson Act exemption. Autry v. Northwest Premium Services, Inc., 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

        c.      Loan flipping. Emery v. American General, 71 F.3d 1343 (7th Cir. 1995).      Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

        d.      Home improvement financing practices. Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990). Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

4

      e.      Arbitration clauses. <u>Wrightson v. ITT Financial Services</u>, 617 So.2d 334 (Fla. 1st DCA 1993).

      f.      Insurance packing. <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

      16.     <u>Automobile leases</u>: The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases. Decisions in these cases include <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); <u>Kedziora v. Citicorp Nat'l Services, Inc.</u>, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); <u>Johnson v. Steven Sims Subaru and Subaru Leasing</u>, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); <u>McCarthy v. PNC Credit Corp.</u>, 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); <u>Kinsella v. Midland Credit Mgmt., Inc.</u>, 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); <u>Highsmith v. Chrysler Credit Corp.</u>, 18 F.3d 434 (7th Cir. 1994); <u>Black v. Mitsubishi Motors Credit of America, Inc.</u>, 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); <u>Simon v. World Omni Leasing Inc.</u>, 146 F.R.D. 197 (S.D.Ala. 1992).

      17.     <u>Lundquist</u> and <u>Highsmith</u> are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the <u>Lundquist</u> case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

      18.     <u>Collection practices</u>: The firm has brought a number of cases under the Fair Debt Collection Practices Act. Decisions in these cases include: <u>Jenkins v. Heintz</u>, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); <u>Johnson v. Revenue Management Corp.</u>, 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); <u>Keele v. Wexler & Wexler</u>, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); <u>Maguire v. Citicorp Retail Services, Inc.</u>, 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); <u>Young v. Citicorp Retail Services, Inc.</u>, 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); <u>Charles v. Lundgren & Assocs., P.C.</u>, 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); <u>Avila v. Rubin</u>, 84 F.3d 222 (7th Cir. 1996), aff'g <u>Avila v. Van Ru Credit Corp.</u>, 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); <u>Tolentino v. Friedman</u>, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); <u>Blakemore v. Pekay</u>, 895 F.Supp. 972 (N.D.Ill. 1995); <u>Oglesby v. Rotche</u>, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); <u>Laws v. Cheslock</u>, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);<u>Davis v. Commercial Check Control, Inc.</u>, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); <u>Hoffman v. Partners in Collections, Inc.</u>, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); <u>Vaughn v. CSC Credit Services, Inc.</u>, 1994 U.S.Dist. LEXIS

2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S. Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995).

19. Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. Avila v. Rubin is a leading decision on phony "attorney letters."

20. Class action procedure: Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

21. Bankruptcy: Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 99-2291 (1st Cir., October 27, 2000).

22. Landlord-tenant: The firm has brought four class actions against landlords for failing to pay interest on security deposits or commingling security deposits.

23. Some of the other reported decisions in our cases include: Elder v. Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge., Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc., 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); Mountain States Tel. & Tel. Co. v. District Court, 778 P.2d 667 (Colo. 1989); Disher v. Fulgoni, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); Harman v. Lyphomed, Inc., 122 F.R.D. 522 (N.D.Ill. 1988); Haslam v. Lefta, Inc., 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); Source One Mortgage Services Corp. v. Jones, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

24. Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. Elder v. Coronet Insurance held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

Executed at Chicago, Illinois, on November 9, 2004.

_____
Daniel A. Edelman