## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH, | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | ~~Judge Philip G. Reinhard~~ |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

### NOTICE OF MOTION

IMAGED

TO: David M Schultz, Esq.
Todd P. Stelter, Esq.
HINSHAW & CULBERTSON, LLP
222 N LaSalle St, Ste 300
Chicago, IL 60601-1081
(312) 704-3000
(312) 704-3001 FAX

**PLEASE TAKE NOTICE** that on June 29, 2005, at 1:30 p.m. or as soon thereafter as we may be heard, we will appear before Magistrate Judge Mahoney, Courtroom 206, 211 S. Court St., Rockford, IL 61101, and present **PLAINTIFF'S MOTION TO STRIKE BONA FIDE ERROR DEFENSE OR ALTERNATIVELY TO COMPEL DISCOVERY**, a copy of which is attached hereto and hereby served upon you.

Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

1

AS2

## CERTIFICATE OF SERVICE

I, Alexander H. Burke, hereby certify that, on June 15, 2005 I caused to be served a true and correct copy of the attached document via U.S. Mail and facsimile (without appendices) to the party to whom this notice is addressed.

Alexander H. Burke

2

AS2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH; | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S MOTION TO STRIKE BONA FIDE ERROR DEFENSE
### OR ALTERNATIVELY TO COMPEL DISCOVERY

Plaintiff respectfully requests that this Court enter an order striking defendant's bona fide error defense, or alternatively, compel the depositions of all persons related to the bona fide error defense, particularly Daniel McCusker, Jeff Freedman and the ACA attorney who reviewed the plaintiff's letter.

In support of this motion, the plaintiff states:

**I.     Nature of The Case**

This lawsuit alleges that M.R.S. Associates, Inc. ("MRS") violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), by sending illegal form letters to persons who owed K-Mart money. (Appendix A). Specifically, the letter that MRS sent to the plaintiff states that "If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter." This language is a misstatement of the debtor's verification rights under 15 U.S.C. §1692g, because the debtor may dispute and request verification of the debt for a variety of reasons, not just because she does not believe it is invalid.

1

For example, a consumer might send a verification letter if:

        a.     she simply does not recognize the debt;

        b.     she questions the amount of the claimed debt or how it was

computed;

        c.     she believes that the debt is valid but that credit has not been given

for all payments made;

        d.     in the case where two or more collection agencies have sought

payment and the debtor is unsure who the creditor has authorized to act;

        e.     or any of a number of other reasons which do not require that the

debtor believe that the debt is not valid. DeSantis v. Computer Credit, Inc., 269 F.3d 159 (2d

Cir. 2001).

In addition, the MRS's form letter is confusing and misleading with respect to the

amount the recipient must pay. The letter gives an "account balance" at the top, but states that

"interest may accrue on unpaid balances." The debt is a credit card, which normally does accrue

interest; however, the letter does not definitely state whether or not it does accrue. The letter

then demands that the debtor "honor your contractual obligation," which could be the "account

balance," or the "account balance" plus interest. Nothing informs the debtor how to compute or

find out the amount to be paid. See Chuway v. National Action Financial Services, 362 F.3d

944 (7th Cir. 2004).

## II.    The Bona Fide Error Defense

The FDCPA provides a bona fide error defense for defendants in 15 U.S.C. §

1692k(c), which states:

(c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

In interrogatory 12 of her first set of discovery, plaintiff requested that defendant:

Explain the basis for your claim that any violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures are maintained and how they are adapted to avoid the matters complained of. [Appendix B.]

Document requests 16 and 4 requested:

All documents relating to the maintenance by defendant of procedures adapted to avoid any violation of the Fair Debt Collection Practices Act.

All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices relating to the Fair Debt Collection Practices Act, or state statutes regulating debt collectors or debt collection. [Appendix B.]

Because plaintiff has never received an adequate response despite this information being compelled, and because defendant appears to be withholding relevant information, plaintiff moves to strike any bona fide error defense defendant may have.[1]

## III.    History of the Case, Bona Fide Error Discovery and Rule 37.2 Compliance

Judge Reinhard certified this action as a class action on June 3, 2005. Discovery is set to close on June 30, 2005. Plaintiff originally propounded discovery on August 18, 2004. (Appendix B). Plaintiff brought her first motion to compel on October 13, 2004, because defendant had not responded to discovery at all. This motion was withdrawn because defendant

---

[1] Defendant's answer does not assert any affirmative defenses. However, since the parties have been taking discovery on the bona fide error issue, and because defendant has indicated in discovery that it reserves the right to bring it, plaintiff believes striking the affirmative defense is appropriate.

3

finally responded on October 14, 2004. (<u>Appendix C</u>). Those responses included the the

following description of defendant's bona fide error defense:

> Defendant reserves the right to present defenses as provided for by the applicable rules and court orders.

Plaintiff brought another motion to compel. Judge Mahoney held a discovery

status on January 14, 2005. At that hearing, the Court continued plaintiff's motion to compel and

extended the discovery deadline from March 1, 2005 to April 15, 2005 at defendant's request.

The Court at that time also scheduled a discovery conference for April 8, 2005. On March 10,

2005, defendant sent plaintiff a letter (<u>Appendix D</u>), which supplements some of defendant's

discovery responses, but not the bona fide error defense interrogatory. It states that the document

requests regarding compliance manuals are too broad for defendant to answer. (Appendix D at

#5). On April 6, 2005 defendant sent plaintiff <u>Appendix E</u>, which purports to further supplement

defendant's discovery responses. The response to interrogatory 12 does not change at all:

> Defendant reserves the right to present defenses as provided for by the applicable rules and court orders.

Although the objections were altered, the responses to bona fide error document requests did

include an ACA Manual that, in coordination with Gulf Insurance Company (MRS' insurance

carrier), specifies that all form debt collection letters (such as plaintiff and the class') must be

preapproved by an ACA approved attorney.

On April 8, 2005, Judge Denlow held a discovery conference and hearing on

plaintiff's second motion to compel via video link from Chicago. In front yard of the courthouse

in Rockford, counsel had a meeting to discuss discovery, and the motion to compel before the

Court that day. Defense counsel told plaintiff's counsel for the first time that insurance coverage

had been denied for this case, and notified plaintiff's counsel that there was a letter explaining such denial. Plaintiff's counsel requested the letter. Defense counsel refused, basing his refusal to produce the letter on "attorney-client privilege."

In open court, Judge Denlow granted in part and denied in part plaintiff's motion to compel, and ordered that defendant provide to plaintiff (1) an amended response to plaintiff's interrogatory requesting a description of MRS' bona fide error defense, (2) permit the depositions of all persons related to the bona fide error defense, (3) all documents relating to the bona fide error defense, (4) a copy of the letter from MRS' insurance company denying coverage for this case, (5) a copy of the insurance policy, and (6) an explanation of why MRS initially denied that Exhibit B to the complaint was an accurate copy of the reverse of plaintiff's letter and then changed its story.[2] The Court denied plaintiff's motion to deem requests admitted, and stayed discovery on the issue of damages. The parties were also ordered to exchange settlement offers on specified dates.

Plaintiff complied with the Court's order regarding sending a settlement offer. On April 13, 2005, plaintiff noticed the depositions of Michael Meyer, Dan Divece, Daniel J. McCusker, Stewart Miller and Kelli Coia, the only persons named by defendant as persons how had any knowledge of the bona fide error defense to that point. Appendix F. Defense counsel cancelled these depositions (without explanation) on approximately May 6, 2005, during a conference call with several other attorneys from plaintiff's law firm and defense counsel's law firm, initiated by plaintiff in an attempt to consolidate the depositions to save time and resources.

---

[2] Plaintiff's counsel has requested a copy of this transcript, but has not received it by the date of this filing. Plaintiff requests leave to supplement the record with that transcript once it becomes available.

On May 2, 2005, in response to Judge Denlow's order compelling discovery, defendant sent plaintiff the letter and documents attached as <u>Appendix G</u>. The new description of defendant's bona fide error defense was:

> Please be advised that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself and as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide, which has already been produced. There are no specific manuals, memoranda, instructions or other documents specifically relating to the allegations in plaintiff's complaint. MRS belongs to ACA, CLLA and NARCA, which also provide continuing updates as to FDCPA law. The letters that MRS sends out are separately reviewed and approved by the client, by Dan McCusker, by Jeff Freedman, and also by attorney, Ronald Jacobs, prior to printing and mail, in order to insure [sic] compliance.

Attached to the letter were a letter from Gulf Insurance Company to Dan McCusker, general counsel to MRS, denying coverage for this case, and the insurance policy itself, satisfying those portions of Judge Denlow's order. Plaintiff immediately followed up on May 6, 2005, challenging the sufficiency of the letter with respect to MRS' duties under Judge Denlow's order compelling discovery. <u>Appendix H</u>.

Defendant never responded to the May 6, 2005 letter.

Plaintiff again followed up on June 7, 2005, requesting that MRS remedy the noncompliance, and permit the depositions requested. On June 10, 2005, MRS sent the letter attached as <u>Appendix I</u>. This letter states that plaintiff was only permitted to take the deposition of Michael Meyer, the Chief Information Officer / Chief Security Officer of MRS. The letter "permitting" this deposition went like this:

> (1) Mr. Meyer is available on June 14, 2005, at 1:00 p.m. CST for a telephone deposition. Please fax me a notice if you wish to take his deposition at that time. If you desire greater specifics as to MRS' bona fide error defense, please feel free to explore that issue with Mr. Meyer. I believe that what we have disclosed already goes above and beyond what is usually required to preserve the bona fide error

6

defense under the FDCPA.

(2) MRS' will not be calling any other witnesses than Mr. Meyer at trial in support of their bona fide error defense. Therefore, it should not be necessary for any other defendant employees to be deposed. As Judge Denlow noted, this case is not worth the discovery you are proposing. Please call the undersigned on Monday, June 13, 2005, to have a Rule 37 conference and discuss this issue. If we cannot reach agreement, we will bring the issue before the Court. [Appendix J]

Plaintiff responded by noting the disagreement regarding the propriety of stonewalling the depositions, and noticing the deposition of Mr. Meyer for the date and time suggested by defendant. Appendix K at two internally indicated emails. That deposition was taken on June 14, 2005 by telephone.

Also on June 14, 2005, defendant filed a motion for protective order. Appendix L. The motion requests that the Court "enter a protective order limiting the number of depositions plaintiff may take to those witnesses already deposed [Michael Meyer] and also limiting the witnesses plaintiff is allowed to depose to only those individuals who are relevant to this case."

The motion argues that the "burden and expense of the proposed discovery greatly outweighs any possible benefit as described in Rule 26(b)(2)." Plaintiff's proposed depositions were noticed to be taken by telephone. In the deposition, Mr. Meyer testified that he was not the best person to ask regarding defendant's procedures in place to avoid violations of the FDCPA, and affirmatively stated that Mr. McCusker and Mr. Freedman, two of the persons defendant has moved to protect (see motion ¶ 13), would be the very best person to depose.

Plaintiff's counsel and defense counsel last spoke regarding these issues again on June 14, 2005 at plaintiff's law firm after the deposition. Alexander Burke, counsel for plaintiff, asked Todd Stelter, counsel for defendant, whether he would withdraw his protective order

7

motion in light of the testimony regarding who has knowledge regarding the bona fide error defense. Defense counsel called plaintiff's position "silly" and walked out of the room without waiting for a response. Thus, plaintiff files this motion.

### III.    Defendant has Waived its Bona Fide Error Defense by Refusing to Produce Material Witnesses and Withholding Material Information.

Plaintiff has been forced to spend numerous hours sifting through opaque and false discovery responses for too long in this case. The above blockaded depositions are the last straw. Plaintiff moves to strike any bona fide error defense asserted by defendant.

Although Judge Denlow compelled defendant to provide a description of the defense, permit depositions of the persons who are involved and produce documents related to the bona fide error defense, defendant has not done so. Even more, defendant has moved to block all depositions but one relating to what that procedures MRS has to avoid violations of the FDCPA.

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507 (1947). The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

"[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Goldman v. Checker Taxi Co., 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted).

8

Furthermore, transparency in discovery responses may help the parties avoid unnecessary depositions and further cost to the parties. In re Shopping Carts Antitrust Litigation, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

Defense counsel's position, essentially that plaintiff cannot depose any witness other than those that defendant intends to call at trial, is unsupportable. The general rule is that "a party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court." Fed.R.Civ.P. 30(a). Rule 26(b)(1) allows discovery to be taken that "appears reasonably calculated to lead to the discovery of admissible evidence." Plaintiff noticed these depositions because *defendant named* the proposed deponents as persons with knowledge of the claims and defenses in this case, particularly the bona fide error defense. If defendant does not want to have them deposed, then defendant should not be permitted to raise any defense to which they may adversely testify.

Plaintiff suspects that the reason defendant does not want Mr. McCusker to be deposed is that he knows what happened with the insurance company denying coverage for this case. An integral part of MRS' bona fide error defense appears to be that its letters are routinely examined and approved by the American Collection Association ("ACA") approved attorneys. Appendix E includes an ACA manual produced by MRS stating that all letters must be reviewed by an ACA approved attorney before being sent out in order for coverage to apply. Appendix E at fax line "007/046". The letter denying the defense for this case, addressed to Mr. McCusker, states that Gulf Insurance Company "has established the letter at issue was sent on a computer generated form that had bot been reviewed and approved in accordance with the requirements of the ACA Collection Notice Review Program." Appendix E. Defendants did not produce that

9

letter until May 2, 2005, and only after having been compelled to produce it. Further, Michael

Meyer, the person whose deposition defendants did permit, was not even named as a person

related to the bona fide error defense in the May 2, 2005 letter. Appendix E. It seems obvious to

plaintiff's counsel that defendants are playing games, and hiding relevant evidence.

      This is not the first time these defense attorneys have been involved in a situation

like this. The same defense counsel were sanctioned for similarly disturbing the discovery

process in Lucas v. GC Services, 04 C 498 (N.D.Ind. Feb. 28, 2005) (Appendix M). In Lucas,

Magistrate Judge Rodovich entered a *sua sponte* class default against the debt collector defendant

because, among other things, defendant refused to produce witnesses material to the bona fide

error defense, and filed a protective order requesting such relief. Judge Rodovich warned

defendants in that case that "[t]he defendants do not get to determine unilaterally the scope and

timing of discovery." Lucas v. GC Services, 226 F.R.D. 328; 2004 U.S. Dist. LEXIS 27597, at

*9 (N.D.Ind. Nov. 2, 2004), later opinions Feb. 3, 2005 (further sanctions) and Feb. 28, 2005

(Appendix M).

      In this case, defendant has decided that it will be the one who decides which

witnesses are appropriate or necessary for plaintiff's case. MRS actually identified persons in

discovery as persons with knowledge relevant to the case (Appendix E), and then subsequently

refused to produce those persons on the ground that since MRS does not plan to call them,

plaintiff cannot. (Appendix I). This type of discovery abuse has been a pattern in this case, and

in the practice of the attorneys who are defending the case. Such a pattern is a valid ground for

sanctions. Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 733 (7th Cir. 2004).

      Seventh Circuit cases hold that a court must find only that the party against which

sanctions are imposed displayed willfulness, bad faith or fault in order to strike all or part of a party's pleading. <u>Kovilic Const. Co. v. Missbrenner</u>, 106 F.3d 768, 773 (7th Cir. 1997); <u>In re Golant</u>, 239 F.3d 931, 936 (7th Cir. 2001); <u>United States v. DiMucci</u>, 879 F.2d 1488, 1493-94 (7th Cir. 1989).

In <u>DiMucci</u>, the district court's imposition of default against defendants was affirmed where the only misconduct alleged was a failure to obey discovery orders, and a failure to appear for properly noticed depositions. <u>Id.</u> <u>See also National Hockey League v. Metro. Hockey Club</u>, 427 U.S. 639, 643 (1976) (default affirmed in view of party's "flagrant bad faith" and "callous disregard" for their discovery responsibilities); <u>Loctite Corp. v. Fel-Pro, Inc.</u>, 667 F.2d 577, 582-83 (7th Cir. 1981) (default affirmed in trademark case where plaintiff failed to disclose liability-related discovery). Defendant's motion for a protective order is public record of their bad faith toward discovery in this case. Since plaintiff's first motion to compel in October 2004, this Court has allowed defendants nearly every possible benefit of the doubt in producing discovery. The deadline has been extended, and plaintiff's numerous motions to compel have been entered and continued. The Court's fairly close supervision of the discovery process in this case because of the almost constant pending motions to compel has not deterred the conduct complained of here.

Additionally, defendants appear to have lied about the FDCPA organizations that they belong to. The May 2, 2005 discovery letter, sent pursuant to Judge Denlow's order, states that "MRS belongs to ACA, CLLA and NARCA, which also provide continuing updates as to FDCPA law." However, defendant's website (<u>Appendix N</u>) explains that MRS belongs to several additional organizations and publications relating to FDCPA compliance, including:

11

- Collectionindustry.com (discussion board for FDCPA compliance attached as Appendix O);

- Resource Management Services, Inc. (which has programs designed to help debt collectors "[l]earn where and how to look for compliance" Appendix P);

- Thompson (seminar topics include "FDCPA Compliance: Legal Update/Defense & Compliance" Appendix Q);

- The Debt Buyers' Association (whose "Members Only" section provides services relating to "Federal Laws" "State Laws," "Federal [Court] Decisions" and "State [Court] Decisions." Appendix R at 2.")

- Collection Advisor (an organization that sets up seminars relating to "employee training", "Scripts and Letters" Appendix S).

None of these additional publications, which relate directly to FDCPA compliance were ever disclosed in discovery. Again, it seems as though defendant believes that if it is not going to rely upon a document (or that it will hurt its case), it does not have to produce it or reveal its existence. This behavior is not proper, and defendant should be sanctioned. Since the discovery requested has to do with defendant's bona fide error defense, a reasonable sanction is to strike that defense.

WHEREFORE, plaintiff respectfully requests that this Court enter an order striking defendant's bona fide error defense, or alternatively, compel the depositions of all persons related to the bona fide error defense, particularly Daniel McCusker, Jeff Freedman and the ACA attorney who reviewed the plaintiff's letter.

Respectfully submitted,

12

Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

**M R S** Associates inc

M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

Office Hours :
Mon - Thurs 8am - 9pm EST
Fri - 8am - 5pm EST
Sat - 8am - 12pm EST
Sun - 9am - 12pm EST

January 19, 2004

M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

FEB 0 2 2004

04019377-001   21982
ALICE RUTH
407 GOODELL CT
ROCK FALLS IL 61071-1360

| CLT ACCT # : | MRS ACCT # : | ACCOUNT BAL. : |
|---|---|---|
| 5307582055271676 | 04019377 | $634.36 |

RE : CAPITAL ONE (K-MART CARD)
(Interest may accrue on unpaid balances)

IMPORTANT: TO RECEIVE PROPER CREDIT BE SURE TO ENCLOSE THIS PORTION WITH YOUR PAYMENT IN FULL
SEE REVERSE SIDE FOR CREDIT CARD AND WESTERN UNION PAYMENT INFORMATION

M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

RE: CAPITAL ONE (K-MART CARD)
CLT ACCT#: 5307582055271676
MRS ACCT#: 04019377      (Interest may accrue on unpaid balances)
ACCOUNT BALANCE : $634.36

Dear ALICE RUTH,

The above referenced client has placed your account with our office for collection. This decision was made due to your continued failure to meet your contractual obligation. If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter.

If the debt is not in dispute, then you have an important decision to make: honor your contractual obligation and receive significant positive benefits from satisfying the debt or continue not honoring your contractual obligation and face the possibility of negative consequences. The negative consequences are determined by the terms and conditions of your contract, the applicable laws in your state, and our client's willingness to incur additional costs and expenses (which may in turn be passed on to you!).

Clearly our client would prefer to work with you than against you, however, the decision to proceed with further collection activity is determined by you and your willingness to honor your commitment.

Which would you prefer the positive benefits or negative consequences? The choice is yours!

### IMPORTANT CONSUMER INFORMATION

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collection agency.

Sincerely,

*Dawn Hasenjager*

Dawn Hasenjager
Collection Manager 1-877-508-6306
M.R.S.ASSOCIATES, INC.

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

If you wish to pay by credit card, please fill out the area below and return in the enclosed envelope or fax to us at the number 856-488-5125 or you may E-Mail credit card information to : payments@mrsassociates.com

Check One:
- ☐ Visa
- ☐ Mastercard
- ☐ American Express

Card #: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

MRS ACCT # : 03456050

Expiration Date: ____ / ____ / ____

Amount of Payment: $ _____

Signature of Cardholder _____

Card Holder Name _____

Driver's License _____

## Western Union Payment Instructions

Western Union "Quick Collect" - Quick and Easy !
Use Blue and White form
Pay to : M.R.S. ASSOCIATES
Code City : MAPLE     State: NJ

For questions about how to pay your bill using Western Union - call them at 800-238-5772 or call our office.

**COLORADO RESIDENTS:**
This is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that urpose. Unless you notify us that you dispute the validity of this debt or any portion thereof, within 30 days after receipt of this .tter, we shall assume this debt is valid. If you notify us, in writing, within the 30 day period, that you dispute this debt, or any portion thereof, we will obtain verification of this debt or judgment, if one exists, and will mail you a copy. Upon your written request, within the 30 day period, we will provide you with the name and address of the original creditor, if different from the current creditor. For information about the Colorado Fair Debt Collection Practices Act, see www.ago.state.co.us/CAB.htm.

**MASSACHUSETTS RESIDENTS:**

NOTICE OF IMPORTANT RIGHTS
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE COLLECTION AGENCY.

**MINNESOTA RESIDENTS:**
This collection agency is licensed by the Minnesota Department of Commerce.

**NEW YORK CITY RESIDENTS:**
New York City Department of Consumer Affairs, license number 1016281.

**NORTH CAROLINA RESIDENTS:**
North Carolina Department of Insurance, permit number 3122 or permit number 3486.

**TENNESSEE RESIDENTS:**
Th'~ collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance, 500 James F     tson Parkway, Nashville, Tennessee 37243.

# APPENDIX B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ALICE RUTH; | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S FIRST DISCOVERY REQUESTS**

Plaintiff hereby request that defendant M.R.S. Associates, Inc. respond to the following requests for admissions, interrogatories, and document requests. Documents should be copied and sent to plaintiff's counsel on the date your response is due.

Throughout this request:

1. Unless otherwise specified in a particular paragraph, the time period covered by this request is January 1, 2000 to the present.

2. If you are declining to produce any document or respond to any paragraph in whole or in part because of a claim of privilege, please: (a) identify the subject matter, type (e.g., letter, memorandum), date, and author of the privileged communication or information, all persons that prepared or sent it, and all recipients or addressees; (b) identify each person to whom the contents of each such communication or item of information have heretofore been disclosed, orally or in writing; (c) state what privilege is claimed; and (d) state the basis upon which the privilege is claimed.

3. If any document requested was, but no longer is, in your possession or subject

to your control, please state: (a) the date of its disposition; (b) the manner of its disposition (e.g., lost, destroyed, transferred to a third party); and (c) an explanation of the circumstances surrounding the disposition of the document.

Other instructions and definitions to be used in making your response are attached hereto as Exhibit 1.

If any paragraph of this request is believed to be ambiguous or unduly burdensome, please contact the undersigned and an effort will be made to remedy the problem.

## I. REQUESTS FOR ADMISSIONS

1.      Exhibit A represents a standard form letter intended for use as an initial demand letter by MRS.

2.      Exhibit B contains identical substance to the reverse of the initial letter sent to the plaintiff by defendant.

3.      There are more than 40 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances"(c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

4.      There are more than 70 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

5.      There are more than 100 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt

2

is not valid . . . ." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

6. Defendant has a net worth exceeding $500,000.

7. Defendant has a net worth exceeding $1 million.

8. Defendant has a net worth exceeding $5 million.

## II. INTERROGATORIES

1. State the name, address, title and job description of each officer, director and employee (present or former) of defendant who authorized, approved, or was aware of the letter in the form used in Exhibit A and the date such person first authorized, approved or was aware of the letter in the form used in Exhibit A.

2. Identify by code name or number and date sent all documents transmitted to plaintiff in an effort to collect the debt described in Exhibit A.

3. Describe, step-by-step, the process which resulted in Exhibit A being transmitted to plaintiff, beginning with the date and method of transmission of debtor information from the person that sent it, and including all other steps with respect to, for example, computer tapes or other media delivered (when, by whom, where and to whom); the content of computer tape or

3

media; data input (where and by whom); computer entry or other means of directing transmission letters (where and by whom entry made), the printing of Exhibit A itself, (where, how and by whom); the mailing of Exhibit A (from where and by whom), and Identify all persons who participated in the process.

4.    Describe what further collection steps are taken if no response is received to letters in the form represented by Exhibit A.

5.    Describe all document destruction and retention policies of the defendant.

6.    State whether information regarding your accounts is retrievable by computer and, if so, each field by which data is searchable or retrievable. State whether your computer can determine the number of instances in which the form letter represented by Exhibit A was mailed within a specified period to collect a K-Mart debt, and the persons to whom such letters were sent.

7.    State the number and name and address of the (a) natural persons residing in

4

Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason

you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances"

(c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20,

2004.

8.    If you contend that any of the persons who are described in the preceding

interrogatory incurred the debts sought to be collected for business purposes, identify the persons and

state the facts upon which you base your contention.

9.    State the net worth of defendant and whether its financial statements are

audited.    If defendant's financial statements are not audited, identify all credit applications and

financial statements issued or submitted by defendant in the last 3 years.

10.    Identify each lawsuit in which a determination of defendant's net worth has

been made, or in which defendant has provided or produced financial statements or information

concerning its net worth.

11.    Identify each instance in which defendant has  provided financial statements

5

or information concerning its net worth to any governmental agency.

12.    Explain the basis for your claim that any violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures are maintained and how they are adapted to avoid the matters complained of.

13.    If your response to any of the requests for admissions is anything other than an unqualified admission, please explain the basis for your denial.

14.    With respect to each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

### III. **REQUESTS FOR PRODUCTION OF DOCUMENTS**

Please produce:

1.     All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

2.     All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff.

3.     All documents relating to any testing done of defendant's collection letters (surveys, focus groups, readability analysis, etc.).

4.     All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices relating to the Fair Debt Collection Practices Act, or state statutes regulating debt collectors or debt collection.

5.     All manuals, memoranda, instructions, and other documents setting forth defendant's policies, procedures or practices relating to the collection of debts.

6.     All manuals, memoranda, instructions, and other documents referring to the form of letter represented by Exhibit A.

7.     All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendant was accused of violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.

8.     All documents relating to any complaint, criticism or inquiry, by any person, concerning defendant's compliance with the Fair Debt Collection Practices Act, or state statutes

7

regulating debt collection activities, or collection practices generally.

9.  All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.

10.  All documents (irrespective of date) which constitute or reflect communications between defendant and public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, a Better Business Bureau or newspaper column), relating to collection activities of defendant.

11.  All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act.

12.  If Exhibit A was printed or mailed by someone other than defendant, all contracts pursuant to which such printing or mailing was done and all records, invoices and checks (or other payment instruments) relating to such printing or mailing.

13.  All documents showing the number of examples of Exhibit A mailed by or on behalf of defendant, and the geographic areas or periods of time of such mailings.

14.  All organizational charts of defendant.

15.  All insurance policies that may afford coverage with respect to the matters complained of, together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

16.  All documents relating to the maintenance by defendant of procedures adapted to avoid any violation of the Fair Debt Collection Practices Act.

17.  All documents setting forth defendant's document destruction and retention

8

policies.

18.     Defendant's annual financial statements, annual reports, semiannual and quarterly financial statements, credit applications and tax returns for the last three years.

19.     All credit applications or financial statements defendant issued within the last 3 years.

20.     All information submitted by defendant to Dun & Bradstreet, Fitch, or any other entity which rates the creditworthiness or financial soundness of defendant or securities relating to defendant, during the last three years.

21.     All proposals and bids defendant submitted to governmental agencies which describe defendant's business.

22.     One copy of each different form letter defendant sends to debtors.

23.     The complete file, including but not limited to computer information, for all (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.


_____
Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Alexander H. Burke

9

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**Exhibit 1**

## INSTRUCTIONS AND DEFINITIONS

### Definitions

A. The term "document" includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written and/or produced by hand: ledgers; notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; reports; publications; photographs; microfilm, microfiche, and similar media; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; court papers; brochures; pamphlets; press releases; drafts of, or revisions of drafts of, or translations of, any document; tape recordings; dictation belts; invoices; bills; accounting records; telephone toll records; and disks, tapes, and other magnetic or electronic information storage media. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment or any notation of any character and not a part of the original text, is to be considered a separate document.

B. References to "you" or any named entity or individual include agents, employees, and attorneys of that person, whether or not acting within the scope of their authority; all other persons acting on behalf of the person referred to; and in the case of an entity, its merged or acquired predecessors.

C. "Person" includes any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, or commission, or other entity.

D. "Identify" or "identification," when used with respect to a person, means to state the name, last known address, telephone number, and if a corporation or other entity, the principal place of business of the person.

E. "Identify" or "identification," when used with respect to a document, means to state the general nature of the document (i.e., letter, memorandum, etc.); the name of the author or originator; each addressee; all individuals designated on the document to receive a copy or otherwise known to have received a copy; the date, title, and general subject matter of the document; the present custodian of each copy thereof and the last known address of each such custodian; and the date of the making of the document.

F. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

G. "Identify" or "identification," when used with respect to a communication,

11

means to state the date of the communication; the type of communication (i.e., telephone conversation, meeting, etc.); the place where the communication took place; the identification of the person who made the communication; the identification of each person who received the communication and of each person present when it was made; and the subject matter discussed.

H. "Relates" includes constitutes, describes, discusses, reflects, refers to, and logically pertains to.

## Instructions

1. All documents within your possession, custody, or control or that of your agents, employees, and attorneys shall be produced. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person having actual possession thereof.

2. To the extent any paragraph is objected to, please set forth all reasons for your objection.

3. If you prefer, you may provide legible copies of document that reflect all markings, notations, and highlighting on the originals.

4. Documents to be produced shall be either (1) organized as they are kept in the usual course of business or (2) organized and labelled to correspond with the paragraphs of the request for production.

5. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

6. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them.

7. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given their broadest possible meaning.

8. If you are producing a document, you need not provide the information specified in paragraph E with respect to that document.

## CERTIFICATE OF SERVICE

I, Alexander H. Burke, certify that on August 18, 2004, I had a copy of this document sent by fax to:

David M Schultz, Esq.
Paul Stelter, Esq.
HINSHAW & CULBERTSON, LLP
222 N LaSalle St. Ste 300
Chicago, IL 60601-1081
(312) 704-3000
(312) 704-3001 FAX

Alexander H. Burke

13

# EXHIBIT A

**M.R.S.ASSOCIATES, INC.**
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

**MRS** *Associates* Inc

Office Hours :
Mon - Thurs 8am - 9pm EST
Fri - 8am - 5pm EST
Sat - 8am - 12pm EST
Sun - 9am - 12pm EST

January 19, 2004

M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

FEB 0 2 2004

04019377-001   21982
ALICE RUTH
407 GOODELL CT
ROCK FALLS IL 61071-1360

| CLT ACCT # : | MRS ACCT # : | ACCOUNT BAL. : |
|---|---|---|
| 5307582055271676 | 04019377 | $634.36 |

RE : CAPITAL ONE (K-MART CARD)
(Interest may accrue on unpaid balances)

✂ —— IMPORTANT: TO RECEIVE PROPER CREDIT BE SURE TO ENCLOSE THIS PORTION WITH YOUR PAYMENT IN FULL ✂
SEE REVERSE SIDE FOR CREDIT CARD AND WESTERN UNION PAYMENT INFORMATION

RE: CAPITAL ONE (K-MART CARD)
CLT ACCT#: 5307582055271676
MRS ACCT#: 04019377
ACCOUNT BALANCE : $634.36   (Interest may accrue on unpaid balances)

M.R.S.ASSOCIATES, INC.
3 EXECUTIVE CAMPUS, SUITE 400
CHERRY HILL NJ 08002

Dear ALICE RUTH,

The above referenced client has placed your account with our office for collection. This decision was made due to your continued failure to meet your contractual obligation. If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter.

If the debt is not in dispute, then you have an important decision to make: honor your contractual obligation and receive significant positive benefits from satisfying the debt or continue not honoring your contractual obligation and face the possibility of negative consequences. The negative consequences are determined by the terms and conditions of your contract, the applicable laws in your state, and our client's willingness to incur additional costs and expenses (which may in turn be passed on to you!).

Clearly our client would prefer to work with you than against you, however, the decision to proceed with further collection activity is determined by you and your willingness to honor your commitment.

**Which would you prefer the positive benefits or negative consequences? The choice is yours!**

## IMPORTANT CONSUMER INFORMATION

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collection agency.

Sincerely,

*Dawn Hasenjager*

Dawn Hasenjager
Collection Manager 1-877-508-6306
M.R.S.ASSOCIATES, INC.

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

# EXHIBIT B

If you wish to pay by credit card, please fill out the area below and return in the enclosed envelope or fax to us at the number 856-488-5125 or you may E-Mail credit card information to : payments@mrsassociates.com

Check One:
☐ Visa
☐ Mastercard
☐ American Express

**VISA**   **MasterCard**   **AMERICAN EXPRESS Cards**

Card #: |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

MRS ACCT # : 03456050

Expiration Date: ____ / ____ / ____

Amount of Payment: $ _____

_____
Signature of Cardholder

_____
Card Holder Name

_____
Driver's License

## Western Union Payment Instructions
Western Union "Quick Collect" - Quick and Easy !
Use Blue and White form
Pay to : M.R.S. ASSOCIATES
Code City : MAPLE    State: NJ

For questions about how to pay your bill using Western Union - call them at 800-238-5772 or call our office.

### COLORADO RESIDENTS:
This is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify us that you dispute the validity of this debt or any portion thereof, within 30 days after receipt of this letter, we shall assume this debt is valid. If you notify us, in writing, within the 30 day period, that you dispute this debt, or any portion thereof, we will obtain verification of this debt or judgment, if one exists, and will mail you a copy. Upon your written request, within the 30 day period, we will provide you with the name and address of the original creditor, if different from the current creditor. For information about the Colorado Fair Debt Collection Practices Act, see www.ago.state.co.us/CAB.htm.

### MASSACHUSETTS RESIDENTS:
NOTICE OF IMPORTANT RIGHTS
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE COLLECTION AGENCY.

### MINNESOTA RESIDENTS:
This collection agency is licensed by the Minnesota Department of Commerce.

### NEW YORK CITY RESIDENTS:
New York City Department of Consumer Affairs, license number 1016281.

### NORTH CAROLINA RESIDENTS:
North Carolina Department of Insurance, permit number 3122 or permit number 3486.

### TENNESSEE RESIDENTS:
This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.

# APPENDIX C

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

ALICE RUTH,                        )
                                   )   Case No.  04 C 50244
            Plaintiff,             )
                                   )   Judge Philip G. Reinhard
     vs.                           )
                                   )   Magistrate Judge P. Michael Mahoney
M.R.S. ASSOCIATES, INC.,           )
                                   )   JURY DEMANDED
            Defendant.             )
                                   )
                                   )

## RESPONSE TO PLAINTIFF'S FIRST DISCOVERY REQUESTS

Defendant, M.R.S. ASSOCIATES, INC., by and through its attorneys, David M. Schultz

and Todd P. Stelter, for its Response to Plaintiff's First Discovery Requests, states as follows:

### I. REQUESTS FOR ADMISSIONS

1.    Exhibit A represents a standard form letter intended for use as an initial

demand letter by MRS.

**RESPONSE: Defendant admits that it sends letters in a form resembling Exhibit A as
initial letters.  Defendant denies any remaining information contained within
this request.**

2.    Exhibit B contains identical substance to the reverse of the initial letter

sent to the plaintiff by defendant.

**RESPONSE: Defendant objects to this request as it is vague and ambiguous as to the terms
"identical substance".  Without waiving said objection, defendant denies that
Exhibit B accurately depicts the printed matter on the reverse of the letter it
sent to plaintiff on January 19, 2004.  Defendant denies all remaining
information contained within this request.**

3.    There are more than 40 (a) natural persons residing in Illinois (b) to whom

defendant sent a letter containing both the statement that "If for some reason you believe this

debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances"(c) seeking to

collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

5822324v1 843461

**RESPONSE:** Objection. In addition to its General Objections, this request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as to damages or liability issues in this case. Defendant further objects that this question is premature and that the information sought may become relevant only if the court certifies a class and makes a finding of liability in plaintiff's favor which it has not been done. Defendants further object to this request as the information sought is neither relevant or reasonably calculated to lead to the discovery of admissible evidence, and may only become relevant if a class is certified and liability is found on behalf of a putative class. The relevant issue in this case is strictly limited to a determination of whether the language contained in defendants' letters violates the FDCPA. Defendants also object to this request on the basis that it is vague and ambiguous overall, and specifically as to the meaning of the terms "natural persons."

4.  There are more than 70 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid ...." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

**RESPONSE:** Objection. In addition to its General Objections, this request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as to damages or liability issues in this case. Defendant further objects that this question is premature and that the information sought may become relevant only if the court certifies a class and makes a finding of liability in plaintiff's favor which it has not been done. Defendants further object to this request as the information sought is neither relevant or reasonably calculated to lead to the discovery of admissible evidence, and may only become relevant if a class is certified and liability is found on behalf of a putative class. The relevant issue in this case is strictly limited to a determination of whether the language contained in defendants' letters violates the FDCPA. Defendants also object to this request on the basis that it is vague and ambiguous overall, and specifically as to the meaning of the terms "natural persons."

5.  There are more than 100 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid. ...." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

5822324v1 843461

**RESPONSE:** Objection.   In addition to its General Objections, this request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as to damages or liability issues in this case. Defendant further objects that this question is premature and that the information sought may become relevant only if the court certifies a class and makes a finding of liability in plaintiff's favor which it has not been done.  Defendants further object to this request as the information sought is neither relevant or reasonably calculated to lead to the discovery of admissible evidence, and may only become relevant if a class is certified and liability is found on behalf of a putative class. The relevant issue in this case is strictly limited to a determination of whether the language contained in defendants' letters violates the FDCPA.  Defendants also object to this request on the basis that it is vague and ambiguous overall, and specifically as to the meaning of the terms "natural persons."

6.   Defendant has a net worth exceeding $500,000.

**RESPONSE:** Admitted.

7.   Defendant has a net worth exceeding $1 million.

**RESPONSE:** Admitted.

8.   Defendant has a net worth exceeding $5 million.

**RESPONSE:** Denied.

## II. INTERROGATORIES

1.   State the name, address, title and job description of each officer, director and employee (present or former) of defendant who authorized, approved, or was aware of the letter in the form used in Exhibit A and the date such person first authorized, approved or was aware of the letter in the form used in Exhibit A.

**ANSWER:**   The following individuals may have knowledge of the allegations and the pleadings:

Michael Meyer, Information and Technology Department, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ  08002

Dan Divece, Information and Technology Department, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ  08002

3

**Daniel J. McCusker, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002**

**Stewart Miller, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002**

**Kelli Coia, Director of the Training Department, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002**

2.    Identify by code name or number and date sent all documents transmitted to plaintiff in an effort to collect the debt described in Exhibit A.

**ANSWER:**    **Defendant objects to this interrogatory as it is vague and ambiguous as to the meaning of the words "code name or number." Defendant sends letters to debtors who owe money. Defendant accomplishes this by placing the letters in the U.S. mail.**

3.    Describe, step-by-step, the process which resulted in Exhibit A being transmitted to plaintiff, beginning with the date and method of transmission of debtor information from the person that sent it, and including all other steps with respect to, for example, computer tapes or other media delivered (when, by whom, where and to whom); the content of computer tape or media; data input (where and by whom); computer entry or other means of directing transmission letters (where and by whom entry made), the printing of Exhibit A itself, (where, how and by whom); the mailing of Exhibit A (from where and by whom), and Identify all persons who participated in the process.

**ANSWER:**    **Defendant sends letters to debtors who owe money. Defendant accomplishes this by placing the letters in the U.S. mail.**

4.    Describe what further collection steps are taken if no response is received to letters in the form represented by Exhibit A.

**ANSWER:**    **Defendant objects to this interrogatory as it requests a purely speculative response.**

5.    Describe all document destruction and retention policies of the defendant.

4

**ANSWER:**   Objection.   In addition to its General Objections, this request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as to damages or liability in this case. Without waiving said objections, defendants state X

6.    State whether information regarding your accounts is retrievable by computer and, if so, each field by which data is searchable or retrievable.  State whether your computer can determine the number of instances in which the form letter represented by Exhibit A was mailed within a specified period to collect a K-Mart debt, and the persons to whom such letters were sent.

**ANSWER:**   Defendant objects to this interrogatory as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   This interrogatory seeks information that has no bearing on the specific FDCPA allegations contained in plaintiff's complaint. Subject to and without waiving said objections, defendant states that it stores debtor account information and histories in computer files.  Documents in which the defendant received are kept for approximately 120 days. Defendant is capable of reproducing its letters sent to debtors from the current date, back to approximately March of 2003.  General information relative to debtor files and records are stored electronically forever.

7.    State the number and name and address of the (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid. ..." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

**ANSWER:**   Defendant objects because the disclosure of such information would constitute an unauthorized third-party disclosure under the FDCPA.

8.    If you contend that any of the persons who are described in the preceding interrogatory incurred the debts sought to be collected for business purposes, identify the persons and state the facts upon which you base your contention.

**ANSWER:**   Defendant has no ability to determine the purpose for which plaintiff incurred debt and no information concerning this subject.   Defendant

5

**reserves the right to make such a contention should information be discovered.**

9.    State the net worth of defendant and whether its financial statements are audited. If defendant's financial statements are not audited, identify all credit applications and financial statements issued or submitted by defendant in the last 3 years.

**ANSWER:    In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.**

10.    Identify each lawsuit in which a determination of defendant's net worth has been made, or in which defendant has provided or produced financial statements or information concerning its net worth.

**ANSWER:    In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.**

11.    Identify each instance in which defendant has provided financial statements information concerning its net worth to any governmental agency.

**ANSWER:    In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.**

12.    Explain the basis for your claim that any violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably

5822324v1 843461

adapted to avoid such error. Identify what procedures are maintained and how they are adapted to avoid the matters complained of.

**RESPONSE:** **Defendant reserves the right to present defenses as provided for by the applicable rules and court orders.**

13.    If your response to any of the requests for admissions is anything other than an unqualified admission, please explain the basis for your denial.

**RESPONSE:** **The false nature of the requests form the basis for all denials and defendants responses adequately address all denials or equivocal admissions.**

14.    With respect to each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**ANSWER:**    **Defendant reserves the right to name witnesses as required by the court and the agreed upon discovery schedule.**

### III.  REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce:

1.    All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

**RESPONSE:** **Plaintiff is in possession of all of the actual letters sent to plaintiff.**

2.    All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiffs name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff.

7

**RESPONSE:** Investigation continues.

      3.    All documents relating to any testing done of defendant's collection letters (surveys, focus groups, readability analysis, etc.).

**RESPONSE:** **Defendant objects to this request as it is vague and ambiguous and overly broad as to the terms "any testing." Without waiving said objections, defendant states that there is no official testing done to its letters as described in this request. The letters are at times visually inspected. No systematic or official documents are kept regarding such inspections.**

      4.    All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices relating to the Fair Debt Collection Practices Act, or state statutes regulating debt collectors or debt collection.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

      5.    All manuals, memoranda, instructions, and other documents setting forth defendant's policies, procedures or practices relating to the collection of debts.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

      6.    All manuals, memoranda, instructions, and other documents referring to the form of letter represented by Exhibit A.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

      7.    All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendant was accused of violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

5822324v1 843461

8.    All documents relating to any complaint, criticism or inquiry, by any person, concerning defendant's compliance with the Fair Debt Collection Practices Act, or state statutes regulating debt collection activities, or collection practices generally.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

9.    All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

10.    All documents (irrespective of date) which constitute or reflect communications between defendant and public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, a Better Business Bureau or newspaper column), relating to collection activities of defendant.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

11.    All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

12.    If Exhibit A was printed or mailed by someone other than defendant, all contracts pursuant to which such printing or mailing was done and all records, invoices and checks (or other payment instruments) relating to such printing or mailing.

**RESPONSE:** **Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

9

13.   All documents showing the number of examples of <u>Exhibit A</u> mailed by or on behalf of defendant, and the geographic areas or periods of time of such mailings.

**RESPONSE: Defendant objects to this request as it is irrelevant, too broad and unduly burdensome.**

14.   All organizational charts of defendant.

**RESPONSE: Defendants object to this request on the basis it is overbroad and unduly burdensome.**

15.   All insurance policies that may afford coverage with respect to the matters complained of, together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

**RESPONSE: Defendant is insured under Gulf Insurance Group Errors and Omissions Liability Insurance, policy number GA949-92-38.**

16.   All documents relating to the maintenance by defendant of procedures adapted to avoid any violation of the Fair Debt Collection Practices Act.

**RESPONSE: Defendants object to this request on the basis it is overbroad and unduly burdensome.**

17.   All documents setting forth defendant's document destruction and retention policies.

**RESPONSE: Objection. In addition to its General Objections, this request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as to damages or liability in this case.**

18.   Defendant's annual financial statements, annual reports, semiannual and quarterly financial statements, credit applications and tax returns for the last three years.

**RESPONSE: In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson,</u> 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.**

10

19.     All credit applications or financial statements defendant issued within the last 3 years.

**RESPONSE:** In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.

20.     All information submitted by defendant to Dun & Bradstreet, Fitch, or any other entity which rates the creditworthiness or financial soundness of defendant or securities relating to defendant, during the last three years.

**RESPONSE:** In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.

21.     All proposals and bids defendant submitted to governmental agencies which describe defendant's business.

**RESPONSE:** In addition to its General Objections, defendants object to this Request on the grounds that it is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in that it is premature. Subject to and without waiving said objection, in the event a class is certified, defendants will produce documents relevant to their respective net worth as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000) but only under protective order.

22.     One copy of each different form letter defendant sends to debtors.

**RESPONSE:** Defendant objects because this request is overbroad and unduly burdensome. Furthermore, defendants also object because said request asks for documents irrelevant to the subject matter of the complaint.

23.     The complete file, including but not limited to computer information, for all (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the

11

statement that "If for some reason you believe this debt is not valid . . . ." and the statement

"Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or

after June 1, 2003 and (e) on or before June 20, 2004.

**RESPONSE:** **Defendant objects as this request seeks an unauthorized third-party disclosure that is prohibited by law under the FDCPA.**

M.R.S. ASSOCIATES, INC.

By: _____

One of its attorneys

David M. Schultz
Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081
312-704-3000
312-704-3001 (FAX)

5822324v1 843461

## VERIFICATION

I, Dan McCusker, being first duly sworn upon oath, hereby depose and state that I serve as Representative of Defendant herein. The foregoing Answers to Interrogatories, Responses to Production of Documents and Responses to Requests for Admission to Defendant, are true and correct to the best of my knowledge, information and belief.

Dan McCusker on behalf of Defendant,
M.R.S. ASSOCIATES, INC.

Subscribed and Sworn to Before

me this 13ᵗʰ day of October 2004.

NOTARY PUBLIC

Barbara A. Grello
Notary Public
Camden County, New Jersey
My Commission Expires 9 / 17 / 2008

# APPENDIX D



# HINSHAW
& CULBERTSON LLP

March 10, 2005

ATTORNEYS AT LAW
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081

T 312-704-3000
F 312-704-3001
www.hinshawlaw.com

**VIA FAX NO.: (312) 419-0379**
Alex Burke
EDELMAN, COMBS, LATTURNER & GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603

Re:    Case Name:  Ruth v. MRS

Dear Mr. Burke:

Please allow the following to serve as a supplementation to the written discovery responses that have already been provided in this matter. It is my assumption that this supplementation completely responds to all of your outstanding discovery disputes. If this assumption is incorrect, please call me before filing any motions with the Court.

1.    First, you have requested a "legend" or a document which explains the codes and numbers used in MRS' letters. Please be advised that MRS does not use, possess or control any legend or document. If there is anything you need "decoded," please identify the item and I will have MRS provide a decodified version of the document for you.

2.    Second, you have requested information pertaining to MRS' document destruction and retention policies. Please be advised that MRS does not have a written document destruction and retention policy. However, all letters sent by MRS to a debtor can be reproduced, in general. There is also a non-written policy regarding ingoing and outgoing documents. When a letter is sent to a debtor, this communication is automatically noted on a DACKS system. DACKS is the internal computer system which MRS' uses to access debtor account information. All letters and correspondence received from a debtor, the debtor's attorney, or a power of attorney are filed for a period of 120 days upon receipt. Upon receipt, incoming mail is also documented in the DACKS system, with a brief description of the nature of the correspondence. We have already produced the notes pertinent to plaintiff that were contained on the DACKS system.

3.    Third, you have requested information regarding the class list in this case. As I am sure you are aware, MRS will not produce a class list until ordered by the Court because it would be a violation of both the FDCPA and Gramm-Leach-Bliley Acts. Nonetheless, we have already produced the class size. MRS represents that they can identify the members of the class and will preserve said information.

Alex Burke
March 10, 2004
Page 2

4.     Fourth, you have requested a representative copy of the reverse of plaintiff's letter. Please be advised that MRS can produce one for you if necessary. However, MRS admits that Exhibit B to your complaint is representative.

5.     Fifth, you requested information regarding any manuals or internal memoranda in MRS' possession that relate to the FDCPA. MRS objects to this request on the basis that this request is vague and ambiguous. Please call the undersigned to discuss. Your request is so broadly worded that it arguably encompasses all documents in MRS' possession. MRS is a collection agency and therefore, arguably all of its documents relate to the FDCPA.

Without waiving said objection, in an attempt to decipher your request, however, please be advised that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself as a basis for its business practices. In addition, MRS utilizes that ACA Collection Notice Review (CNR) Program User Guide. MRS reserves the right to disclose additional materials in support of its defenses as provided for by the Court and all applicable rules.

6.     Sixth, you have requested information regarding communications with external agencies and courts that related to the FDCPA allegations in plaintiffs' complaint. Please be advised that MRS objects to this request as it seeks only irrelevant information. If you wish to discuss this further, please contact the undersigned. Without waiving said objection, please be advised that all complaints filed against MRS in the courts are public record and plaintiff has equal access to said documents.

7.     Seventh, you have requested an organizational chart. MRS objects to this request as "organizational chart" is vague and ambiguous. Without waiving said objection, please be advised that documents exist regarding MRS, as they do for all registered companies, that are filed with the secretary of state's office of the state in which the company is registered. These documents are public record and plaintiff has equal access to said documents. Other than the documents described herein, MRS possesses what can be described as an organizational chart at the employee level. There are no other organizational charts. MRS objects to the production of its employee-level organizational chart as it is wholly irrelevant. In addition, MRS' employees work in an industry in which their security is often threatened and the production of said "organizational chart" presents a danger to said employees.

Please contact the undersigned to discuss any of the above items.

Sincerely,

HINSHAW & CULBERTSON LLP

Alex Burke
March 10, 2004
Page 3

Todd P. Stelter
tstelter@hinshawlaw.com

:tps

# APPENDIX E

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| ALICE RUTH, | ) |
| Plaintiff, | ) Case No. 04 C 50244 |
| | ) |
| | ) Judge Philip G. Reinhard |
| vs. | ) |
| | ) Magistrate Judge P. Michael Mahoney |
| M.R.S. ASSOCIATES, INC., | ) |
| | ) JURY DEMANDED |
| Defendant. | ) |
| | ) |

## DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS

Defendant, M.R.S. ASSOCIATES, INC., by and through its attorneys, David M. Schultz and Todd P. Stelter, for its Response to Plaintiff's First Discovery Requests, states as follows:

## I. REQUESTS FOR ADMISSIONS

1. **Exhibit A** represents a standard form letter intended for use as an initial demand letter by MRS.

**RESPONSE:** Defendant admits that it sends letters in a form resembling Exhibit A as initial letters. Defendant denies any remaining information contained within this request.

2. **Exhibit B** contains identical substance to the reverse of the initial letter sent to the plaintiff by defendant.

**RESPONSE:** Defendant objects to this request as it is vague and ambiguous as to the terms "identical substance". Without waiving said objection, defendant denies that Exhibit B is identical to the reverse of the initial letter sent to the plaintiff by defendant.

However, defendant admits that Exhibit B is representative and/or similar insomuch as it would be a representative copy of the sort of backer on the reverse of the letter sent to the plaintiff by defendant.

3. There are more than 40 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this

debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances"(c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

**RESPONSE: Admitted.**

4.     There are more than 70 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid ...." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

**RESPONSE: Admitted.**

5.     There are more than 100 (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid. ..." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

**RESPONSE: Admitted.**

6.     Defendant has a net worth exceeding $500,000.

**RESPONSE: Admitted.**

7.     Defendant has a net worth exceeding $1 million.

**RESPONSE: Admitted.**

8.     Defendant has a net worth exceeding $5 million.

**RESPONSE: Denied.**

## II. INTERROGATORIES

1.     State the name, address, title and job description of each officer, director and employee (present or former) of defendant who authorized, approved, or was aware of the letter in the form used in Exhibit A and the date such person first authorized, approved or was aware of the letter in the form used in Exhibit A.

5897119v1 843461

**ANSWER:** The following individuals may have knowledge of the allegations and the pleadings:

Michael Meyer, Information and Technology Department, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002

John M. Heilman, Information and Technology Department, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002

Daniel J. McCusker, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002

Stewart Miller, MRS Associates, 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002

2. Identify by code name or number and date sent all documents transmitted to plaintiff in an effort to collect the debt described in Exhibit A.

**ANSWER:** Defendant objects to this interrogatory as it is vague and ambiguous as to the meaning of the words "code name or number." The dates on all documents sent to plaintiff are clearly posted on each document. [Pursuant to Rule 37 conference between plaintiffs' counsel, Alex Burke, and defendants' counsel, Todd P. Stelter, plaintiff expanded this interrogatory into a request for a "legend" or document which explained the codes and numbers used in MRS' letters.] Defendants, in response, state that MRS does not use, possess or control any legend or document. However, if there is anything plaintiff wishes to have "decoded," she may identify the item and MRS will provide a decodified version of the document. As of the date of this response, plaintiff has not requested any such decodification.

3. Describe, step-by-step, the process which resulted in Exhibit A being transmitted to plaintiff, beginning with the date and method of transmission of debtor information from the person that sent it, and including all other steps with respect to, for example, computer tapes or other media delivered (when, by whom, where and to whom); the content of computer tape or media; data input (where and by whom); computer entry or other means of directing transmission letters (where and by whom entry made), the printing of Exhibit A itself, (where, how and by whom); the mailing of Exhibit A (from where and by whom), and Identify all persons who participated in the process.

3

**ANSWER:**   Defendant sends letters to debtors who owe money. Defendant accomplishes this by placing the letters in the U.S. mail.

4.   Describe what further collection steps are taken if no response is received

to letters in the form represented by Exhibit A.

**ANSWER:**   Defendant objects to this interrogatory as it requests a purely speculative response.

5.   Describe all document destruction and retention policies of the defendant.

**ANSWER:**   MRS does not have a written document destruction and retention policy. However, all letters sent by MRS to a debtor can be reproduced, in general. There is also a non-written policy regarding ingoing and outgoing documents. When a letter is sent to a debtor, this communication is automatically noted on a DACKS system. DACKS is the internal computer system which MRS uses to access debtor account information. All letters and correspondence received from a debtor, the debtor's attorney, or a power of attorney are filed for a period of 120 days upon receipt. Upon receipt, incoming mail is also documented in the DACKS system, with a brief description of the nature of the correspondence.

6.   State whether information regarding your accounts is retrievable by

computer and, if so, each field by which data is searchable or retrievable. State whether your

computer can determine the number of instances in which the form letter represented by Exhibit

A was mailed within a specified period to collect a K-Mart debt, and the persons to whom such

letters were sent.

**ANSWER:**   Defendant states that it stores debtor account information and histories in computer files. Documents which the defendant received are kept for approximately 120 days. Defendant is capable of reproducing its letters sent to debtors from the current date, back to approximately March of 2003. General information relative to debtor files and records are stored electronically forever. The computer can, and defendants have already produced, the number of instances in which the letter represented by Exhibit A was mailed to those people defined by plaintiff's class definition, which was 2,926. The computer can also determine the members of the class and will preserve said information.

7.   State the number and name and address of the (a) natural persons residing

in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some

4

reason you believe this debt is not valid. ..." and the statement "Interest may accrue on unpaid

balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or

before June 20, 2004.

ANSWER:     Defendant objects because the disclosure of such information would
            constitute an illegal and unauthorized third-party disclosure under the
            FDCPA and also constitutes multiple violations of the Gramm-Leach-Bliley
            Privacy Act. Furthermore, at this time, this request for this information is
            premature because no class has been certified. Defendant will produce the
            class list, if and when a class is certified, and/or as ordered by the Court, and
            only pursuant to a protective order.

8.      If you contend that any of the persons who are described in the preceding

interrogatory incurred the debts sought to be collected for business purposes, identify the persons

and state the facts upon which you base your contention.

ANSWER:     Defendant has no ability to determine the purpose for which plaintiff
            incurred debt and no information concerning this subject. Defendant
            reserves the right to make such a contention should information be
            discovered.

9.      State the net worth of defendant and whether its financial statements are

audited. If defendant's financial statements are not audited, identify all credit applications and

financial statements issued or submitted by defendant in the last 3 years.

ANSWER:     MRS' has already produced an audited balance sheet containing net worth
            information, as described in Sanders v. Jackson, 299 F. 3d. 998 (7th Cir.
            2000).

10.     Identify each lawsuit in which a determination of defendant's net worth

has been made, or in which defendant has provided or produced financial statements or

information concerning its net worth.

ANSWER:     MRS' has already produced an audited balance sheet containing net worth
            information, as described in Sanders v. Jackson, 299 F. 3d. 998 (7th Cir.
            2000).

S897119v1 843461

11. Identify each instance in which defendant has provided financial statements information concerning its net worth to any governmental agency.

**ANSWER:** **MRS' has already produced an audited balance sheet containing net worth information, as described in** Sanders v. Jackson, **299 F. 3d. 998 (7th Cir. 2000).**

12. Explain the basis for your claim that any violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures are maintained and how they are adapted to avoid the matters complained of.

**RESPONSE:** **Defendant reserves the right to present defenses as provided for by the applicable rules and court orders.**

13. If your response to any of the requests for admissions is anything other than an unqualified admission, please explain the basis for your denial.

**RESPONSE:** **The false nature of the requests form the basis for all denials and defendants responses adequately address all denials or equivocal admissions.**

14. With respect to each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**ANSWER:** **Defendant reserves the right to name witnesses as required by the court and the agreed upon discovery schedule.**

### III. REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce:

5837119v1 843461

1.    All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

**RESPONSE: Plaintiff is in possession of all of the actual letters sent to plaintiff.**

2.    All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiffs name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff.

**RESPONSE: Plaintiff's account notes have already been produced.**

3.    All documents relating to any testing done of defendant's collection letters (surveys, focus groups, readability analysis, etc.).

**RESPONSE: Defendant objects to this request as it is vague and ambiguous and overly broad as to the terms "any testing."  Without waiving said objections, defendant states that there is no testing done to its letters as described in this request. The letters are at times visually inspected.  No systematic or official documents are kept regarding such inspections.**

4.    All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices relating to the Fair Debt Collection Practices Act, or state statutes regulating debt collectors or debt collection.

**RESPONSE: Defendant objects to this request as it is too broad and unduly burdensome. MRS is a collection agency and therefore, arguably all documents in MRS' possession are "relating to the Fair Debt Collection Practices Act, or state statute regulating debt collectors or debt collection."  In addition, MRS' intent is irrelevant under the FDCPA, and therefore the documents requested herein are irrelevant to the merits of plaintiff's case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000).  [Pursuant to Rule 37 conference between plaintiff's counsel, Alex Burke, and defendant's counsel, Todd P. Stelter, plaintiff would only agree to limit the scope of this request "to the past 5 years and relating to the allegations in the complaint."]  Without waiving said objection, and limiting the above request as stated above, MRS states that MRS bases its conduct upon the FDCPA.  MRS therefore relies upon the FDCPA itself as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide which is attached hereto.  There are no specific manuals, memoranda, instructions or other documents specifically relating to the allegations in plaintiff's complaint.  MRS reserves the right to disclose**

5897119v1 843461

additional materials in support of its defenses as provided for by the Court and the applicable rules.

5.   All manuals, memoranda, instructions, and other documents setting forth defendant's policies, procedures or practices relating to the collection of debts.

RESPONSE: Defendant objects to this request as it is too broad and unduly burdensome. MRS is a collection agency and therefore, arguably all documents in MRS' possession relate to "policies, procedures or practices relating to the collection of debts." In addition, MRS' intent is irrelevant under the FDCPA, and therefore the documents requested herein are irrelevant to the merits of plaintiff's case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). [Pursuant to Rule 37 conference between plaintiff's counsel, Alex Burke, and defendant's counsel, Todd P. Stelter, plaintiff would only agree to limit the scope of this request "to the past 5 years and relating to the allegations in the complaint."] Without waiving said objection, and limiting the above request as stated above, MRS states that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide which is attached hereto. There are no specific manuals, memoranda, instructions or other documents specifically relating to the allegations in plaintiff's complaint. MRS reserves the right to disclose additional materials in support of its defenses as provided for by the Court and the applicable rules.

6.   All manuals, memoranda, instructions, and other documents referring to the form of letter represented by Exhibit A.

RESPONSE: Defendant objects to this request as it is too broad and unduly burdensome. MRS is a collection agency and therefore, arguably all documents in MRS' possession relate to its letters. In addition, MRS' intent is irrelevant under the FDCPA, and therefore the documents requested herein are irrelevant to the merits of plaintiff's case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). [Pursuant to Rule 37 conference between plaintiff's counsel, Alex Burke, and defendant's counsel, Todd P. Stelter, plaintiff would only agree to limit the scope of this request "to the past 5 years and relating to the allegations in the complaint."] Without waiving said objection, and limiting the above request as stated above, MRS states that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide which is attached hereto. There are no specific manuals, memoranda, instructions or other documents specifically relating to the allegations in plaintiff's complaint. MRS reserves the right to disclose additional materials in support of its defenses as provided for by the Court and the applicable rules.

8

7.  All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendant was accused of violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.

**RESPONSE:** Defendant objects to this request as it is irrelevant, too broad and unduly burdensome. [Pursuant to Rule 37 conference between plaintiff's attorney, Alex Burke, and defendant's attorney, Todd P. Stelter, plaintiff would only agree to limit the scope of this request to "documents dated or obtained within the last 5 years."] Because of plaintiff's refusal to limit this interrogatory to a reasonable and/or relevant scope, MRS continues to object. This request is too broad and there are arguably tens of thousands of documents which are responsive. Documents relating to past accusations against MRS in regard to the FDCPA are not relevant to this litigation. Moreover, MRS' intent is irrelevant in an FDCPA case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). In addition, the majority of the documents requested are public record and plaintiff has equal access to said documents.

8.  All documents relating to any complaint, criticism or inquiry, by any person, concerning defendant's compliance with the Fair Debt Collection Practices Act, or state statutes regulating debt collection activities, or collection practices generally.

**RESPONSE:** Defendant objects to this request as it is irrelevant, too broad and unduly burdensome. [Pursuant to Rule 37 conference between plaintiff's attorney, Alex Burke, and defendant's attorney, Todd P. Stelter, plaintiff would only agree to limit the scope of this request to "documents dated or obtained within the last 5 years."] Because of plaintiff's refusal to limit this interrogatory to a reasonable and/or relevant scope, MRS continues to object. This request is too broad and there are arguably tens of thousands of documents which are responsive. Documents relating to past complaints, criticism or inquiries against MRS in regard to the FDCPA are not relevant to this litigation. Moreover, MRS' intent is irrelevant in an FDCPA case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). In addition, the majority of the documents requested are public record and plaintiff has equal access to said documents.

9.  All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.

5897119v1 843461

RESPONSE: Defendant objects to this request as it is irrelevant, too broad and unduly burdensome. [Pursuant to Rule 37 conference between plaintiff's attorney, Alex Burke, and defendant's attorney, Todd P. Stelter, plaintiff would only agree to limit the scope of this request to "documents dated or obtained within the last 5 years."] Because of plaintiff's refusal to limit this interrogatory to a reasonable and/or relevant scope, MRS continues to object. This request is too broad and there are arguably tens of thousands of documents which are responsive. Documents relating to past claims against MRS in regard to the FDCPA are not relevant to this litigation. Moreover, MRS' intent is irrelevant in an FDCPA case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). In addition, the majority of the documents requested are public record and plaintiff has equal access to said documents.

10.    All documents (irrespective of date) which constitute or reflect communications between defendant and public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, a Better Business Bureau or newspaper column), relating to collection activities of defendant.

RESPONSE: Defendant objects to this request as it is irrelevant, too broad and unduly burdensome. [Pursuant to Rule 37 conference between plaintiff's attorney, Alex Burke, and defendant's attorney, Todd P. Stelter, plaintiff would only agree to limit the scope of this request to "documents dated or obtained within the last 5 years."] Because of plaintiff's refusal to limit this interrogatory to a reasonable and/or relevant scope, MRS continues to object. This request is too broad and there are arguably tens of thousands of documents which are responsive. Documents relating to communications in regard to the FDCPA are not relevant to this litigation. Moreover, MRS' intent is irrelevant in an FDCPA case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). In addition, the majority of the documents requested are public record and plaintiff has equal access to said documents.

11.    All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act.

RESPONSE: Defendant objects to this request as it is too broad and unduly burdensome. MRS is a collection agency and therefore, arguably all documents in MRS' possession relate to its compliance with the FDCPA. In addition, MRS' intent is irrelevant under the FDCPA, and therefore the documents requested herein are irrelevant to the merits of plaintiff's case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). [Pursuant to Rule 37 conference between plaintiff's counsel, Alex Burke, and defendant's counsel, Todd P. Stelter, plaintiff would only agree to limit the scope of this

5897119v1 843461

request "documents dated or obtained within the last 5 years."] Without waiving said objection, and limiting the above request as stated above, MRS states that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide which is attached hereto. MRS reserves the right to disclose additional materials in support of its defenses as provided for by the Court and the applicable rules.

12.    If Exhibit A was printed or mailed by someone other than defendant, all contracts pursuant to which such printing or mailing was done and all records, invoices and checks (or other payment instruments) relating to such printing or mailing.

RESPONSE: Defendant objects to this request as it is irrelevant. MRS' intent is irrelevant under the FDCPA, and therefore the documents requested herein are irrelevant to the merits of plaintiff's case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000).

13.    All documents showing the number of examples of Exhibit A mailed by or on behalf of defendant, and the geographic areas or periods of time of such mailings.

RESPONSE: None exist.

14.    All organizational charts of defendant.

RESPONSE: [Pursuant to a Rule 37 conference between plaintiff's counsel, Alex Burke, and defendant's counsel, Todd P. Stelter, plaintiff agreed to allow MRS to redact its employee named from its organizational chart prior to production.]  Subject to the above stated limitation, see attached organizational chart.

15.    All insurance policies that may afford coverage with respect to the matters complained of, together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

RESPONSE: Defendant was insured under Gulf Insurance Group Errors and Omissions Liability Insurance, policy number GA9499238. Subsequent to this litigation being initiated, coverage was declined by Gulf Insurance. The letter declining coverage is protected by the work product privilege and is irrelevant to this litigation.

58971 19v1 843461

16.     All documents relating to the maintenance by defendant of procedures adapted to avoid any violation of the Fair Debt Collection Practices Act.

RESPONSE: Defendant objects to this request as it is too broad and unduly burdensome. MRS is a collection agency and therefore, arguably all documents in MRS' possession relate to its compliance with the FDCPA. In addition, MRS' intent is irrelevant under the FDCPA, and therefore the documents requested herein are irrelevant to the merits of plaintiff's case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). [Pursuant to Rule 37 conference between plaintiff's counsel, Alex Burke, and defendant's counsel, Todd P. Stelter, plaintiff would only agree to limit the scope of this request "documents dated or obtained within the last 5 years."] Without waiving said objection, and limiting the above request as stated above, MRS states that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide which is attached hereto. MRS reserves the right to disclose additional materials in support of its defenses as provided for by the Court and the applicable rules.

17.     All documents setting forth defendant's document destruction and retention policies.

RESPONSE: None. See answer to interrogatory #5.

18.     Defendant's annual financial statements, annual reports, semiannual and quarterly financial statements, credit applications and tax returns for the last three years.

RESPONSE: MRS' has already produced an audited balance sheet containing net worth information, as described in Sanders v. Jackson, 299 F. 3d. 998 (7th Cir. 2000).

19.     All credit applications or financial statements defendant issued within the last 3 years.

RESPONSE: MRS' has already produced an audited balance sheet containing net worth information, as described in Sanders v. Jackson, 299 F. 3d. 998 (7th Cir. 2000).

20.     All information submitted by defendant to Dun & Bradstreet, Fitch, or any other entity which rates the creditworthiness or financial soundness of defendant or securities relating to defendant, during the last three years.

5897119v1 843461

RESPONSE: MRS' has already produced an audited balance sheet containing net worth information, as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000).

21.    All proposals and bids defendant submitted to governmental agencies which describe defendant's business.

RESPONSE: MRS' has already produced an audited balance sheet containing net worth information, as described in <u>Sanders v. Jackson</u>, 299 F. 3d. 998 (7th Cir. 2000).

22.    One copy of each different form letter defendant sends to debtors.

RESPONSE: Defendant objects because this request is overbroad and unduly burdensome. Furthermore, defendants also object because said request asks for documents irrelevant to the subject matter of the complaint.

23.    The complete file, including but not limited to computer information, for all (a) natural persons residing in Illinois (b) to whom defendant sent a letter containing both the statement that "If for some reason you believe this debt is not valid . . . ." and the statement "Interest may accrue on unpaid balances" (c) seeking to collect a K-Mart credit card, (d) on or after June 1, 2003 and (e) on or before June 20, 2004.

RESPONSE: Defendant objects because the disclosure of such information would constitute an illegal and unauthorized third-party disclosure under the FDCPA and also constitutes multiple violations of the Gramm-Leach-Bliley Privacy Act. Furthermore, at this time, this request for this information is premature because no class has been certified. Defendant will produce the class list, if and when a class is certified, and/or as ordered by the Court, and only pursuant to a protective order.

M.R.S. ASSOCIATES, INC.

By: _____
      One of its attorneys

David M. Schultz

5857119v1 343461

Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081
312-704-3000
312-704-3001 (FAX)

58971119v1 843461

# VERIFICATION

I, Stewart J. Miller, being first duly sworn upon oath, hereby depose and state that I serve as Representative of Defendant herein. The foregoing Amended Answers to Interrogatories, Amended Responses to Production of Documents and Amended Responses to Requests for Admission to Defendant, are complete, true and correct to the best of my knowledge, information and belief.

_____
Stewart J. Miller on behalf of Defendant,
M.R.S. ASSOCIATES, INC.

Subscribed and Sworn to Before

me this 6th day of April 2005.

_____
NOTARY PUBLIC

Barbara A. Grello
Notary Public
Camden County, New Jersey
My Commission Expires 9/17/2009

# Collection Notice Review (CNR) Program User Guide

## March 2004



**ACA**
INTERNATIONAL
The Association of Credit
and Collection Professionals

From:

03/09/2005 12:54 #030 P.002/046

© 2004 ACA International. All Rights Reserved.

THIS INFORMATION IS NOT TO BE CONSTRUED AS LEGAL ADVICE. LEGAL ADVICE MUST BE TAILORED TO THE SPECIFIC
CIRCUMSTANCES OF EACH CASE. EVERY EFFORT HAS BEEN MADE TO ASSURE THAT THIS INFORMATION IS UP-TO-DATE AS OF
THE DATE OF PUBLICATION. IT IS NOT INTENDED TO BE A FULL AND EXHAUSTIVE EXPLANATION OF THE LAW IN ANY AREA. THIS
INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND MAY NOT BE USED AS LEGAL ADVICE. IT SHOULD NOT BE USED TO
REPLACE THE ADVICE OF YOUR OWN LEGAL COUNSEL.

THE CONTENTS OF THIS GUIDE DO NOT ALTER, AMEND, MODIFY OR SUPERCEDE THE TERMS AND CONDITIONS OR
REQUIREMENTS OF YOUR ERRORS AND OMISSIONS INSURANCE POLICY. REFER TO THE LANGUAGE IN YOUR POLICY TO
DETERMINE THE POLICY TERMS, CONDITIONS AND REQUIREMENTS.

# CONTENTS

INTRODUCTION                                      SECTION 1

    History and Purpose of the CNR Program
    Member Input to the CNR Program
    Enhancements and Options

INSURANCE POLICY COMPLIANCE                       SECTION 2

THE CNR PROCESS                                   SECTION 3

    The CNR Process Step-by-Step
    Timing
    Languages Other than English
    Web Sites
    Appeals

CONTACT INFORMATION                               SECTION 4

CNR PANEL                                         SECTION 5

    CNR Attorney Availability
    List of CNR Attorneys

CNR FEES                                          SECTION 6

FEDERAL COMPLIANCE                                SECTION 7

PRE-APPROVED LETTER CHANGES                       SECTION 8

    Warranty and Acknowledgement
    Option #1 – Paper Color Choices
    Option #2 – Data Variables
    Option #3 – Inserting State/Local Special Text
    Option #4 – Backers
    Option #5 – Letter Bundling to CNR Attorney

USE OF A LETTER SERVICE                           SECTION 9

REVIEW OF LETTERS NOT SUBJECT TO FDCPA            SECTION 10

REVIEWED LETTER MAINTENANCE                       SECTION 11

CNR COMMUNICATIONS                                SECTION 12

ADDENDUMS                                         SECTION 13

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                                              03/09/2005 12:54 #030 P.004/046

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

# INTRODUCTION
# SECTION 1

### History and Purpose of the CNR Program

The Collection Notice Review Program (CNR Program) has been in place for 3 years. The CNR Program was developed to provide our members/your agency (interchangeably used throughout this Guide) with a risk management tool designed to eliminate the source of potential claims resulting from violations of the Fair Debt Collection Practices Act (FDCPA). Claims involving collection letters/notices have generated sizable class action suits and the number of these suits has been increasing. The risk management provided by the CNR Program has resulted in a stable offer of coverage, services, and managed premiums during the hardest market the insurance industry has seen in recent history.

The requirement to have collection notices reviewed is not a new one. Previous insurance carriers required that ACA insured members have their letters reviewed by an attorney knowledgeable in collection law and so warrant the completion of the review in their applications. It was determined, however, that a more formal approach was required and so the CNR Program, as we know it today, was instituted in November 2000. We thank our members for their assistance, patience, and continued support of this important risk management initiative.

### Member Input to the CNR Program

While working with our members on their Errors & Omissions renewal in November of 2002, the Insurance Unit made note of your comments as they related to the CNR Program. As a result of your feedback and comments, ACA, AON Risk Services (AON) and Gulf Insurance Company (Gulf) have met to determine the best approach to address your concerns.

We jointly agreed the first step would be a survey of the participants in ACA's Errors & Omissions Program (E&O Program). The survey was sent to all members insured through the E&O Program on February 17th, 2003. We received a response to the survey from 28% of the participants. That is an excellent percentage and we thank you. A majority of the member responses acknowledged they had made changes to their collection notices as a result of the CNR Program. The results of the survey and your ongoing communications with the Insurance Unit, the CNR Panel, and your Claims Specialists at Gulf have given us the foundation on which to develop changes and enhancements to your CNR Program.

The following is a brief summary of what members shared with ACA. You will find that this CNR User Guide (Guide) addresses issues identified by the survey.

- **Attorney availability** – Members required to use an attorney on the CNR Panel (CNR Attorney) only in their state expressed that they did not have enough alternatives from which to choose.
- **Attorney's services** – The majority of the CNR Attorneys were found to provide prompt service. We have addressed those of concern individually.
- **Fees Charged for the CNR Review** – For the most part, members believed they were being charged a fair price for this service. Again, we have addressed those of concern individually.
- **Review and your compliance efforts** – The majority stated they were made aware of problems with their letters as a result of both the initial and subsequent reviews and acknowledged the value the review brought to them.
- **CNR Program adherence** – The majority of respondents had one staff person assigned to monitor the CNR Program in their office. Members, in general had not elected to go without coverage on any of their letters. Many, however, indicated they (or their letter service) had made unapproved changes to their letters in between the initial and subsequent reviews.
- **Use of Pre-approved standardized letters** – The majority felt any standardized letter offered would not be effective and so were not interested in this option.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From: 03/09/2005 12:55 #030 P.006/046

- **Letters for services other than third-party debt collection** – A small percentage of those responding indicated a need for letter reviews tailored for their specialized services.
- **Subsequent 24 month letter review** – Many members felt a subsequent review of previously approved letters should not be a requirement.

As discussed in Section 2 of the Guide, the ACA Errors and Omissions Insurance Policy (Policy) requires a review of your letters every 24 months. The responses in the survey and several claim situations indicate that members have, in fact, changed their letters from when they were first approved triggering the CNR requirement.

Additionally, members overwhelming indicated that they were made aware of new and/or additional compliance concerns as a result of the subsequent review. Even though your collection letters may not have changed, courts at the state and federal level may have issued opinions or other rulings determining that certain language in collection notices is no longer compliant with the law. Further, city, state and federal statutes, rules and regulations often change.

Each of these changes may result in changes that must be made to your collection letters. We have, therefore, determined that the 24 month requirement will remain unaltered.

- In addition to the issues addressed above, member recommendations for improvements included:

1. Simplified letter submission procedures.
2. Consideration for those attempting multiple state compliance.

ACA, AON, and Gulf have worked to implement as many of these recommended changes as possible while maintaining the integrity of the CNR Program.



### Enhancements and Options

In addition to the numerous tools and clarifications, the following are the enhancements and options you will find presented in this Guide:

- expanded selection of CNR Attorneys in each state (Section 5) ;
- optional pre-approved paper color choices to use in your collection process (Section 8);
- optional pre-approved data variables to use in your collection notices (Section 8);
- ability to insert pre-approved state/local special text (Section 8);
- optional pre-approved backer state/local text (Section 8);
- optional letter bundling to your CNR Attorney for state and local compliance efforts (Section 8); and
- sample contractual language between your agency and letter service company (Section 9)



### Purpose of the CNR User Guide

It is our sincere hope that this Guide will make it easier for our members to adhere to this Policy requirement and help to eliminate the few instances of uncovered claims resulting from the use of unapproved letters in their collection process. This Guide does not replace your compliance resources such as your attorney or *ACA's Guide to State Collection Laws and Practices*.

You are strongly encouraged to review this Guide in its entirety. To assist you with this review, you may want to refer to the following icons.

 = REMINDER     = CAUTION     = ENHANCEMENT

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                    03/09/2005 12:56 #030 P.007/046

# INSURANCE POLICY COMPLIANCE
# SECTION 2

 **Policy Compliance**

This section discusses how ACA members must comply with the terms and conditions of the Policy to qualify their uniform collection notices or letters for coverage under the Policy. Please note this Guide does not change or alter coverage provided under the Policy and that Insured members should refer to their individual Policy, for the exact coverage terms and conditions.

The Policy, underwritten by Gulf, requires Insured members to have all <u>uniform</u> collection notices or letters (Sections 7 and 10) reviewed and approved by an attorney on the CNR Panel (Section 5) before insurance coverage can extend to such letters or notices. (This requirement is addressed in the Policy under Exclusion #25 and Section G - General Terms and Conditions 7, Collection Notice Review.}

However, the CNR Program shall not be required for any <u>single use</u> written notice or letter that is drafted and issued on a case-by-case basis to a Consumer (as defined in the Policy) in connection with Debt (as defined in the Policy).

The initial letter review must occur within 60 days of the effective date of the Insured member's first Policy with Gulf. Following the initial review, the notices or letters will need to be reviewed every 24 months thereafter.

In addition, any REVISED or NEWLY CREATED notices or letters will need to be reviewed <u>prior to use</u> and subsequently reviewed every 24 months thereafter in order for coverage to apply per the Policy terms and conditions.

For example, if you use a newly created letter in May and it is not approved until November, any claim resulting from the use of that letter prior to its approval will be denied. This Policy condition is not retroactive. (Section 11.)

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

# THE CNR PROCESS
# SECTION 3

**The CNR Process Step-by-Step**

To initiate the CNR Process:

- contact a CNR Attorney (Section 5) to negotiate fees (Section 6) based on the number and types of letters your agency needs reviewed;
- review and complete the Letter of Engagement provided by your selected CNR Attorney;
- conduct an inventory of the uniform collection letters used by your agency to determine which letters you will continue to use, regardless of frequency; and
- delete from your system and/or letter service's system all letters you will no longer be using.

The Letter of Engagement will provide you with formal submission instructions and will lay out your responsibilities and those of your CNR Attorney in the CNR Process. These instructions should include the following:

- separate and identify each letter submitted for review into the following categories:
  - (1) initial written communication with a consumer (as defined in the Fair Debt Collection Practices Act (FDCPA)) to collect debts that are in default;
  - (2) subsequent written communication with a consumer (as defined in the FDCPA) to collect debts that are in default;
  - (3) consumer debts that are not in default (i.e. letters used in connection with outsourcing, pre-collect, billing and letter service, etc. activities);
  - (4) child or family support/maintenance;
  - (5) commercial accounts; and,
  - (6) fines or penalties, not including NSF check penalties;
- as applicable, indicate on the face of each letter whether it is used as a 30-day validation notice, as a written communication to the consumer during the 30-day validation period or as a written communication to the consumer after the expiration of the 30-day validation period;
- make sure the letters submitted for review appear _exactly_ as they will be transmitted to **Consumers**, including but not limited to logos, letterhead, color of paper, font type, text, text placement, and variables (Section 8 of this Guide discusses new options for use of colored paper and variables);
- provide samples of any envelopes used in association with your agency's collection letters and make certain they appear exactly as they will be transmitted to **Consumers** including any text, return address and color of envelope (Section 13 includes samples of pre-approved colored paper for letters and envelopes);
- provide a statement to the CNR Attorney identifying in which states your agency conducts collection activity (Section 8 of this Guide discusses new options for State and/or Local Compliance);
- provide a description of the services your agency provides to your creditor clients and appropriately bundle your letters so the CNR Attorney knows which letters follow in a series and for what type of collections the letter is being used;
- indicate whether the agency is a data furnisher pursuant to the Fair Credit Reporting Act (FCRA);
- indicate whether the agency compiles credit information and distributes credit reports to third parties;
- describe the agency's policies and services with regard to the pursuit of legal action against **Consumers** and any references of this legal action made in collection letters;
- direct this information, along with a signed copy of the Letter of Engagement and payment for fees based upon the agency representative's negotiations with the CNR Attorney, in accordance with the CNR Attorney's instructions as detailed in the Letter of Engagement;

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                                          03/09/2005 12:57 #030 P.009/046

- maintain a copy of all written communications as documentation that you send to, or receive
  from your CNR Attorney throughout the CNR process (Please note, a copy of the Letter Review
  Checklist and approved letter with its document control number, as provided to you by your CNR
  Attorney, must be submitted to Gulf in the event of a claim involving a letter subject to the CNR
  requirement);
- if a particular collection letter does not meet all of the requirements on the Checklist, that letter
  will receive an "Unsatisfactory" rating and will not be eligible for insurance coverage by Gulf. The
  letter and Checklist will be returned to you, along with an explanation of why the letter is
  unsatisfactory.

  Subject to the terms of the Letter of Engagement, members that subsequently amend a letter
  previously returned for having failed may resubmit the letter to the CNR Attorney within 45 days
  of the date of the original review (the date indicated on the Checklist). If the letter meets the
  CNR requirements at that time, the letter will be assigned a new document control number and
  will be eligible for coverage under the Policy. No additional fee will be charged for a single
  resubmission of a letter to the CNR attorney's attention for review within this time period.

## Timing

Unless the Letter of Engagement states otherwise, the CNR Attorney will make every attempt to
complete your agency's letter review within one month of their receipt of your complete submission,
payment, and completed Letter of Engagement. If for any reason the CNR Attorney finds that he or she
will be unable to meet this deadline, the CNR Attorney must notify you in writing.

Letter reviews may be expedited based on negotiations with your CNR Attorney. You must provide a
written request to your CNR Attorney for expedited service.

## CNR for Communications in Languages Other than English

If your letters are in a language other than English, such letters must be provided to the CNR Attorney
for review along with an English translation of the foreign language version of the letter. Along with the
translation, the agency must provide a statement indicating that the foreign language version "says" the
same thing as the English version. The CNR Attorney will conduct his/her review based upon the
information and translation provided by the agency. If a claim is filed and it is discovered that the foreign
language version of the letter does not "say" the same thing as the English version of the letter,
coverage may be denied.

## Web Sites

If your collection notices reference your Web site, the Web site must be reviewed and approved
pursuant to the CNR Program, or reference to the Web site must be removed from the collection
notice(s). Recent case law has determined that if an agency's collection notice references the agency's
Web site, the contents of the Web site are incorporated into the collection notice. This is true even if the
recipient of the collection notice never visits the Web site referenced in the collection notice. The
Checklists specifically ask whether the collection notice references a Web site. If the Web site has not
been reviewed and approved in accordance with the CNR Program, the collection notice with the Web
site reference will be deemed "Unsatisfactory" until such time as the Web site is reviewed and approved
or the Web site reference is removed from the collection notice. All Web site pages to which the
consumer has access must be submitted for review and approval.

If the Web site links to other Web sites, there must be a "redirect" screen that provides notice to the
Web site visitor that s/he is now leaving [company name's] Web site. The redirect notice should further
indicate that [company name] is not responsible for and has no control over content that appears
beyond that point.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

Appeals

Should a dispute arise between an ACA member and the CNR Attorney, the following dispute resolution procedure applies:

Neither ACA, the ACA Legal and Government Affairs Department, the ACA Compliance Division, the Risk Management Department, the ACA Risk Management Insurance Unit, nor any individual of the ACA staff can override the decision of the CNR Attorney. Subject to the terms of the CNR Letter of Engagement, the member has the opportunity to resubmit its "unsatisfactory" letters to the CNR Attorney within 45 days of the initial review. The CNR Attorney will then review the letter(s) a second time for no additional fee. If, after resubmitting the letters to the CNR Attorney, the member is still not satisfied with the independent judgment of the CNR Attorney, the member can appeal this decision to the Members' Attorney Program (MAP) Committee.

If a member decides to appeal the decision of the CNR Attorney, the member must provide the letter(s) that were submitted to the CNR Attorney and the checklists as completed by the CNR Attorney and any addendum that the CNR Attorney prepared to Wendy Badger, Associate Corporate Counsel and Director of the Members' Attorney Program, who will forward the information to the MAP Committee. The member may also provide documentation supporting the reasons it feels the letter(s) should be deemed satisfactory. The MAP Committee will consider all the information submitted and issue a written determination upholding or reversing the CNR Attorney's decision. The decision of the MAP Committee is final for Collection Notice Review purposes.



The CNR Attorneys rely solely on the documentation provided by the member and cannot adequately review your letters if the information provided is incomplete or inaccurate. Failure to provide payment or any of the requested information may result in the CNR Attorney being unable to perform the collection notice review. If this occurs, the CNR Attorney will return your letters, along with an explanation of why the letters have not been reviewed.

The CNR Program has been adopted for risk management purposes only. Letter review documentation does not constitute a legal opinion upon which you may rely as a written guaranty or formal legal opinion that your collection letter(s) comply with all state and federal laws, applicable regulations and ordinances. Nor does the letter review documentation suggest, imply or otherwise represent that said collection letters are used for an appropriate business purpose or in an appropriate business manner. Furthermore, just as court interpretations vary from jurisdiction to jurisdiction, CNR Attorney's determinations may vary based on the region in which the CNR Attorney is located.

As such, the CNR Attorneys make no certification, warranty or representation whatsoever that by retaining the CNR Attorney to conduct this risk management review of your collection letters that your agency is protected from claims and/or liability pursuant to any federal, state or local law.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and conditions of the Policy. The terms and conditions of the Policy will govern.

From:

From:                                          03/09/2005 12:58 #030 P.011/046

# CNR CONTACT INFORMATION
# SECTION 4

While reviewing this material, you will find a majority of your questions are answered by the Guide. However, should you have questions while implementing the CNR Program, following are the individuals you can contact for assistance.

- **Your CNR Attorney** – is retained by you to perform the review of your collection notices. They can assist you with your questions and concerns relating to the submission of your letters; the status of your review; and subsequent recommendations. Refer to your Letter of Engagement to determine if phone consultation is included in the CNR fee.

  (Note: your CNR Attorney has not been retained to provide you with counsel of legal issues outside of your letter review. If you wish to use their services outside of the CNR Program, you will need to enter into a separate agreement.)

- **Wendy Badger** – +1(952) 928-8000 #116 – *badger@acainternational.org*

  Wendy is the Director of the Member Attorney Program and serves as the CNR Program Manager. She will be able to assist you with any questions or concerns you may have with instructions and recommendations you have received from your CNR Attorney. She can also assist you with questions regarding the CNR Program and the application of the CNR Guide. If you would like to recommend an attorney for consideration on the CNR Panel, please contact Wendy or her assistant, Julie Brooks at +1(952) 928-8000 #135 *brooksj@acainternational.org*.

- **Janis St. Martin** – +1(952) 928-8000 #230 - *stmartin@acainternational.org*

  Janis is the Director of the Risk Management Department and serves as the Errors & Omissions Program Manager. She will be able to assist you with your specific questions and concerns regarding insurance carrier coverage determinations that relate to your collection notices. Janis can also assist you should require clarification of the instructions contained within the Guide.

- **ACA's Insurance Unit** – your Client Service Representative will be able to assist you with general questions surrounding insurance coverage as it relates to the CNR Program. Each insured has been assigned a Client Service Representative (Section 13).

- **ACA's Compliance Division** – *compliance@acainternational.org*

  As a member, ACA's Compliance Division is here to assist you with general questions regarding federal and state regulations as they relate to your collection notices. If you have general questions while preparing a letter for submission to your CNR Attorney, they will be happy to assist you. You can e-mail your questions to *compliance@acainternational.org* (remember to include your ACA ID number) or call ACA's Headquarters and ask to speak with the Compliance Officer of the Day.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                    06/09/2005 12:58 #030 P.012/046

# CNR PANEL APPROVED ROSTER
# SECTION 5

Select attorneys who participate in the ACA Members' Attorney Program (MAP) have been recognized as attorneys who are qualified to conduct the risk control analysis of your collection letters for purpose of obtaining a Policy through Gulf. Below is a list of CNR Attorneys.

ACA members should select a CNR Attorney from this list and contact him or her personally prior to forwarding any collection notices for review.

Please make sure you have the most recent list of the CNR Panel when making your CNR Attorney selection. ACA staff works diligently to ensure that the information provided in this list is as current as possible. An updated version of this list is available on ACA's fax-on-demand service, *Fastfax* (1-800-254-8459, document number 6560).



**Attorney Availability**

Per the options provided in Section 8 of the Guide with respect to state specific text letters, you are no longer required to select a CNR Attorney located in the state in which your agency is domiciled (i.e. maintains its principal office). Rather, you may select any CNR Attorney from the list. You are encouraged to talk with several CNR Attorneys prior to making a final selection to compare CNR fees and the services provided for such CNR fees, such as phone consultation, etc.

The following list is current as of January 1, 2004.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                              03/09/2005 12:59 #030 P.013/046

# COLLECTION NOTICE REVIEW PANEL AS OF JANUARY 1, 2004

Kevin Ahrenholz
Beecher, Field, Walker Et Al
PO Box 178
Waterloo, IA 50704-0178
(319) 234-1766
ahrenholz@beecherlaw.com

Stephen Bernheim
Attorney At Law
512 Bell St
Edmonds, WA 98020-3147
(425) 712-8318
steve@stevebernheim.com

Robert Black
Black Law Office
7400 Metro Blvd Ste 190
Edina, MN 55439-2354
(952) 831-1454
rblack007@aol.com

Jill Brown
Morrison Fenske & Sund, P.A.
5125 County Road 101 Ste 102
Minnetonka, MN 55345-4158
(952) 277-0117
jbrown@morrisonfenske.com

Stephen Burton
Stephen D. Burton & Associates
5450 E 5th St
Tucson, AZ 85711-2334
(520) 325-4667
stephen.burton@azbar.org

William Byrd
Attorney At Law
413 Pyramid Way
Sparks, NV 89431-5054
(775) 358-1086
csn@csn-reno.com

Jeffery Carlson
Carlson, Messer & Turner, L.L.P.
5959 W Century Blvd Ste 1214
Los Angeles, CA 90045-6513
(310) 242-2201
carlsonj@cmtlaw.com

Robert Chapman
Stanton, Clay, Chapman, Crumpton & Iwamura
700 Bishop St Ste 2100
Honolulu, HI 96813-4120
(808) 535-8400
rchapman@paclawteam.com

George Childs
George C. Childs, Jr., Attorney At Law
250 Lawrence St NE
Marietta, GA 30060-1658
(770) 428-7250
gchildslaw@aol.com

Jonathan Elliot
Kleban & Samor, P.C.
PO Box 763
Southport, CT 06890-0763
(203) 254-8969
jelliot@kleban-samor.com

David Fenske
Morrison Fenske & Sund, P.A.
5125 County Road 101 Ste 102
Minnetonka, MN 55345-4158
(952) 277-0123
davidfenske@morrisonfenske.com

Robert Friedman
Law Offices of Robert S. Friedman
720 6th St S # 150
Kirkland, WA 98033-6715
(425) 822-0202
rsf@rsfriedman.com

Cynthia Fulton
Attorney At Law
3428 N 17th Ave
Phoenix, AZ 85015-5511
(602) 279-7659
fultonlaw@az.rmci.net

Daniel Gee
Scott H. Marcus and Associates
121 Johnson Rd
Turnersville, NJ 08012-1758
(856) 227-0800
dgee@marcuslaw.net

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:

Ted Godfrey
Attorney At Law
PO Box 828
Ogden, UT 84402-0828
(801) 621-7443
tednang@aol.com

David Gordon
Law Offices of David R. Gordon
50 N 7th St
Bangor, PA 18013-1731
(610) 588-0965
dgordon@hab-inc.com

Alan Greenberg
Greenberg & Associates Law Firm P.C.
770 W Hampden Ave Ste 155
Englewood, CO 80110-2111
(303) 781-3529
agreenberg888@yahoo.com

Gerald Groon
Smith Debnam Narron Wyche Story & Myers
PO Box 26268
Raleigh, NC 27611-6268
(919) 250-2117
hgroon@smithdebnamlaw.com

Jeffrey Hasson
Attorney At Law
12707 NE Halsey St
Portland, OR 97230-2343
(503) 255-5352
jeffrey.hasson@jihassonatty.com

Clifton Hayden
Hedman, Hileman & Lacosta, PLLP
204 Central Ave
Whitefish, MT 59937-2662
(406) 862-2528
clif@whitefishlaw.com

Ronald Jacobs
Weinberg & Jacobs, LLP
11300 Rockville Pike Ste 1200
Rockville, MD 20852-3040
(301) 468-5500
rjacobs@wjlaw.com

Michael Klutho
Bassford Remele
33 S 6th St Ste 3550
Minneapolis, MN 55402-3718
(612) 376-1619
michaelk@bassford.com

Douglas Knutson
Knutson Law Office
PO Box 2091
Idaho Falls, ID 83403-2091
(208) 535-9000
pcsi@ida.net

Ernest Kohlmyer
Bell, Leeper & Roper, P.A.
2816 E Robinson St
Orlando, FL 32803-5828
(407) 897-5150
kohlmyer@blrlawfirm.com

Edwin Matzkin
Attorney At Law
PO Box 626
Jenkintown, PA 19046-7026
(267) 763-0126
ematzkin@qwest.net

Steven McCabe
Pressler & Pressler
16 Wing Dr
Cedar Knolls, NJ 07927-1007
(973) 428-7300 x5114
smccabe@pressler-pressler.com

David McDorman
McDorman & Gillen
2901 W Beltline Hwy Ste 302
Madison, WI 53713-4228
(608) 271-2202
david@mcdormangillen.com

Joseph Messer
Messer & Stilp, Ltd.
166 W Washington St Ste 300
Chicago, IL 60602-2390
(312) 345-0900
messer@messerstilp.com

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                              03/09/2005 13:00 #030 P.015/046

Joan Mitchell
Hollowell Mitchell Peacock & Von Hagen, P.A.
P O Box 13376
Durham, NC 27709-3376
Tel     (919) 783-5657
Fax:    (919) 598-9090
jmitchell@nchealthlaw.com

Christopher Morris
Bassford Remele
33 S 6th St Ste 3800
Minneapolis, MN 55402-3707
(612) 376-1627
chrism@bassford.com

Jason Olivier
Olivier Chitty LLC
PO Box 3489
Covington, LA 70434-3489
(985) 871-8172
jasonolivier@lycos.com

Gary Olshan
Attorney At Law
PO Box 3020
Birmingham, AL 35202-3807
(205) 320-1999
gsocollect@netzero.net

Adam Plotkin
Adam L. Plotkin, P. C.
621 17th St Ste 2400
Denver, CO 80293-2400
(303) 296-3566
aplotkin@alp-pc.com

Daniel Rabin
Berman & Rabin, P.A.
PO Box 11311
Overland Park, KS 66207-1011
(913) 649-1555
drabin@bermanrabin.com

Michael Rosen
Rosen & McCarthy, LLP.
4 Whittier Rd
Natick, MA 01760-1430
(508) 907-6444
rosen_law@msn.com

John Rossman
Moss & Barnett, P.A.
90 S 7th St Ste 4800
Minneapolis, MN 55402-4119
(612) 347-0396
rossmanj@moss-barnett.com

Arthur Sanders
Law Offices of Arthur Sanders
2 Perlman Dr Ste 301
Spring Valley, NY 10977-5245
(845) 352-7272
asanders9@earthlink.net

Ronald Sargis
Hefner, Stark & Marois, LLP
2150 River Plaza Dr Ste 450
Sacramento, CA 95833-4136
(916) 925-6620
rsargis@hsmlaw.com

David Schultz
Hinshaw & Culbertson
222 N Lasalle St Ste 300
Chicago, IL 60601-1013
(312) 704-3527
dschultz@hinshawlaw.com

Michele Stocker
Katz, Barron, Squitero & Faust , P.A.
100 NE 3rd Ave Ste 280
Fort Lauderdale, FL 33301-1165
(954) 522-3636
mls@katzbarron.com

Matthew Sutton
Kellington, Krack, Richmond, Blackhurst &
Sutton, LLP
PO Box 1583
Medford, OR 97501-0120
(541) 779-5175
msutton@kkrbs.com

Sean Thomasson
Thomasson & Thomasson, P.C.
PO Box 2086
Columbus, IN 47202-2086
(812) 372-5785
abbott@hsonline.net

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:

03/09/2005 13:00 #030 P.016/046

Timothy Thompson
The Thompson Law Firm, P.C.
PO Box 11463
Knoxville, TN 37939-1463
(865) 862-8322
tnt@lawcollect.com

Lawrence Young
Hughes, Watters & Askanase, LLP
1415 Louisiana 37th Fl
Houston, TX 77002-7354
(713) 759-0818
lay@hwallp.com

Jeffrey Turner
Surdyk, Dowd & Turner Co. L.P.A.
40 N Main St Ste 1610
Dayton, OH 45423-1027
(937) 222-2333
jturner@sdtlawyers.com

Jeanne Zimmer
Carlson, Messer & Turner LLP
5959 W Century Blvd Ste 1214
Los Angeles, CA 90045-6513
(310) 242-2212
zimmerj@cmtlaw.com

Joseph Vacca
Joseph Louis Vacca, Esquire, PC
2819 S 125th Ave Ste 279
Omaha, NE 68144-3873
(402) 691-0087
vaccalaw@josephvacca.com

Allan Zlimen
Stewart, Zlimen & Jungers
430 Oak Grove St Ste 200
Minneapolis, MN 55403-3234
(612) 870-4100
z@szjlaw.com

Peter Velde
Kightlinger & Gray, LLP
151 N Delaware St Ste 600
Indianapolis, IN 46204-2599
(317) 638-4521
pvelde@k-glaw.com

William Westbrook
Bryant, Clark, Dukes, Et Al
PO Box 10
Gulfport, MS 39502-0010
(228) 863-6101
chip@bryantclark.com

Keith Wier
Daw & Ray, P.C.
5718 Westheimer Rd Ste 1750
Houston, TX 77057-5833
(713) 266-3121
kwier@dawray.com

Kris Wittwer
Stewart, Zlimen & Jungers, Ltd.
430 Oak Grove St Ste 200
Minneapolis, MN 55403-3234
(612) 870-4100
kris@szjlaw.com

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:

# CNR FEES
# SECTION 6

All fee determinations are made between the CNR Attorney and the member. Neither ACA nor Gulf receives any portion of these fees. Neither ACA nor Gulf may interfere with this contractual relationship.

Additional legal services related to the CNR Attorney's review of your collection letters must be separately negotiated. The CNR Attorney must obtain the express written approval of an authorized representative of the agency in advance of providing any such additional services on your behalf that fall outside the scope of the Letter of Engagement. These additional services could include the redraft of your collection letters, advice on the proper use and timing of your letters or a compliance audit. Under no circumstances are you obligated to retain the CNR Attorney for these purposes or for any other reason as a condition of obtaining insurance coverage. These are optional services that are available to you at your discretion.

CNR Attorneys will quote a price for CNR services. If you are not satisfied with the cost of the CNR services quoted by the CNR Attorney, you have the option of contacting other CNR Attorneys to determine where you will get the best value and service for your CNR payment. The Letter of Engagement should quote the agreed upon price for the CNR services.

Types of fee structures for CNR services include, but are not limited to:

- flat fee;
- hourly rate;
- annual retainer fee/agreement;
- flat fee based on the number of letters for review;
- flat fee based on the number and types of letters for review; or
- combination of the above fee structures.

Please keep in mind the CNR Letter of Engagement is an agreement between you and the CNR Attorney. The fees for CNR services are subject to negotiation between you and the CNR Attorney. Please be sure you understand what services are covered and are not covered by the fee quoted in the CNR Letter of Engagement. If you are not sure what is included in the fee, such as telephone consultation, suggested language for collection notices, etc., request clarification from the CNR Attorney.

If you have specific concerns regarding any CNR Attorney, please contact Wendy Badger (Section 4).

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                             03/09/2005 13:01 #030 P.018/046

# FEDERAL COMPLIANCE
## SECTION 7

All collection notices, which are sent to consumers on accounts where the debt was incurred for personal, family or household purposes, including NSF checks, that are in default at the time they were obtained by the member, are reviewed under the federal FDCPA.

The Initial Written Communication Checklist (Form A) is used by CNR Attorneys when reviewing the initial written communication sent to a consumer on debts for personal, family or household purposes that are in default.

The Subsequent Written Communication Checklist (Form B) is used by CNR Attorneys to review written communications sent to a consumer after the initial written communication is sent.

A sample of the Initial Written Communication Checklist and the Subsequent Written Communication Checklist appear in Section 13.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                03/09/2005 13:01 #030 P.019/046

# PRE-APPROVED LETTER CHANGES
# SECTION 8

 As described in Sections 2 and 3 of this Guide, changes to approved letters must be reviewed and approved before such letters will be covered. Any time a letter is changed or revised, or a new letter created, the member must submit that letter for review prior to use. There is no differentiation between a "substantive" verses "non substantive" change to letters.

At our members' request and after careful consideration we are offering you the option to use specific pre-approved letter changes in text and in paper colors <u>for letters that have successfully completed the CNR Process</u>. This section describes these specific pre-approved letter changes in detail and provides exact instructions for implementation. Please review the following carefully and in its entirety as the member is responsible for their accurate use.

You must use the pre-approved letter changes exactly as shown in the following instructions. Any variance will constitute a newly created letter and will require a review.

### Warranty and Acknowledgement

Gulf will not recognize any pre-approved letter change that is not in accordance with the specifications detailed in this Section 8. By using any of the options presented in this Section 8, you are hereby warranting the following:

- the member has elected to use the Pre-Approved Letter Changes as outlined in this Section 8;
- the member's letters have been altered only as and exactly as specified in this Section 8; and
- the member's use of these altered letters will be limited to the instructed use in this Section 8.

The member further acknowledges that:

- any change other than those specified in this Section 8, whether substantive or non-substantive must be approved by a CNR Attorney prior to use or coverage will not be in place for the altered letters.

 **Option #1 – Paper Color Choices**

Many members indicated they would like to be able to change the color of their collection notices from time to time in an effort to keep them fresh and effective. Many colors have proven problematic with respect to compliance and legal issues. As such, the color of your collection notices, letterhead, and envelopes are part of the CNR. This Guide provides you with color samples, which are pre-approved for your use. You may use colors that match the enclosed samples or are a lighter hue. If you use colors that do not match or are not lighter than the enclosed samples, such paper/envelope colors shall require review by your CNR Attorney. Samples of these colors are included in Section 13.

For your information, should you want to submit for review colors other than those specified in Section 13, please note that the following colors of paper and envelopes are always prohibited:

| • Red | • Navy |
|---|---|
| • Yellow | • Any colors/type of fluorescent paper |
| • Purple | • Any colors/type of neon paper |
| • Black | • Any color/type of paper on which black font cannot be seen |

The only color of pre-approved typeface is black. Use of any other color for the text of your letters and envelopes must be reviewed and approved by your CNR Attorney.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:

03/09/2005 13:02 #030 P.020/046

The following types of paper and envelopes must be submitted for review even if the color matches or is a lighter hue that the enclosed samples:

- Any colors/type of speckled paper
- Any colors/type of patterned paper



### Option #2 – Pre-approved Data Variables

To better understand what is meant by a variable data field, a sample layout of a letter and the variable data fields listed below is enclosed in Section 13. Note, this is provided for reference purposes only and is not offered as a standardized letter for your use.

It is clear that certain fields on your letters include standard data variables. Currently, when submitting letters for review you present standard data variables as fields that may change. These standard data variables include:

1) date on which the letter is sent;
2) consumer's name;
3) consumer's address;
4) creditor's name;
5) amount of the debt;
6) individual debt collector's name and/or registered alias assigned to the account; and
7) individual debt collector's direct dial phone number.

In response to our members' feed-back, if you have a letter that has been approved by a CNR Attorney, you may change the following data variables without triggering the CNR requirement. These pre-approved data variables include:

8) agency's street address or P.O. Box;
9) agency's city, state, and zip code;
10) agency's telephone number;

**Note:** If you use pre-printed letterhead <u>only the variables listed above may be changed without CNR approval.</u> Additional items on your letterhead such as logos, your company name, or pictures, if changed, are subject to review.



### State/Local Compliance

We believe it is important for our members to be compliant with specific state and city text requirements. Prior to this Guide, you were required to have your letters reviewed by a CNR Attorney in the state in which you are headquartered. (Section 5)

To require a review in light of all 50 states would have made the CNR Process extremely onerous and cost prohibitive for our members. However, our members incur the expense of their Policy deductible when they are sued for failure to comply with the various state text requirements.

© 2004 ACA International. All Rights Reserved. This Guide does not constitute legal advice or the

From:                                                    03/09/2005 13:02 #030 P.021/046



**Option #3 – Inserting State/Local Special Text**

You may insert the following data variable without triggering the CNR requirement:

11) *State/Local-specific text is pre-approved only when using the exact language provided in Section 13, Addendum 11.



**Option #4 – Backers**

Rather than using state-specific letters when collecting debt, you may include all of the state-specific text for the states in which you conduct business on the back of your letters. If an agency chooses this option, the agency must use the backer for initial written communications or the backer for subsequent written communications, depending on the letter being sent, as provided in Section 13, Addendum 11 of this Guide.

If you are not properly authorized to do business in a particular state, DO NOT include that state's information on the backer.



**Important Information regarding your use of Options #3 and #4**

As specified in Section 13, Addendum 10, the letter you use to insert state specific text must be currently approved and include the following on the front of the letter:

- the name of the creditor;
- the name, address and telephone number of the debt collection agency;
- date the communication was sent;
- the amount of the debt as of the date of the letter;
- the validation notice (in an initial written communication); and
- the statement that "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose."
- The font size and type on the front of the notice must match that on the back of the notice.

If you do not currently have an approved letter with the above listed items, you must submit one letter to your CNR Attorney for approval including a variable data field for state specific text. You may then use this approved letter as specified in this Section 8 and Section 13/Addendum 10.

If your state specific text, whether used in Option #3 and/or #4, is printed on the back of your approved letter you are permitted to include the following text (clear and in all caps) without triggering the CNR Process:

## NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.



**Important consideration for use of Options #3 and #4**

In addition to special text requirements, each state may have additional requirements or disclosures that must be followed based upon the type of debt being collected (e.g. healthcare debt), for which standard text cannot be created. For example, some states may require you to provide the time and place the debt was created, the merchandise or services of value underlying the debt, include information about whether a hospital considers the consumer-patient to be insured or uninsured, include information about "hospital bed funds", or provide a special notice for NSF checks, etc. Such information is not part of the

© 2004 ACA International. All Rights Reserved. This Guide

From:                                          03/09/2005 13:03 #030 P.022/046

pre-approved data variables. Please refer to ACA *Fastfax* document # 2008 (continually updated) and the **ACA Guide to State Collection Laws and Practices** as well as other resources for additional information about these requirements.



### Option #5– Letter Bundling to CNR Attorney

To assist our members with their compliance efforts, we are offering the following options to obtain approved status for your state/local specific letters.

An agency will sometimes have several versions of an "identical" letter including text to make them "state specific". The main text of the letter is the same with the only difference being the individual state-required language in which the agency does business.

If the agency's letters are in fact identical with the sole exception of the state-specific text, the following procedure is acceptable:

The letters should be submitted for review to a CNR Attorney with the "identical" letters in bundles. The first letter in the bundle should be a letter that does not have any specific state "compliance filtered" language. The letters that follow in that bundle would be the same letter with the addition of the individual state-specific language. The CNR Attorney would then review the top template letter under the appropriate Checklist. The CNR Attorney will then review only the state/local language for the remaining letters. The CNR attorney will attach the same document control number to that bundle of "identical" letters. If deemed satisfactory by the CNR Attorney, coverage will be extended to all letters in that bundle subject to the Policy's terms and conditions.

If a claim is filed on any of the letters from that bundle, the agency must comply with the CNR requirements in the Policy and submit the satisfactory document control number to Gulf's Claim Specialist along with any additional items requested.



However, if the main text of the reviewed letter is not identical to the main text (not including the state compliance filtered language) of the letter upon which a claim was filed, coverage will not attach to that state compliance filtered letter. Remember, the agency has represented to the CNR Attorney that the letters are *identical*. If this is not true, there is no coverage for the non-identical letter.

The CNR Attorney will maintain copies of all of bundled letters. For example, if the agency sends a letter into Minnesota (a state that has special text requirements) and a claim is filed on that letter, but the agency did not include a copy of the Minnesota specific letter in the bundle for that particular letter, the Minnesota letter will not be covered.

You may choose to use this letter bundling option if you do not want to use the pre-approved state specific text from Section 13, Addendum 10 (See option #3 above), but rather, you would prefer to write your own state specific text. Since the state-specific text is not pre-approved, each letter must be submitted to your CNR attorney for review and approval.

**NOTE:** You may choose to use any one of the options 3 through 5 or all of these options in combination, depending on your agency's needs. If you do not choose to take advantage of any of these options, you must submit all of your agencies letters for review and approval for such letters to be eligible for coverage.

© 2004 ACA International. All Rights Reserved.

From:                                              03/09/2005 13:03 #030 P.023/046

# USE OF A LETTER SERVICE
# SECTION 9



Many members use a letter service to produce their letters. It is the responsibility of the member to make certain the letter service is fully aware of the CNR Program and its requirements. It is imperative that the letter service provider fully understand that any change to a letter constitutes a newly created letter, which must be reviewed and approved prior to use to be eligible for coverage.

There have been cases where a claim was denied based upon the member's letter service making a change to an approved letter without the member's knowledge or consent. Such changes were not reviewed or approved by a CNR Attorney. Therefore, we consider it prudent not only to inform your letter service of the CNR requirement, but also to test (seed) your letter service on a regular basis so that you periodically review the letters currently in use.

In addition, we also strongly encourage you to have a written contract with your letter service, which includes an indemnity/hold harmless clause, as well as a provision requiring an authorized agency representative's approval before the letter service makes any changes to member's letters. All changes to a member's letters must be reviewed and approved by a CNR Attorney or made in accordance with Section 8.

While they must be tailored to your specific circumstances, the following templates might be useful as a starting point for including indemnity and approval clauses in your agreement with your letter service:

**Sample Indemnity and Hold Harmless Clause:**

[Letter Service] agrees to indemnify and hold harmless [Collection Agency], its successors and assigns, from and against any and all loss, damage, cost or expense, including attorney's fees, by reason of the [Letter Service's] performance of the services and other matters which arise under the subject matter of this Agreement, which shall include, but not be limited to [Letter Service] making changes to any of [Collection Agency's] letters or notices without the express written approval of [Collection Agency].

**Sample Prior-Approval Required Clause:**

[Letter Service] agrees that no change or modification of any of [Collection Agency's] notices or letters may be made by [Letter Service] without the express written approval of an authorized representative of [Collection Agency].

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the la

# REVIEW OF LETTERS NOT SUBJECT TO THE FDCPA SECTION 10

Agencies that do any amount of commercial collections must have their commercial letters reviewed and approved prior to use for such letters to be eligible for coverage. If a member is sued as a result of a notice they have sent, coverage will only apply to those notices approved through the CNR Program. The Policy requires that the **Insured** (as defined in the Policy) have each newly created uniform written notice or letter issued to a **Consumer** in connection with **Debt**, reviewed and approved prior to the initial use of the letter and every 24 months thereafter. The term **Consumer** is defined in the Policy as "Any natural person or organization: a) that is the subject of **Credit Information** or credit search; or b) <u>that is the subject of Debt Collection</u>." (Emphasis added) Commercial collections are directed towards a business, or "organization." Therefore, the organization is the subject of Debt Collection. As a result, commercial collection letters must be reviewed and approved under the terms of the Policy for coverage to attach.

Similarly, child/family support letters must be reviewed and approved because a natural person is the subject of the Debt Collection. The important definitions are those from the Policy, not the definitions of "consumer" and/or "debt" from the FDCPA. The only time the FDCPA definitions come into play is in determining which is the appropriate Checklist to use in reviewing the letters.

Special Checklists have been designed for collection notices used in connection with the collection of debts that are not subject to the FDCPA, such as commercial collections. It is important to note that even though commercial collection, child/family support and certain other collection efforts are not subject to the FDCPA, many states do not differentiate between consumer and commercial collection or other types of collections. The same statutes, rules and regulations may apply to all types of collections at the state level.

Collection Notice Review Checklist Form C is used by CNR Attorneys when reviewing letters sent to collect debts, such as child/family support, commercial accounts and certain fines and penalties that are not subject to the FDCPA even when the accounts are in default.

Collection Notice Review Checklist Form D is used by CNR Attorneys when reviewing letters sent to collect pre-default debts that are for personal family or household purposes. Such collection efforts would be subject to the FDCPA if the accounts were in default at the time they were obtained.

A sample of Checklists C and D, as described above, are included in Section 13 for your reference.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the ...

From: 

03/09/2005 13:04 #030 P.025/046

# REVIEWED LETTER MAINTENANCE
# SECTION 11

### Letter Maintenance and Pending for Review

If you are like most members, you are revising and submitting newly created letters to your CNR Attorney throughout the year.

As discussed in Section 2, every uniform letter must be approved prior to its initial use and re-approved every 24 months thereafter. This date is not linked to your Policy renewal or Expiration Date but to the date your CNR Attorney approved the letter. For example, if a letter was reviewed and approved on October 1, 2002, and no changes have been made to the letter, such letter must be reviewed and approved prior to October 1, 2004. Newly created letters and any changes to approved letters must be reviewed and approved prior to the use of such newly created or revised notices. As such, each approved letter should be pended individually in order to make certain you comply with this guideline.

We suggest you keep your approved letters Checklists in this section for easy reference. You may decide to insert monthly tab dividers to pend the hard copies in addition to any electronic pending system you are using. For example, if a letter is due to be re-reviewed by January 1, 2005, you may want to pend it for November 1, 2004. Also, keeping your approved letters organized and handy will assist you when you need to submit a claim or when you audit your letter service.

In addition, we are enclosing, as an Addendum in Section 13, a sample of a tracking sheet that could be used for your letter maintenance.

### Staff Assigned

Most, but not all, of those members responding to the survey indicated that one individual in their office had been assigned the responsibility for maintaining the CNR Program. We believe it is important that one individual, for accuracy and careful compliance, manage this effort. Additionally, we recommend that one other individual serve as a back up in your office who understands the CNR Program, this Guide and your maintenance procedures.

© 2004 ACA International. All Rights Reserved. This Guide

From:

03/09/2005 13:05 #030 P.026/046

# CNR COMMUNICATIONS
## SECTION 12

We suggest you use this section to maintain your correspondence for the CNR Program. In addition to your correspondence to and from your CNR Attorney (such as the CNR Letter of Engagement) and subsequent recommendations, etc., you will receive special bulletins and alerts from ACA International, which you could also include in this section for quick and easy reference.

The person in charge of tracking the CNR Program should have a copy of the Policy to include in this section.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                    03/09/2005 13:05 #030 P.027/046

# CNR USER GUIDE ADDENDUMS
# SECTION 13

**ADDENDUM 1**    Pre-approved Paper Color Samples

**ADDENDUM 2**    ACA Insurance Unit CSR State Assignments

**ADDENDUM 3**    Sample of CNR Letter Tracking Form

**ADDENDUM 4**    Change Request for CNR Contact Information

**ADDENDUM 5**    Checklist A

**ADDENDUM 6**    Checklist B

**ADDENDUM 7**    Checklist C

**ADDENDUM 8**    Checklist D

**ADDENDUM 9**    Variable Data Field Example

**ADDENDUM 10**   State Specific Text

**ADDENDUM 11**   State Specific Backer – Initial Written Communication

**ADDENDUM 12**   State Specific Backer – Subsequent Written Communication

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                    03/09/2005 13:05 #030 P.028/046

# PRE-APPROVED COLOR SAMPLES
# ADDENDUM 1

The following are descriptions only of the colors enclosed.  Refer to section 8 for specifics on use.

- White
- Light green
- Lavender
- Buff
- Tan
- Pink
- Light Blue
- Gray
- Salmon

© 2004 ACA International. All Rights Reserved. This Guide does not ...

From:

03/09/2005 13:05 #030 P.029/046

# ACA INSURANCE UNIT CSR STATE ASSIGNMENTS ADDENDUM 2

### ACA RISK MANAGEMENT
### INSURANCE UNIT CLIENT SERVICE REPRESENTATIVES

Your insurance is serviced by specific Insurance Representatives. Locate the state where you are headquartered to determine your insurance Representative. We hope you find this personalized service helpful.

| STATE | Nicole McDonald #224 mcdonald@acainternational.org | Joleen Schwartz #239 schwartz@acainternational.org | George Ceaser #235 ceaser@acainternational.org |
|---|---|---|---|
| Alaska | | | X |
| Alabama | X | | |
| Arkansas | | X | |
| Arizona | | | X |
| California | | | X |
| Colorado | | X | |
| Connecticut | X | | |
| Delaware | X | | |
| Florida | X | | |
| Georgia | X | | |
| Hawaii | | | X |
| Iowa | | X | |
| Idaho | | | X |
| Illinois | | X | |
| Indiana | | | X |
| Kansas | | X | |
| Kentucky | | X | |
| Louisiana | X | | |
| Massachusetts | X | | |
| Maryland | X | | |
| Maine | X | | |
| Michigan | | X | |
| Minnesota | | X | |
| Missouri | | X | |
| Mississippi | X | | |
| Montana | | | X |
| Nebraska | | X | |
| Nevada | | | X |
| New Hampshire | X | | |
| New Mexico | | | X |
| New Jersey | X | | |
| New York | X | | |
| North Carolina | X | | |
| North Dakota | | X | |
| Ohio | | X | |
| Oklahoma | | X | |
| Oregon | | | X |
| Pennsylvania | X | | |
| Rhode Island | X | | |
| South Carolina | X | | |
| South Dakota | | X | |
| Tennessee | X | | |
| Texas | | | X |
| Utah | | | X |
| Virginia | X | | |
| Vermont | X | | |
| Washington | | | X |
| Wisconsin | | X | |
| West Virginia | X | | |
| Wyoming | | | X |

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the r...

From:                                           03/09/2005 13:06 #030 P.030/046

# SAMPLE OF CNR LETTER TRACKING FORM
## ADDENDUM 3

SAMPLE CNR LETTER TRACKING FORM

| DATE OF PROCESS (when pending for reviews, remember your attorney needs a minimum of 30 days lead-time) | Letter name: Document Control #: | Letter name: Document Control #: | Letter name: Document Control #: | Letter name: Document Control #: | Letter name: Document Control #: | Letter name: Document Control #: |
|---|---|---|---|---|---|---|
| 1st submitted to CNR Attorney on: | | | | | | |
| Followed up on status w/attorney on: | | | | | | |
| Received approval w/document control # on: | | | | | | |
| Pended for 24 month subsequent review or warranty on: | | | | | | |
| Letter was not approved – received recommendations on: | | | | | | |
| Letter revised – re-submitted to CNR Attorney on: | | | | | | |
| Received approval w/document control # on: | | | | | | |
| Submitted for 24 month review on: | | | | | | |
| Pended for audit of letter service for: | | | | | | |
| NOTES: | | | | | | |

© 2004 ACA International. All Rights Reserved. This Guide does not ...

From:                                              03/09/2005 13:06 #030 P.031/046

# CHANGE REQUEST FOR CNR CONTACT INFORMATION ADDENDUM 4

### CNR PROGRAM CONTACT INFORMATION
### CHANGE REQUEST FORM

| | |
|---|---|
| **Fax to:  ACA's Insurance Unit** | (952) 928-3837 |
| **Agency Name:** | |
| ☐ **replaces current contact**<br>☐ **this is an additional contact** | |
| **Member Number:** | |
| **Contact Name:** | |
| **Contact E-mail Address:** | |
| **Contact Phone Number:** | |
| **Contact Fax Number:** | |



**ACA Risk Management**

From:

# CHECKLIST A
# ADDENDUM 5

Reviewing Agency: _____     Date: _____
Agency ID NO: _____ Agency Name _____

1. Is this letter used in connection with consumer debt in default? ☐ YES  ☐ NO
   *If YES, the FDCPA applies. Proceed to Question 2 et seq. If NO, proceed to 1a1 et seq.*

a) Is the collection agency's letterhead used, or is the collection agency named in the letter? ☐ YES  ☐ NO
   *If YES, FDCPA applies. Proceed to Question 2 et seq. If NO, Use the checklist for debts that are not in default.*

2. Does the letter appear to be an official court document or legal process? ☐ YES  ☐ NO

3. Does the logo portray a badge, seal of the state or of the U.S. or similar picture? ☐ YES  ☐ NO

4. Does the letter include the Mini-Miranda statement as required by § 807(11) for an initial written communication? ☐ YES  ☐ NO

5. Does the letter include the Section 809 Validation Notice as provided in the *ACA Collection Notice Review Practices Manual*? ☐ YES  ☐ NO

6. Is the Mini-Miranda or the Validation Notice in smaller or lighter type than the main text of the letter? ☐ YES  ☐ NO

7. If either the Mini-Miranda or the Validation Notice is on the reverse side of the letter, does the front side provide a notice, in large type, such as: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION"? ☐ YES  ☐ NO

8. Does the letter contain any language that overshadows or contradicts the Validation Notice? ☐ YES  ☐ NO

9. Does the letter list the agency name, the creditor and the amount of the debt? ☐ YES  ☐ NO

10. Does the letter offer a settlement that expires within the 30-day validation period? ☐ YES  ☐ NO

11. Does the letter use such phrases as "*Consumer name v. X*," "Duly and properly mailed on this day of _____," or "This final Notice is duly and properly rendered"? ☐ YES  ☐ NO

12. Does the letter tell the consumer that he or she has violated the law? ☐ YES  ☐ NO

13. Does the Validation Notice refer to "the judgment" as opposed to "a judgment"? ☐ YES  ☐ NO

14. Are there any threats to seek information from the consumer's employer, relatives, neighbors or friends? ☐ YES  ☐ NO

15. Are there warnings of future embarrassment or references to protecting one's reputation? ☐ YES  ☐ NO

16. Does the letter threaten to take any unauthorized or unintended action or use the word "action" in a similar context? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

17. Does the letter threaten to take legal action if the account remains unpaid? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

18. Does the letter tell the consumer the account will be referred to an attorney or make any other reference to an attorney or law firm? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

19. Is this a mass produced letter bearing a facsimile of an attorney's signature? ☐ YES  ☐ NO

20. Does the letter threaten to place liens on the consumer's property? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

21. Does the letter threaten to garnish the consumer's wages? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

22. Does the letter make any threats of violence? ☐ YES  ☐ NO

23. Does the letter indicate that court costs or attorney's fees will be added to the account? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

24. Does the letter refer to collection fees or interest rates? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

25. Does the agency's name suggest that it is a consumer reporting agency/ credit bureau as prohibited by § 807(16)? ☐ YES  ☐ NO  ☐ MORE INFORMATION REQUIRED

26. Does the letter include a statement about improving credit or is credit reporting or credit damage threatened? ☐ YES  ☐ NO

27. Does the ENVELOPE transmitting the letter indicate that the sender is engaged in the debt collection business or is associated with a credit bureau? ☐ YES  ☐ NO
    *If YES, proceed to Question 28 et seq. If NO, proceed to Question 27a)*

27a) Does the return address on the ENVELOPE indicate that the sender is any party other than the collection agency? ☐ YES  ☐ NO

28. Is the letter marked "Final Notice"? ☐ YES  ☐ NO

29. Is the communication a post card? ☐ YES  ☐ NO

30. Does the communication include a reference to the debt collector's web site? ☐ YES  ☐ NO
    If YES, proceed to Question 30a). If NO, proceed to Question 31 et seq.

30a). Has the content of the web site, which is accessible by consumers, been approved under the Collection Notice Review Program? ☐ YES  ☐ NO
    If YES, proceed to Question 31 et seq. If NO, the letter fails. The agency must either have the content from its web site that is accessible by consumers reviewed under the Collection Notice Review Program or delete the reference to the web site from its letter.

31. If this letter is used for the collection of a check, does it meet the statutory requirements for check collection as stated in *ACA's CSP Statutory Penalties Guide*? ☐ YES  ☐ NO

32. Does the letter meet the requirements of the laws of the state or locale where the agency maintains its principal place of business as provided in the *ACA Collection Notice Review Practices Manual*? ☐ YES  ☐ NO

☐ SEE ALSO ATTACHED ADDENDUM
Does this letter meet the requirements of the ACA Collection Notice Review Program? ☐ YES  ☐ NO

SAMPLE

From:                                    03/09/2005 13:07 #030 P.033/046

# CHECKLIST B
# ADDENDUM 6

## Subsequent Written Communication Checklist (Form B)

Reviewing Attorney:_____    Date:_____
Agency ID No:_____    Agency Name:_____

1. Is this letter used in connection with consumer debts in default?
   ☐ YES    ☐ NO
   If YES, the FDCPA applies. Proceed to Question 2 et seq. If NO,
   proceed to 1a) et seq.

a) - Is the collection agency's letterhead used or is the collection agency
   named in the letter?    ☐ YES         ☐ NO
   If YES, FDCPA applies. Proceed to Question 2 et seq. If NO, use
   the checklist for debts that are not in default.

2. Does the letter appear to be an official court document or legal process?
   ☐ YES    ☐ NO

3. Does the logo portray a badge, seal of the state or of the U.S. or similar
   picture? ☐ YES         ☐ NO

4. Does the letter disclose that the communication is from a debt collector
   as required by § 807(11)?         ☐ YES         ☐ NO

5. Is the disclosure that the communication is from a debt collector in
   smaller or lighter type than the main text of the letter?
   ☐ YES    ☐ NO

6. If information appears on the reverse side of the letter, does the front
   side provide a notice, in large type, such as, "NOTICE: SEE REVERSE
   SIDE FOR IMPORTANT INFORMATION"?    ☐ YES    ☐ NO

7. Does the letter contain any language that overshadows or contradicts the
   Validation Notice? ☐ YES ☐ NO

8. Does the letter use such phrases as " Consumer name v. __ " Duly and
   properly mailed on this day of _____" or "This final notice is duly and
   properly rendered"?    ☐ YES         ☐ NO

9. Does the letter tell the consumer that he or she has violated the law?
   ☐ YES    ☐ NO

10. Are there any threats to seek information from the consumer's employer,
    relatives, neighbors or friends?    ☐ YES         ☐ NO

11. Are there warnings of future embarrassment or references to protecting
    one's reputation?    ☐ YES         ☐ NO

12. Does the letter threaten to take any unauthorized or unintended action or
    use the word "action" in a similar context? ☐ YES    ☐ NO
    ☐ MORE INFORMATION REQUIRED

13. Does the letter threaten to take legal action if the account remains
    unpaid?    ☐ YES         ☐ NO

14. Is this a mass produced letter bearing a facsimile of an attorney's
    signature?    ☐ YES    ☐ NO

15. Does the letter threaten to place liens on the consumer's property?
    ☐ YES    ☐ NO    ☐ MORE INFORMATION REQUIRED

16. Does the letter threaten to garnish the consumer's wages?
    ☐ YES    ☐ NO    ☐ MORE INFORMATION REQUIRED

17. Does the letter make any threats of violence?   ☐ YES    ☐ NO

18. Does the letter indicate that court costs and attorney's fees will be added
    to the account?  ☐ YES    ☐ NO   ☐ MORE INFORMATION
    REQUIRED

19. Does the letter refer to collection fees or interest rates?
    ☐ YES    ☐ NO    ☐ MORE INFORMATION
    REQUIRED

20. Does the agency's name suggest it is a consumer reporting agency/credit
    bureau in violation of § 807(16)?
    ☐ YES    ☐ NO    ☐ MORE INFORMATION REQUIRED

21. Does the ENVELOPE transmitting the letter indicate that the sender is
    engaged in the debt collection business or is associated with a credit
    bureau? ☐ YES    ☐ NO
    If YES, proceed to Question 22 et seq. If NO, proceed to Question 21a)
    et seq.

21a). Does the return address on the ENVELOPE indicate that the sender is
    any party other than the collection agency?    ☐ YES    ☐ NO

22. Is the communication a post card?    ☐ YES    ☐ NO

23. Does the communication include a reference to the debt collector's web
    site?    ☐ YES         ☐ NO
    If YES, proceed to Question 23a) et seq. If NO, proceed to
    Question 24 et seq.

23a). Has the content of the web site, which is accessible by
    consumers been
    approved under the Collection Notice Review Program?
    ☐ YES    ☐ NO

    If YES, proceed to Question 24 et seq. If NO, the letter
    fails. The agency must either have the content from its
    web site that is accessible by consumers reviewed under
    the Collection Notice Review Program or delete the
    reference to the web site from its letter.

24. If this letter is used for the collection of a check, does it meet the
    statutory requirements for check collection as stated in ACA's CSP
    Statutory Penalties Guide?    ☐ YES    ☐ NO

25. Does the letter meet the requirements of the laws of the state where the
    agency maintains its principal office as provided in the ACA Collection
    Notice Review Provinces Manual?    ☐ YES    ☐ NO

☐  SEE ALSO ATTACHED ADDENDUM.

Does this letter meet the requirements of the ACA Collection Notice Review
Program?

☐ YES         ☐ NO

☐ YES, ONLY IF SENT OUTSIDE OF THE VALIDATION PERIOD

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                        03/09/2005 13:08 #030 P.034/046

# CHECKLIST C
# ADDENDUM 7

**Child (Family) Support / Fines Written Communication Checklist**
**(Form C)**

Reviewing Attorney: _____     Date: _____

Agency ID No. _____ Agency Name: _____

If any answer to questions 2-14 is YES, the letter may be in violation of some state collection practices acts, unfair, false or

deceptive trade practices laws or state tort laws.

1) Is this letter used in connection with child or family support collection or the collection of fines only?
   □ YES      □ NO

2) Does the letter appear to be an official court document or legal process?      □ YES      □ NO

3) Does the logo portray a badge, seal of the state or of the U.S. or similar picture?      □ YES      □ NO

4) Are there warnings of future embarrassment or references to protecting one's reputation?  □ YES      □ NO

5) Does the letter advise the consumer that the account will be referred to an attorney for legal action against the consumer?
   □ YES      □ NO
   If the answer to Question 5 is YES, proceed to Questions 5a) et seq. If NO, proceed to question 6 et seq.

   5a) Does the agency regularly refer cases to an attorney for legal action?   □ YES      □ NO

6) Is this a mass produced letter bearing a facsimile of an attorney's signature?      □ YES      □ NO

7) Does the letter state that the agency will issue a warrant or have the consumer arrested?  □ YES      □ NO

8. Does the letter make any threats of violence?
   □ YES      □ NO

9. Does the letter state that the agency will garnish the consumer's wages?      □ YES      □ NO

10. Does the agency's name falsely suggest that it is a credit reporting agency/credit bureau?
    □ YES      □ NO

11. Does this letter state that the agency will revoke the consumer's occupational, driver's or recreational license?
    □ YES      □ NO

12. Does the envelope transmitting the letter indicate that the sender is in the debt collection business or associated with

    a credit reporting agency/credit bureau?      □ YES

    □ NO

If YES, proceed to Question 12 et seq. If NO, proceed to Question 12a).

12a) Does the ENVELOPE transmitting the letter indicate that the sender is any party other than the collection agency?
     □ YES      □ NO

13) Does the communication include a reference to the debt collector's web site?
    □ YES      □ NO
    If YES, proceed to question 13a) et seq. If NO, proceed to Question 14 et seq.

13a) Has the content of the web site, which is accessible by consumers, been approved under the Collection Notice Review Program?      □ YES      □ NO

If YES, proceed to Question 14 et seq. If NO, the letter fails. The agency must either have the content from its web site that is accessible by consumers reviewed under the Collection Notice Review Program or delete the reference to the web site from its letter.

14. Is the communication a post card?   □ YES      □ NO

15. Does the letter fail to meet the requirements of the laws of the state or locale where the agency maintains its principal place of business?      □ YES      □ NO

□ See attached addendum

   Does this letter meet the requirements of the ACA Collection Notice Review Program?

   □ YES           □ NO

SAMPLE

From:

# CHECKLIST D
# ADDENDUM 8

**Written Communication Checklist for Accounts that are NOT in Default
(Form D)**

Date: _____

Reviewing Attorney: _____
Agency ID NO: _____   Agency Name: _____

THIS CHECKLIST IS TO BE USED ONLY FOR LETTERS SENT ON ACCOUNTS THAT ARE NOT IN DEFAULT

1) Is this letter used in connection with consumer debts in default?  ☐ YES  ☐ NO
*IF YES, this checklist DOES NOT APPLY. If NO, proceed to Question 2 et seq.*

2) Does the letter appear to be an official court document or legal process?  ☐ YES  ☐ NO

3) Does the logo portray a badge, seal of the state or of the U.S. or similar picture?  ☐ YES  ☐ NO

4) Does the letter use such phrases as *"Consumer name v. X," "Duly and properly mailed on this day of ___," or "This final Notice is duly and properly rendered"?*  ☐ YES  ☐ NO

5) Does the letter tell the consumer that he or she has violated the law?  ☐ YES  ☐ NO

6) Does the letter threaten to take legal action if the account remains unpaid?  ☐ YES  ☐ NO

7) Does the letter tell the consumer the account will be referred to an attorney or make any other reference to an attorney or law firm?  ☐ YES  ☐ NO

8) Does the letter threaten to place liens on the consumer's property?  ☐ YES  ☐ NO

9) Does the letter threaten to garnish the consumer's wages?  ☐ YES  ☐ NO

10) Does the letter make any threats of violence?  ☐ YES  ☐ NO

11) Does the ENVELOPE transmitting the letter indicate that the sender is engaged in the debt collection business or is associated with a credit bureau?  ☐ YES  ☐ NO

If *YES*, proceed to Question 12 *et seq.* If *NO*, proceed to Question 11a) *et seq.*

11a) Does the ENVELOPE transmitting the letter indicate that the sender is any party other than the collection agency?  ☐ YES  ☐ NO

12) Does the communication include a reference to the debt collector's web site?  ☐ YES  ☐ NO
If *YES*, proceed to question 12a) *et seq.* If *NO*, proceed to Question 13 *et seq.*

12a) Has the content of the web site, which is accessible by consumers, been approved under the Collection Notice Review Program?  ☐ YES  ☐ NO

If *YES*, proceed to Question 13 *et seq.* If *NO*, the letter fails. The agency must either have the content from its web site that is accessible by consumers reviewed under the Collection Notice Review Program or delete the reference to the web site from its letter.

13) Does the letter meet the requirements of the laws of the state or locale where the agency maintains its principal place of business?  ☐ YES  ☐ NO

☐ See attached addendum.

Does this letter meet the requirements of the ACA Collection Notice Review Program?
☐ YES, only if the date of delinquency does not precede the date of the letter.
☐ NO

© ACA International. All rights reserved.

Revised October 16, 2001

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the laws...

From:

# VARIABLE FIELD DATA EXAMPLE
## ADDENDUM 9

Collection Agency's Letterhead
[(8) Agency's Address/P.O. Box]
[(9) Agency's City, State Zip code]
[(10) Agency's phone number]

[(1) Date]

[(2) Consumer's Name]
[(3) Consumer's Address]

[(4) Creditor's Name]          [(5) Amount of Debt]

Dear [(2) Consumer's Name]:

This is the text of your collection letter, which must be approved by the CNR attorney.

Validation Notice - if debt is subject to FDCPA or state law requires - must be approved by CNR attorney

Mini-Miranda - if debt is subject to FDCPA or state law requires - must be approved by CNR attorney

[(11) State specific text requirement]
(See CNR Guide, Section 8, option #3 and CNR Guide Section 13, Addendum 11)

Closing of letter - must be approved by CNR attorney,

[(6) Debt collector's name]
[(7) Debt collector's phone number]

© 2004 ACA International. All Rights Reserved. This Guide does not modify...

From:                                 03/09/2005 13:09 #030 P.037/046

# STATE SPECIFIC TEXT
# ADDENDUM 10

## SPECIAL STATE TEXT REQUIREMENTS
### Last Updated November 18, 2003

WHAT FOLLOWS IS A LISTING OF STATE STATUTES FOR THOSE STATES THAT HAVE SPECIAL TEXT REQUIREMENTS FOR COLLECTION NOTICES. PLEASE NOTE THAT THIS DOCUMENT DOES NOT CONTAIN INFORMATION ON ANY STATUTORY REQUIREMENTS REGARDING THE COLLECTION OF CHECKS. FOR INFORMATION REGARDING THE COLLECTION OF CHECKS, PLEASE REFER TO THE INTERNET & CHECK SERVICES PROGRAM (ICSP) STATUTORY PENALTIES GUIDE. FOR MORE DETAILED INFORMATION, PLEASE REFER TO ACA FASTFAX DOCUMENT #2008.

Use of this option REQUIRES that the following appear on the front of the collection letter:
- the name of the creditor;
- the name, address and telephone number of the debt collection agency;
- date the communication was sent;
- the amount of the debt as of the date of the letter;
- the validation notice (in an initial written communication);and
- the statement that "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose."

Further, the front of the notice must provide the following: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." The font size and type on the front of the notice must match that on the back of the notice.

## ARIZONA
In all written communications:
All written communications must include the time and place the debt was created, the merchandise, services or other items of value underlying the debt and the date the account was referred to the collection agency.

*This information must be included, but cannot be copied and pasted from this document as it will be different for each letter/consumer.*

## CALIFORNIA
Prior to or within 30 days of submitting negative credit information --
Notice to consumer if provided in the initial written communication with the consumer:
As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described [above/below/on the front of this letter/on the back of this letter].

*IMPORTANT NOTE: The time period refers to the FDCPA required validation notice. Agencies must select one of the options to explain where the validation notice appears in relation to the California credit reporting notice. DO NOT USE THIS TEXT IF YOU DO NOT CREDIT REPORT.*

Prior to or within 30 days of submitting negative credit information --
Notice to consumer if provided in a subsequent written communication with the consumer:

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

As of July 1, 2004, the following text is required in the first written notice sent to a California address of a debtor:

© 2004 ACA International. All Rights Reserved. This Guide does not ...

From:

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

## COLORADO
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STATE.CO.US/CAB.HTM.

## CONNECTICUT
### For hospital collections:
*Each hospital which holds or administers one or more hospital bed funds shall require its collection agents, in all bills and collection notices, to include a one-page summary describing the hospital bed fund and how to apply for such funds. The summary shall also describe any free or other reduced cost policies for the indigent and shall clearly distinguish hospital bed funds from other sources of financial assistance. The summary shall include notification that the patient is entitled to reapply upon rejection and that additional funds may be available on an annual basis.*

*When collecting a debt from a patient arising from services provided at a hospital, a notice must be provided to the patient as to whether the hospital deems the patient an insured patient or an uninsured patient. This information must come from the hospital.*

*SUCH A SUMMARY MUST BE WRITTEN BY THE HOSPITAL AND CANNOT BE CONSIDERED A PRE-APPROVED VARIABLE FIELD AS THE SUMMARY WILL DIFFER FOR EACH HOSPITAL FOR WHICH AN AGENCY IS COLLECTING.*

## IDAHO
### All communications:
If the debt collector has a managerial or financial interest in the creditor, or the creditor has a managerial or financial interest in the debt collector, every communication with the debtor must disclose the interest.

*This information cannot be pre-approved as this will be different for each collection agency that has such an interest in the creditor. However, the CNR attorney may be able to approve standard language that will be acceptable to insert into all letters sent on accounts for a particular creditor in which the agency has such a financial interest.*

### If agency is located outside of Idaho:
Mailing address and toll-free phone number where a consumer may contact a responsible person during normal business hours.

## KANSAS
If an investigative consumer report is requested or prepared, the following notice must be sent within three days after the date on which the report was first requested:
An investigative consumer report, which includes information as to your character, general reputation, personal characteristics and mode of living, has been requested. You have the right to request additional information, which includes the nature and scope of the investigation.

## MAINE
### In all written communications:
Telephone number of agency's licensed location.

Hours of Operation

© 2004 ACA International. All Rights Reserved.

**MASSACHUSETTS**
**In initial written communication:**
Identification of debt
Description of the nature of the default
Action required to cure default
Name, address telephone number of person to contact for additional information regarding the debt and default

*This information cannot be pre-approved as this will be different for each collection agency that has such an interest in the creditor. However, the CNR attorney may be able to approve standard language that will be acceptable to insert into all letters sent on accounts for a particular creditor in which the agency has such a financial interest.*

**All Envelopes**
Business address of the collection agency as stated on the agency's license.

**In all communications for debts subject to the FDCPA**
Collection agency's telephone number
Collection agency's office hours

**Required Notice after first communication at place of employment (POE) (and every 6 months thereafter as long as collection efforts continue at POE)**

*NOTICE OF IMPORTANT RIGHTS*

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE COLLECTION AGENCY.

**MINNESOTA**
**In all written communications:**
Full name of collection agency as it appears on the Minnesota license.

**In initial written communication in font equal to or larger than the largest other of a type size or font used in the rest of the notice:**
This collection agency is licensed by the Minnesota Department of Commerce.

**NEW YORK CITY**
**In all written communications:**
New York City Department of Consumer Affairs License Number: XXXXXXX

**NORTH CAROLINA**
**In all written communications:**
North Carolina Permit Number: XXXXXX

**OREGON**
**In subsequent written communications:**
If multiple creditors are listed in the initial communication, the term "various" may replace the names of the creditors provided the subsequent communication does not add any additional debts to those that were listed in the initial communication.

**TENNESSEE**
**In all written communications, minimum of ten (10) point font size:**
This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend this Act

From:                                          03/08/2005 13:10 #030 P.040/046

## UTAH

Notification of Negative Report on Credit Record - prior to or within 30 days after the transmission of the report:

As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

## WASHINGTON

In the initial written communication or if debt collector is attempting to collect a different amount than indicated in the initial written communication, the debt collector must include an itemization of the debt, which includes:

    (i)    Original amount of the debt when received by debt collector;

    (ii)   Interest or service charges, collection costs, or late payment charges, if any, added to the original obligation by the original creditor, customer or assignor before it was received by the debt collector

    (iii)  Interest or service charges, if any, added by the after the obligation was received by the debt collector for collection;

    (iv)  Collection costs,

    (v)   Attorneys' fees,

    (vi)  Any other charge or fee the debt collector is attempting to collect;

    (vii) Rate of interest being charged.

*This information must be included, but cannot be copied and pasted from this document as it will be different for each letter/consumer.*

## WISCONSIN

In the initial written communication in a minimum of eight (8) point bold-faced font:

This collection agency is licensed by the Office of the Administrator of the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

© 2004 ACA International. All Rights Reserved. This Guide does not constitute

From:

# STATE SPECIFIC BACKER
# INITIAL WRITTEN COMMUNICATION
# ADDENDUM 11

### BACKER FOR INITIAL WRITTEN COMMUNICATION

Note: Use of this Backer REQUIRES that the following appear on the front of the collection letter:

- the name of the creditor;
- the name, address and telephone number of the debt collection agency;
- date the communication was sent;
- the amount of the debt as of the date of the letter;
- the validation notice; and
- the statement "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose."

Further, the front of the notice must provide the following: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." The font size and type on the front of the notice must match that on the back of the notice.

*If you are not properly authorized to do business in a particular state, DO NOT attempt collection efforts from consumers in that state and DO NOT include that state's information on your backer. If you do not credit report, or have not pulled an investigative consumer report, please pay close attention to the disclosures in California and Kansas to see if they are necessary on your backer. The asterisks(\*), which should NOT appear on your backer, note additional states that require special attention.*

In addition to special text requirements, each state may have additional requirements or disclosures that must be followed based upon the type of debt being collected (e.g. healthcare debt), for which standard text cannot be created. For example, some states may require you to provide the time and place the debt was created, the merchandise or services of value underlying the debt, include information about whether a hospital considers the consumer-patient to be insured or uninsured, include information about "hospital bed funds", or provide a special notice for NSF checks, etc. Such information is not part of the pre-approved data variables. Please refer to ACA *Fastfax* document # 2008 and the *ACA Guide to State Collection Laws and Practices* as well as other resources for additional information about these requirements.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the terms and

From:                                                    03/09/2005 13:11 #030 P.042/046

### ARIZONA*
Time and place the debt was created; Merchandise, services, or other items of value underlying the debt; Date the account was referred to the collection agency

### CALIFORNIA
As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described in the notice on the front of this letter.

### COLORADO
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. SEE WWW.AGO.STATE.CO.US/CAB.HTM.

### IDAHO*
If the debt collector has a managerial or financial interest in the creditor, or the creditor has a managerial or financial interest in the debt collector, every communication with the debtor must disclose the interest.

[Toll free phone number]

### KANSAS
An investigative consumer report, which includes information as to your character, general reputation, personal characteristics and mode of living, has been requested. You have the right to request additional information, which includes the nature and scope of the investigation.

### MAINE*
Hours of Operation

### MASSACHUSETTS*
Description of the nature of the default; Action required to cure default; Name, address telephone number of person to contact for additional information regarding the debt and default; Collection agency's office hours

## NOTICE OF IMPORTANT RIGHTS

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE COLLECTION AGENCY.

### MINNESOTA
This collection agency is licensed by the Minnesota Department of Commerce.

### NEW YORK CITY*
New York City Department of Consumer Affairs License Number:  XXXXXXX

### NORTH CAROLINA*
North Carolina Permit Number:    XXXXXX

### TENNESSEE
This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

### UTAH
As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

From:                                    03/09/2005 13:12 #030 P.043/046

**WISCONSIN**
This collection agency is licensed by the Office of the Administrator of the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

© 2004 ACA International. All Rights Reserved. This Guide does not modify, alter or amend the ...

03/09/2005 13:12 #030 P.044/046

From:

# STATE SPECIFIC BACKER
# SUBSEQUENT WRITTEN COMMUNICATION
# ADDENDUM 12

## BACKER FOR SUBSEQUENT WRITTEN COMMUNICATIONS

Note: Use of this Backer REQUIRES that the following appear on the front of the collection letter:

- the name of the creditor;
- the name, address and telephone number of the debt collection agency;
- date the communication was sent;
- the amount of the debt as of the date of the letter;
- the validation notice; and
- the statement "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose."

Further, the front of the notice must provide the following: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." The font size and type on the front of the notice must match that on the back of the notice.

*If you are not properly authorized to do business in a particular state, DO NOT attempt collection efforts from consumers in that state and DO NOT include that state's information on your backer. If you do not credit report, or have not pulled an investigative consumer report, please pay close attention to the disclosures in California and Kansas to see if they are necessary on your backer. The asterisks(\*), which should NOT appear on your backer, note additional states that require special attention.*

In addition to special text requirements, each state may have additional requirements or disclosures that must be followed based upon the type of debt being collected (e.g. healthcare debt), for which standard text cannot be created. For example, some states may require you to provide the time and place the debt was created, the merchandise or services of value underlying the debt, include information about whether a hospital considers the consumer-patient to be insured or uninsured, include information about "hospital bed funds", or provide a special notice for NSF checks, etc. Such information is not part of the pre-approved data variables. Please refer to ACA *Fastfax* document # 2008 and the *ACA Guide to State Collection Laws and Practices* as well as other resources for additional information about these requirements.

From:

# APPENDIX F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH, | ) | |
| | ) | |
| Plaintiff, | ) | 3:04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

### NOTICE OF DEPOSITIONS

**TO:**   David M. Schultz
Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
(312) 704-3000
(312) 704-3001 (Fax)

      **PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 30, you are to produce the individuals listed below for the taking of their depositions. The depositions will take place at *MRS Associates, Inc., 3 Executive Campus, Suite 400, Cherry Hill, NJ 08002*, via telephonic means, on the date and at the time listed below. The depositions will be taken before a person authorized to administer oaths.

| **DEPONENT** | **DATE** | **TIME** |
|---|---|---|
| Michael Meyer | May 10, 2005 | 10:00 a.m. |
| Dan Divece | May 10, 2005 | Immediately after previous deposition has finished. |
| Daniel J. McCusker | May 10, 2005 | Immediately after previous deposition has finished. |
| Stewart Miller | May 10, 2005 | Immediately after previous deposition has finished. |
| Kelli Coia | May 10, 2005 | Immediately after previous deposition has finished. |

Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Alexander H. Burke, certify that on April 13, 2005, copies of the foregoing document were served upon the party listed above by facsimile and United States mail:

Alexander H. Burke

LAW OFFICES
# EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle
18th Floor
Chicago, Illinois 60603
Phone 312/739-4200
Fax 312/419-0379

## FACSIMILE TRANSMISSION

TO:       David M. Schultz, Esq.
          Todd Stelter, Esq.

FAX NO:   704-3001

FROM:     Alex Burke (AS2)

RE:       Ruth v. MRS & Associates

FILE NO:  11.388

DATE:     April 13, 2005

*** 

Comments:

    Attached please find **NOTICE OF DEPOSITIONS**, which is hereby
served upon you.

---

### PRIVILEGED COMMUNICATION

PLEASE PHONE 312/739-4200 IF YOU DO NOT RECEIVE ALL THE PAGES. This fax may contain
confidential material or other matter protected by the attorney-client privilege. Unless you are the addressee(or are
authorized to receive this fax for the addressee), you may not copy, use or distribute it. If you receive this fax in
error, please contact the sender by telephone or fax immediately and return by U.S. Mail.

```
*********** -COMM. JOURNAL- ******************* DATE APR-13-2005 ***** TIME 11:16 *********

    MODE = MEMORY TRANSMISSION        START=APR-13 11:15    END=APR-13 11:16

    FILE NO.=445

STN   COMM.   ONE-TOUCH/   STATION NAME/TEL NO.           PAGES     DURATION
NO.           ABBR NO.

001   (OK)      *          11388#7043001#                 003/003   00:00:23
       AS2

                                                -ECLG LLC              -

************************************** -ECLG LLC    - ***** -    3124190379- *********
```

## LAW OFFICES
## EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle
18th Floor
Chicago, Illinois 60603
Phone 312/739-4200
Fax 312/419-0379

### FACSIMILE TRANSMISSION

TO:      David M. Schultz, Esq.
         Todd Stelter, Esq.

FAX NO:  704-3001

FROM:    Alex Burke (AS2)

RE:      Ruth v. MRS & Associates

FILE NO: 11.388

DATE:    April 13, 2005

                        ***

Comments:

        Attached please find **NOTICE OF DEPOSITIONS**, which is hereby
served upon you.

PRIVILEGED COMMUNICATION
PLEASE PHONE 312/739-4200 IF YOU DO NOT RECEIVE ALL THE PAGES. This fax may contain
confidential material or other matter protected by the attorney-client privilege. Unless you are the addressee(or are
authorized to receive this fax for the addressee), you may not copy, use or distribute it. If you receive this fax in
error, please contact the sender by telephone or fax immediately and return by U.S. Mail.

# APPENDIX G

# HINSHAW

& CULBERTSON LLP

ATTORNEYS AT LAW
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081

T 312-704-3000
F 312-704-3001
www.hinshawlaw.com

May 2, 2005

**VIA FAX NO.: 312-419-0379**
Alex Burke
EDELMAN, COMBS, LATTURNER & GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603

    **Re:    Case Name:  Ruth v. MRS**

Dear Alex:

Please allow this correspondence to serve as MRS' compliance with the Court's recent Order entered on your motion to compel. As you may recall, we were ordered to produce MRS' applicable insurance policy and reservation of rights letter. Please see attached.

In addition, the Court ordered us to provide you with an updated and more specific bona fide error defense disclosure. Therefore, as to the bona fide error defense:

Please be advised that MRS bases its conduct upon the FDCPA. MRS therefore relies upon the FDCPA itself and as a basis for its business practices. In addition, MRS utilizes the ACA Collection Notice Review (CNR) Program User Guide, which has already been produced. There are no specific manuals, memoranda, instructions or other documents specifically relating to the allegations in plaintiff's complaint. MRS belongs to ACA, CLLA and NARCA, which also provide continuing updates as to FDCPA law. The letters that MRS sends out are separately approved by multiple parties to insure that they comply with the FDCPA. The letters are reviewed and approved by the client, by Dan McCusker, by Jeff Freedman, and also by attorney, Ronald Jacobs, prior to printing and mailing, in order to insure FDCPA compliance.

In regard to your settlement demand, please be advised that MRS will not agree to settling this matter on those terms.

If we are not in agreement that MRS has now, in conjunction with the information spread of record before Judge Denlow, completely fulfilled your written discovery requests to date herein, please contact me immediately.

    Sincerely,

    HINSHAW & CULBERTSON LLP

Alex Burke
May 6, 2005
Page 2


Todd P. Stelter
tstelter@hinshawlaw.com


:tps

cc:    David M. Schultz



# Gulf
## Insurance Group
1295 Northland Drive
St. Paul, MN 55120

Dennis E. Filas
Claims Examiner
Phone:    800.328.5972 ext 4375
          or 651.688.4375
Fax:      651.688.4757
Email:    DEFilas@gulfins.com

July 28, 2004                                          **CERTIFIED MAIL**

Daniel J. McCusker, Esquire
*General Counsel*
**M.R.S. Associates, Inc.**
3 Executive Campus,Suite 400
Cherry Hill, New Jersey 08002

Re:          <u>**Ruth v. M.R.S. Associates, Inc.**</u>

             Named Insured:     M.R.S. Associates, Inc
             Our Claim Number:  GA949-92-38-000018

Dear Mr. McCusker:

This will acknowledge the Complaint entitled **ALICE RUTH, Plaintiff, vs. M.R.S. ASSOCIATES, INC., Defendant,** venued in the United States District Court for the Northern District of Illinois, Case Number 04C50244. The Complaint alleges your form collection letter imposes an impermissible condition on the debtor's exercise of verification rights under 15 U.S.C.§ 1692g. In addition the Complaint further alleges the letter is confusing and misleading with respect to the amount the recipient must pay.

Our investigation has established the letter at issue was sent on a computer generated form that had not been reviewed and approved in accordance with the requirements of the ACA Collection Notice Review Program.

This claim is submitted for coverage under Gulf Insurance Company's **ERRORS & OMISSIONS LIABILITY INSURANCE POLICY** number GA9499238, issued in favor of M.R.S. Associates, Inc., for the period November 1, 2003 to November 1, 2004.

We draw your attention to your **ERRORS AND OMISSIONS LIABILITY INSURANCE POLICY** coverage form number S1981-AC (6/03), at **SECTION C – EXCLUSIONS,** which states:

      The Company shall not be liable for Loss in connection with any Claim:

                                    * * *

www.gulfinsurance.com

Daniel McCusker, Esquire
**M.R.S. Associates, Inc.**
July 28, 2004
Page 2 of 3

25. Based upon, arising from, or in consequence of any written notice or letter issued to a **Consumer** in connection with **Debt**, which has not been reviewed and approved in accordance with the provisions of Section G – General Terms and Conditions 7, *Collection Notice Review*, prior to a **Wrongful Act** actually or allegedly having been committed or attempted. However, this Exclusion 25 will not apply to such written notice or letter received by a **Consumer** before the Inception Date of the first policy issued by the Company and for which coverage has not been interrupted;

We further draw your attention to **SECTION G – GENERAL TERMS AND CONDITIONS**, where it states:

*Collection Notice Review*

7. The **Insured Organization** shall have:

   a. Each existing uniform written notice or letter issued to a **Consumer** in connection with **Debt**, reviewed and approved within 60 days of the Inception Date of the first policy issued by the Company and for which coverage has not been interrupted, and every 24 months thereafter; and

   b. Each newly created uniform written notice or letter issued to a **Consumer** in connection with **Debt**, reviewed and approved prior to its initial use and every 24 months thereafter;

   by a member of the Collection Notice Review Panel, as designated and periodically updated by the American Collectors Association. However, such review and approval shall not be required for any single use written notice or letter that is drafted and issued on a case-by-case basis to a **Consumer** in connection with **Debt**.

It is our position there is no coverage for the claim asserted against you by Alice Ruth because the claim is based upon, arises from or in consequence of a uniform written notice or letter issued to a consumer in connection with debt, which has not been reviewed and approved in accordance with applicable policy provisions.

Because there is no coverage for this claim, we are not able to provide you with a defense, handle this claim on your behalf, or pay any loss you may sustain as a result of the claim. If you have any other insurance coverages which might apply to this claim, you should immediately notify the insurance company or your agent.

Neither this letter nor Gulf's investigation of this matter shall be construed as an admission of liability, or as a waiver of any coverage defense or limitation that is available to Gulf pursuant to

Daniel McCusker, Esquire
**M.R.S. Associates, Inc.**
July 28, 2004
Page 3 of 3

the provisions of its insurance policies or by operation of law.  In addition to the policy defenses discussed above, other defenses may be available to Gulf by operation of law.  Gulf reserves any legal and policy defenses it may have in connection with this matter, whether stated or not in this letter.  Finally, Gulf reserves the right to modify its coverage position at any time upon receipt of additional information.

If you feel that our analysis of this matter is in error, we request that you immediately furnish us with any additional documents or facts that you believe are relevant to the determination of coverage under the policy.  If you would like to discuss this matter further, please feel free to contact me at 1-800-328-5972, extension 4375.

Sincerely,

Dennis E. Filas

cc:     David Schultz, Esq
        Hinshaw & Culbertson
        222 North LaSalle Street
        Chicago, IL 60601-1081

**ACA**
INTERNATIONAL
The Association of Credit
and Collection Professionals

ACA RISK MANAGEMENT

# ERRORS & OMMISSIONS CHANGE REQUEST FORM

## NOTE: WE CANNOT QUOTE ADDITIONAL COVERAGE IF THIS FORM IS INCOMPLETE.

### MEMBER INFORMATION

| | |
|---|---|
| Named Insured: | Doing Business As: |
| MRS Associates, Inc | MRS Associates, Inc |
| Contact Name: | ACA Member #: |
| Dan McCusker | 1012801 |

### CHANGE REQUEST

| POLICY NUMBER: | EFFECTIVE DATE OF CHANGE REQUESTED:<br>(note, ACA is not permitted to back-date coverage)   Immediate |
|---|---|
| CHANGE(S) REQUESTED | ADDITIONAL INFORMATION REQUIRED FOR CHANGE |

| | |
|---|---|
| **x INCREASE LIMIT**<br><br>FROM $3,000000 TO<br><br>$5,000,000 | **Why are you requesting an increased limit?**<br><br>X A client or prospect requires that we increase our limit as requested.<br> If so, please attached a copy of the insurance requirement portion of your Contract or RFP.<br><br>☐ I have reviewed my coverage and have determined it may be inadequate. If so, describe in detail what prompted the review of your coverage at this time.<br><br>☐ Other (describe fully): |
| ☐ INCREASE DEDUCTIBLE TO:<br>$ | Why are you requesting to increase your deductible? |
| ☐ PURCHASE OPTIONAL COVERAGE<br>Coverage requested: | Describe fully the reason you are requesting this coverage at this time? |
| ☐ CHANGE/ADD NAME OF INSURED:<br><br>☐ Add   ☐ Delete   ☐ Change: | ☐ Change of name only<br>☐ This is a newly formed entity.  What is their function?<br>☐ This entity has been acquired.  What is their function?<br>☐ This is a correction to our application.  Describe: |
| ☐ OWNERSHIP CHANGE | How does the ownership differ from the description provided on your most recent Errors & Omissions Application? |
| ☐ ADD PROFESSIONAL SERVICE | List additional service:<br><br>Attach a summary describing this service. |
| ☐ LOCATION ADDRESS CHANGE | |
| ☐ MAILING ADDRESS CHANGE | |
| ☐ OTHER: | Describe change. Please describe the reason for this change. |

_____ General
Signature                   Counsel Dan McCusker          11/25/03
                                    Position/Title              Date of Signature   11/24/03
Authorized Representative Only: Owner/Officer/Partner



EXHIBIT
6

# APPENDIX H

## Alex Burke

**From:**     Alex Burke [aburke@edcombs.com]
**Sent:**     Friday, May 06, 2005 4:53 PM
**To:**       'Todd Stelter'
**Subject:** MRS

Todd,

I do not believe that your letter of today complies with Judge Denlow's order. First, it is late. Second, you do not make a settlement demand as ordered to do; you only reject our demand.

Third, your letter is still very vague about MRS' affirmative defense. I believe that under Judge Denlow's order you will be barred from using any documents that have not been produced by several days ago.

Further, you have not only not provided me with a date when we may take the depositions that you told me were not going ahead this week, you have identified additional persons who are involved in ensuring compliance with the FDCPA. In court, you represented that only one person was involved, and I believe that you are barred from bringing more persons at this late date, per our discussion on the record.

Still, we would like an explanation of who Jeff Freedman and Ronald Jacobs are. Please also provide several dates for the depositions of the persons on the notice of deposition, as well as Mr. Freedman and Mr. Jacobs.

Alex Burke

# APPENDIX I

## Alex Burke

**From:**     Alex Burke [aburke@edcombs.com]
**Sent:**     Tuesday, June 07, 2005 4:29 PM
**To:**       'Todd Stelter'
**Cc:**       'David M. Schultz'
**Subject:**  RE: MRS

Todd,

This letter follows up on my email of May 6, 2005.

On April 8, Judge Denlow ordered MRS to make a settlement demand by May 3, 2005.  MRS did not make a settlement offer, it just rejected our offer in a fax dated May 2, but sent on May 6.

Judge Denlow also ordered MRS to refine its bona fide error defense on paper, so that we could depose Michael Meyer, John Heilman, Daniel McCusker and Stewart Miller with some minimal information about the bona fide error defense.

Your amendment to the bona fide error defense interrogatory vaguely describes a system of review for ensuring that letters do not violate the FDCPA, but it lists several new persons who are involved in the process, but who were not named earlier in discovery.  That there are additional persons involved is contrary to your statements in Court.  As I recall, Judge Denlow was specific that MRS could not name additional persons involved in the bona fide error process.

In either event, we noticed depositions to happen on May 10, 2005 by telephone.  You cancelled those depositions only  a few days before they were to happen, and only when I called you to see whether we could consolidate them with the depositions in another MRS case.  You promised to provide me with dates when the deponents are available, but a month has passed and you have not done so.

This lack of communication here is exactly what Judge Denlow warned us about in court last month.

We have a discovery conference next Friday, June 17, 2005.  Please correct the above deficiencies by Friday, June 10, 2005 at 12:00pm central time, or I will have to file a motion to strike MRS' bona fide error defense, and bringing these issues to the Court's attention.  Please call me to discuss these issues.

Alex
917-4517

(Copies sent via fax and email)

**From:** Alex Burke [mailto:aburke@edcombs.com]
**Sent:** Friday, May 06, 2005 4:53 PM
**To:** 'Todd Stelter'
**Subject:** MRS

Todd,

I do not believe that your letter of today complies with Judge Denlow's order.  First, it is late.  Second, you do not make a settlement demand as ordered to do; you only reject our demand.

Third, your letter is still very vague about MRS' affirmative defense.  I believe that under Judge Denlow's order you will be barred from using any documents that have not been produced by several days ago.

6/14/2005

Further, you have not only not provided me with a date when we may take the depositions that you told me were not going ahead this week, you have identified additional persons who are involved in ensuring compliance with the FDCPA. In court, you represented that only one person was involved, and I believe that you are barred from bringing more persons at this late date, per our discussion on the record.

Still, we would like an explanation of who Jeff Freedman and Ronald Jacobs are. Please also provide several dates for the depositions of the persons on the notice of deposition, as well as Mr. Freedman and Mr. Jacobs.

Alex Burke

6/14/2005

# APPENDIX J

## Alex Burke

| | |
|---|---|
| **From:** | Todd Stelter [TStelter@hinshawlaw.com] |
| **Sent:** | Friday, June 10, 2005 9:19 AM |
| **To:** | Alex Burke |
| **Cc:** | 'David M. Schultz' |
| **Subject:** | RE: MRS |

Mr. Burke:

(1) Mr. Meyer is available on June 14, 2005, at 1:00 p.m. CST for a telephone deposition. Please fax me a notice if you wish to take his deposition at that time. If you desire greater specifics as to MRS' bona fide error defense, please feel free to explore that issue with Mr. Meyer. I believe that what we have disclosed already goes above and beyond what is usually required to preserve the bona fide error defense under the FDCPA.

(2) MRS' will not be calling any other witnesses than Mr. Meyer at trial in support of their bona fide error defense. Therefore, it should not be necessary for any other defendant employees to be deposed. As Judge Denlow noted, this case is not worth the discovery you are proposing. Please call the undersigned on Monday, June 13, 2005, to have a Rule 37 conference and discuss this issue. If we cannot reach agreement, we will bring the issue before the Court.

(3) I disagree with you that Judge Denlow ordered MRS to make a demand. I believe Judge Denlow ordered MRS to respond to your settlement offer. MRS did so by rejecting it. If you insist upon a demand, all I am authorized to propose, at this time, is that MRS will settle this case upon voluntary dismissal and payment of their attorneys fees to date. Please advise whether you accept.

Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
tel: (312) 704-3000
fax: (312) 704-3001

| | | |
|---|---|---|
| **"Alex Burke" <aburke@edcombs.com>** | **To:** | "'Todd Stelter'" <TStelter@hinshawlaw.com> |
| | **cc:** | "'David M. Schultz'" <DSchultz@HINSHAWLAW.COM> |
| 06/07/2005 04:28 PM | **Subject:** | RE: MRS |

Todd,

This letter follows up on my email of May 6, 2005.

On April 8, Judge Denlow ordered MRS to make a settlement demand by May 3, 2005. MRS did not make a settlement offer, it just rejected our offer in a fax dated May 2, but sent on May 6.

Judge Denlow also ordered MRS to refine its bona fide error defense on paper, so that we could depose Michael Meyer, John Heilman, Daniel McCusker and Stewart Miller with some minimal information about the bona fide

error defense.

Your amendment to the bona fide error defense interrogatory vaguely describes a system of review for ensuring that letters do not violate the FDCPA, but it lists several new persons who are involved in the process, but who were not named earlier in discovery. That there are additional persons involved is contrary to your statements in Court. As I recall, Judge Denlow was specific that MRS could not name additional persons involved in the bona fide error process.

In either event, we noticed depositions to happen on May 10, 2005 by telephone. You cancelled those depositions only a few days before they were to happen, and only when I called you to see whether we could consolidate them with the depositions in another MRS case. You promised to provide me with dates when the deponents are available, but a month has passed and you have not done so.

This lack of communication here is exactly what Judge Denlow warned us about in court last month.

We have a discovery conference next Friday, June 17, 2005. Please correct the above deficiencies by Friday, June 10, 2005 at 12:00pm central time, or I will have to file a motion to strike MRS' bona fide error defense, and bringing these issues to the Court's attention. Please call me to discuss these issues.

Alex
917-4517

(Copies sent via fax and email)

---

**From:** Alex Burke [mailto:aburke@edcombs.com]
**Sent:** Friday, May 06, 2005 4:53 PM
**To:** 'Todd Stelter'
**Subject:** MRS

Todd,

I do not believe that your letter of today complies with Judge Denlow's order. First, it is late. Second, you do not make a settlement demand as ordered to do; you only reject our demand.

Third, your letter is still very vague about MRS' affirmative defense. I believe that under Judge Denlow's order you will be barred from using any documents that have not been produced by several days ago.

Further, you have not only not provided me with a date when we may take the depositions that you told me were not going ahead this week, you have identified additional persons who are involved in ensuring compliance with the FDCPA. In court, you represented that only one person was involved, and I believe that you are barred from bringing more persons at this late date, per our discussion on the record.

Still, we would like an explanation of who Jeff Freedman and Ronald Jacobs are. Please also provide several dates for the depositions of the persons on the notice of deposition, as well as Mr. Freedman and Mr. Jacobs.

Alex Burke

Hinshaw & Culbertson LLP is an Illinois registered limited liability

6/14/2005

partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

# APPENDIX K

## Alex Burke

**From:** Alex Burke [aburke@edcombs.com]
**Sent:** Friday, June 10, 2005 11:05 AM
**To:** 'Todd Stelter'
**Subject:** RE: MRS

Todd,

Great. I will send out a notice of deposition for that date in Lucas, and for Tuesday in MRS.

Incidentally, we still do not agree that you have met your burden to produce the persons noticed in our 30(b)(6) notice in the Lucas case. The transcripts show that this is the case. We will notice those depositions again for those dates in case GC Services decides to produce those persons.

Alex

**From:** Todd Stelter [mailto:TStelter@hinshawlaw.com]
**Sent:** Friday, June 10, 2005 11:03 AM
**To:** Alex Burke
**Cc:** 'David M. Schultz'
**Subject:** RE: MRS

All four deponents in the Lucas matter, Harris, Gardner, Stewart and Rush, will be available for deposition on June 27, 2005 and June 28, 2005, if necessary.

Please advise.

Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
tel: (312) 704-3000
fax: (312) 704-3001

| | |
|---|---|
| "Alex Burke" <aburke@edcombs.com> | To:  "'Todd Stelter'" <TStelter@hinshawlaw.com>, "'David M. Schultz'" <DSchultz@HINSHAWLAW.COM> |
| 06/10/2005 10:34 AM | cc: Subject:   RE: MRS |

Todd,

Your offer to provide this deposition conflicts with my travel time to Houston for the depositions that may or may not be going in Houston for Lucas v. GC Services. Please let me know what we should do for those depositions, whether we should proceed in Houston on the 15th, or whether we should do them all together on the 27th.

Even if I am traveling to Houston, we can do the deposition of Mr. Meyers on June 15, 2005 at any time. If I am not going to Houston, then we can do the deposition on June 14, 2005 at 1:00pm, as suggested.

6/15/2005

Please call me at 917-4517 to work out this scheduling. This email commemorates that I have called your direct number several times, since receiving this message 45 minutes ago, but nobody has answered.

This email also confirms that we have requested the depositions of Dan Divece, Daniel J. McCusker, Stewart Miller, Kelli Coia, Jeff Freedman, and Ronald Jacobs and that you have refused to produce those persons. They are all persons who were named in your discovery responses as persons knowledgeable about the letter that is the subject of this case, or about MRS' asserted bona fide error defense.

We disagree with your position regarding whether MRS is entitled to determine whether the depositions of these persons will go forward.

Alex Burke
917-4517

---

**From:** Todd Stelter [mailto:TStelter@hinshawlaw.com]
**Sent:** Friday, June 10, 2005 9:19 AM
**To:** Alex Burke
**Cc:** 'David M. Schultz'
**Subject:** RE: MRS

Mr. Burke:

(1) Mr. Meyer is available on June 14, 2005, at 1:00 p.m. CST for a telephone deposition. Please fax me a notice if you wish to take his deposition at that time. If you desire greater specifics as to MRS' bona fide error defense, please feel free to explore that issue with Mr. Meyer. I believe that what we have disclosed already goes above and beyond what is usually required to preserve the bona fide error defense under the FDCPA.

(2) MRS' will not be calling any other witnesses than Mr. Meyer at trial in support of their bona fide error defense. Therefore, it should not be necessary for any other defendant employees to be deposed. As Judge Denlow noted, this case is not worth the discovery you are proposing. Please call the undersigned on Monday, June 13, 2005, to have a Rule 37 conference and discuss this issue. If we cannot reach agreement, we will bring the issue before the Court.

(3) I disagree with you that Judge Denlow ordered MRS to make a demand. I believe Judge Denlow ordered MRS to respond to your settlement offer. MRS did so by rejecting it. If you insist upon a demand, all I am authorized to propose, at this time, is that MRS will settle this case upon voluntary dismissal and payment of their attorneys fees to date. Please advise whether you accept.

Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
tel: (312) 704-3000
fax: (312) 704-3001

| "Alex Burke" <aburke@edcombs.com> | | |
| --- | --- | --- |
| | To: | "'Todd Stelter'" <TStelter@hinshawlaw.com> |
| 06/07/2005 04:28 PM | cc: | "'David M. Schultz'" <DSchultz@HINSHAWLAW.COM> |
| | Subject: | RE: MRS |

6/15/2005

Todd,

This letter follows up on my email of May 6, 2005.

On April 8, Judge Denlow ordered MRS to make a settlement demand by May 3, 2005. MRS did not make a settlement offer, it just rejected our offer in a fax dated May 2, but sent on May 6.

Judge Denlow also ordered MRS to refine its bona fide error defense on paper, so that we could depose Michael Meyer, John Heilman, Daniel McCusker and Stewart Miller with some minimal information about the bona fide error defense.

Your amendment to the bona fide error defense interrogatory vaguely describes a system of review for ensuring that letters do not violate the FDCPA, but it lists several new persons who are involved in the process, but who were not named earlier in discovery. That there are additional persons involved is contrary to your statements in Court. As I recall, Judge Denlow was specific that MRS could not name additional persons involved in the bona fide error process.

In either event, we noticed depositions to happen on May 10, 2005 by telephone. You cancelled those depositions only a few days before they were to happen, and only when I called you to see whether we could consolidate them with the depositions in another MRS case. You promised to provide me with dates when the deponents are available, but a month has passed and you have not done so.

This lack of communication here is exactly what Judge Denlow warned us about in court last month.

We have a discovery conference next Friday, June 17, 2005. Please correct the above deficiencies by Friday, June 10, 2005 at 12:00pm central time, or I will have to file a motion to strike MRS' bona fide error defense, and bringing these issues to the Court's attention. Please call me to discuss these issues.

Alex
917-4517

(Copies sent via fax and email)

---

**From:** Alex Burke [mailto:aburke@edcombs.com]
**Sent:** Friday, May 06, 2005 4:53 PM
**To:** 'Todd Stelter'
**Subject:** MRS

Todd,

I do not believe that your letter of today complies with Judge Denlow's order. First, it is late. Second, you do not make a settlement demand as ordered to do; you only reject our demand.

Third, your letter is still very vague about MRS' affirmative defense. I believe that under Judge Denlow's order you will be barred from using any documents that have not been produced by several days ago.

Further, you have not only not provided me with a date when we may take the depositions that you told me were not going ahead this week, you have identified additional persons who are involved in ensuring compliance with the FDCPA. In court, you represented that only one person was involved, and I believe that you are barred from bringing more persons at this late date, per our discussion on the record.

Still, we would like an explanation of who Jeff Freedman and Ronald Jacobs are. Please also provide several dates for the depositions of the persons on the notice of deposition, as well as Mr. Freedman and Mr. Jacobs.

Alex Burke

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ALICE RUTH, | ) | |
| | ) | |
| Plaintiff, | ) | 3:04 C 50244 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

## NOTICE OF TELEPHONIC DEPOSITIONS

**TO:**  David M. Schultz
Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
(312) 704-3000
(312) 704-3001 (Fax)

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 30, you are to produce the individual listed below for the taking of their deposition. The deposition will take place via telephonic means, on the date and at the time listed below. The depositions will be taken before a person authorized to administer oaths.

| **DEPONENT** | **DATE** | **TIME** |
|---|---|---|
| Michael Meyer | June 14, 2005 | 1:00 p.m. |

Alexander H. Burke

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

1

## <u>CERTIFICATE OF SERVICE</u>

I, Alexander H. Burke, certify that on June 10, 2005, copies of the foregoing document were served via facsimile and United States mail upon the party to whom this notice is adressed:

Alexander H. Burke

LAW OFFICES
# EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle
18th Floor
Chicago, Illinois 60603
Phone 312/739-4200
Fax 312/419-0379

### FACSIMILE TRANSMISSION

TO: David M. Schultz, Esq.
Todd Stelter, Esq.

FAX NO: 704-3001

FROM: Alex Burke

RE: Ruth v. MRS & Associates

FILE NO: 11.388

DATE: June 10, 2005          PAGES: 3 w/ cover

*** 

Comments:

Attached please find **NOTICE OF TELEPHONIC DEPOSITIONS**,
which is hereby served upon you.

---

### PRIVILEGED COMMUNICATION
PLEASE PHONE 312/739-4200 IF YOU DO NOT RECEIVE ALL THE PAGES. This fax may contain
confidential material or other matter protected by the attorney-client privilege. Unless you are the addressee(or are
authorized to receive this fax for the addressee), you may not copy, use or distribute it. If you receive this fax in
error, please contact the sender by telephone or fax immediately and return by U.S. Mail.

```
**************** -COMM. JOURNAL- **************** DATE JUN-10-2005 ***** TIME 12:00 *******

    MODE = MEMORY TRANSMISSION          START=JUN-10 11:52    END=JUN-10 12:00

    FILE NO.=268

STN    COMM.    ONE-TOUCH/   STATION NAME/TEL NO.              PAGES      DURATION
NO.             ABBR NO.

001     OK       ☎           11388#7043001#                   003/003    00:00:23
       A52

                                                -ECLG LLC                   -

**************************************** -ECLG LLC    - ***** -      3124190379- ********
```

## LAW OFFICES
## EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle
18th Floor
Chicago, Illinois 60603
Phone 312/739-4200
Fax 312/419-0379

### FACSIMILE TRANSMISSION

TO:        David M. Schultz, Esq.
           Todd Stelter, Esq.

FAX NO:    704-3001

FROM:      Alex Burke

RE:        Ruth v. MRS & Associates

FILE NO:   11.388

DATE:      June 10, 2005              PAGES:    3 w/ cover

***

Comments:

        Attached please find **NOTICE OF TELEPHONIC DEPOSITIONS**,
which is hereby served upon you.

### PRIVILEGED COMMUNICATION
PLEASE PHONE 312/739-4200 IF YOU DO NOT RECEIVE ALL THE PAGES. This fax may contain
confidential material or other matter protected by the attorney-client privilege. Unless you are the addressee(or are
authorized to receive this fax for the addressee), you may not copy, use or distribute it. If you receive this fax in
error, please contact the sender by telephone or fax immediately and return by U.S. Mail.

# APPENDIX L

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

ALICE RUTH,                              )
                                         )
      Plaintiff,                        )
                                         )
vs.                                      )
                                         )  Case No. 04 C 50244
M.R.S. ASSOCIATES, INC.                  )
                                         )
      Defendant.                        )
                                         )
                                         )

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Defendant, M.R.S. ASSOCIATES, INC., by and through its attorneys, David M. Schultz and Todd P. Stelter, pursuant to Federal Rules of Civil Procedure 26(b)(2) and 26(c), for its Motion for Protective Order, states as follows:

1.     On April 13, 2005, plaintiff noticed up the depositions of five individuals for deposition. *See* Notice of Depositions, attached hereto as Exhibit A.

2.     In addition, via correspondence of June 7, 2005, and May 6, 2005, plaintiff informally provided notice that she was additionally insisting upon taking three additional depositions, that of Jeff Freedman, Ronald Jacobs and John Heilman. *See* Correspondence, attached hereto as Exhibit B.

3.     The depositions plaintiff seeks to take in this case are unreasonably cumulative and the burden and expenses of the proposed discovery greatly outweighs any possible benefit as described in Rule 26(b)(2). In addition, three of the witnesses are not even under defendant's control.

4.     Defendant therefore requests that this Court enter a protective order limiting the number of depositions plaintiff may take to those witnesses already deposed and also limiting the witnesses plaintiff is allowed to depose to only those individuals who are relevant to this case.

5940532v1 843461

5.    The above named individuals are not relevant to the merits of plaintiff's case. The FDCPA is a strict liability statute and defendant's actions and intent are irrelevant under the Act. *See Sims v. GC Services, L.P.*, Case No. 03-4077 (C.D. Ill. 2005), *citing Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) and *Russell v. Equifax A.R.S.*, 745 F.3d 30, 33-34 (2d Cir. 1996). "Intent is not an element of an FDCPA violation... A debt collector might make every effort in the world to produce confusing letters that do not provide the required notification and attempt to deceive their recipients; however, if the letters on their face would not confuse the unsophisticated consumer and contain all the required notifications, there is no FDCPA violation. Conversely, a debt collector might make every effort in the world to make its letters clear and not confusing; however, if the letters are confusing or otherwise violate the letter of the statute, the debt collector will be held liable. In short, intent plays no part in determining whether a particular letter violates the FDCPA and Plaintiffs reliance on intentional conduct is misplaced." *Sims*, Opinion attached hereto as Exhibit C, at pages 9 and 10.

6.    Defendant has attempted multiple times under Rule 37, and Local Rule 37.2, through consultation in person and via telephone conferences with plaintiffs' attorney to make a good faith attempt to resolve this dispute without court intervention. However, an accord has not been able to be reached. *See* Affidavit, attached hereto as Exhibit D.

7.    Plaintiff refuses to limit the scope of her discovery and argues that defendant's employees' intent is relevant to defendant's bona fide error defense and damages in this matter, and therefore, all of defendant's employees are relevant and subject to deposition.

8.    Defendant produced Michael Meyer, CIO of defendant, for deposition on June 14, 2005, to testify as to defendant's bona fide error defense.

2

9.    Defendant has represented to plaintiff that it will call no other witnesses at trial in support of its bona fide error defense other than Michael Meyer, and therefore, additional depositions of defendant's employees are unnecessary and cumulative.

10.    Plaintiff, however, has refused to limit the scope of her discovery and instead has threatened to file motions against defendant requesting sanctions.

11.    These issues were brought before Judge Morton Denlow on April 8, 2005, in regard to *written* discovery on many of these same issues. Plaintiff argued in open court that their proposed voluminous discovery was necessary in order to prove damages in this case. Judge Denlow denied plaintiff's request for more voluminous discovery, noting that based upon defendant's net worth, this case is worth a maximum of $12,000, and that he would not order defendant incur $30,000 in legal fees to defend against it.

12.    In addition, several of the deponents are not under defendant's control. Noticed deponents Kelli Coia, Dan Divece and Ronald Jacobs are not employees of defendant. Kelli Coia and Dan Divece were initially listed on discovery that was later amended, omitting their names. This point has been repeatedly pointed out to plaintiff's counsel but they refuse to withdraw their demands for defendant to produce these individuals.

13.    The remaining listed deponents, Dan McCusker, John Heilman, Stewart Miller and Jeff Freedman can only give cumulative testimony to that of Michael Meyer.

M.R.S. ASSOCIATES, INC.

By:    _____

One of Defendant's Attorneys

David M. Schultz

3

Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

5940532v1 843461

# APPENDIX M

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

PAUL E. LUCAS, SR. and )
RUBY M. LUCAS, )
)
            Plaintiffs )
)
        v. )   Case No. 2:03 cv 498
)
GC SERVICES L.P.; DLS )
ENTERPRISES, INC.; and GC )
FINANCIAL CORPORATION, )
)
            Defendants )

ORDER

This matter is before the court on the Motion to Compel
Depositions filed by the plaintiffs, Paul and Ruby Lucas, on
January 19, 2005; the Motion for Protective Order filed by the
defendants, GC Services, L.P., DLS Enterprises, Inc. and GC
Financial Corporation, on January 26, 2005; and the Motion to
Respond to New Arguments Raised in Defendants' Reply filed by the
plaintiffs on February 11, 2005. For the reasons set forth
below, the motion to compel is **DENIED AS MOOT**, the motion for
protective order is **DENIED**, and the motion to respond is **DENIED**.

Background

These motions represent the fourth round in a discovery
dispute between the plaintiffs, Paul and Ruby Lucas, and the
defendants, collectively called "GCS," that already has been the
subject of three orders by this court. The Lucases allege that a
dunning letter sent to them by the defendant, GC Services on
November 19, 2003, violated the Fair Debt Collection Practices

Act ("FDCPA"). Defendants DLS Enterprises and GC Financial Corporation are the general partners of GC Services.

## Discussion

Federal Rule of Civil Procedure 37(b)(2)(c) states that if a party fails to obey an order to provide or permit discovery, the court may "make such orders in regard to the failure as are just," including striking all of a party's pleadings. *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64, 100 S.Ct. 2455, 2462-63, 65 L.Ed.2d 488 (1980). The trial court has broad discretion in using Rule 37 sanctions "to penalize balky litigants and to deter others who might otherwise ignore discovery orders." *See Compuware Corporation v. Health Care Service Corporation*, No. 91 C 0873, 2002 WL 485710, at *6 (N.D. Ill. April 1, 2002) (*quoting Philips Medical Systems International v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992)). *See also David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). If the court imposes a sanction, "the sanction selected must be one that a reasonable jurist, apprised of the circumstances, would have chosen as proportionate to the infraction." *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998). However, when lesser sanctions have not deterred a party's bad conduct, a court may order all pleadings stricken under Rule 37(b)(2)(c). *See, e.g., Compuware*, 2002 WL 485710, at *6.

The plaintiffs have been attempting to conduct discovery in this case since February 25, 2004. On April 21, 2004, GCS responded to the plaintiffs' propounded discovery. However, in

2

June 2004, the parties filed cross-motions to compel in which the plaintiffs argued that the defendants' discovery responses were deficient. On August 6, 2004, this court denied both motions without prejudice because neither party filed a Local Rule 37.1 certification. Consequently, on September 22, 2004, the plaintiffs renewed their motion to compel because GCS had not corrected its deficient discovery responses and had taken the position that the plaintiffs' original discovery requests were rendered moot by the court's August 6, 2004 order.

On November 3, 2004, this court determined that GCS's discovery responses were "egregiously evasive and incomplete" and "harmful to the litigation of this case" and that the defendants displayed "blatant and willful bad faith." Having enumerated the defendants' many deficiencies in its two previous orders, this court will not reiterate them here. In response to GCS's actions, this court ordered several sanctions against GCS, including that GCS respond to outstanding discovery within ten days of the order.

On November 18, 2004, GCS submitted its untimely responses to the outstanding discovery, which included numerous objections, vague and evasive answers, legal arguments in place of answers, and many wholly inappropriate and unprofessional comments about the availability of evidence and the number of times in which the plaintiffs' counsel had sued GCS. Again, this court will not spend more time than it already has wasted in an exhaustive listing of the defendants' deficient responses to discovery

3

compelled by this court. However, it must be noted that on December 14, 2004, a month after the court-ordered deadline for GCS to respond to the plaintiffs' discovery, GCS produced the names of several witnesses, the name of its printing company, an audited balance sheet, and a copy of an internal operating policy. Finally, GCS filed a "motion for clarification" of the November 3, 2004 order on December 10, 2004, seeking to establish that through these still deficient answers, GCS had complied with the order.

A few days after GCS filed its motion for clarification, the plaintiffs filed a motion for rule to show cause why GCS had not complied with the November 3, 2004 order. After consideration, this court ordered numerous sanctions against the defendants on February 2, 2005. Several sanctions from that order that are relevant to the present motions are that GCS may not produce any witnesses beyond current employees Michael Ellis and Michael Sullivan and former employee Diana Derbus and that GCS must produce the name and contact information of the representatives from Relizon, the printing company with which GCS works. In addition, this court warned GCS that it would be subject to further sanctions if the plaintiffs discovered a contract between GCS and Relizon, which CGS affirmatively represented did not exist.

As the court was considering the motions that were the subject of the February 2, 2005 order, the plaintiffs were attempting to schedule depositions of Diana Derbus and employees

4

of Relizon and GCS. These depositions are the subject of the current dispute. On January 5, 2005, the plaintiffs noticed the depositions of several GCS employees to take place on January 19, 2005 in Houston, Texas. After the plaintiffs' January 11, 2005 e-mail attempt to confirm the depositions received no response from defense counsel, the defense counsel told plaintiffs' counsel by phone that the defendants would not be ready for the depositions on January 16, 2005. To the court's knowledge, these depositions remain unscheduled.

On January 6, 2005, the plaintiffs noticed the depositions of Diana Derbus and certain Relizon representatives. The plaintiffs noticed Derbus' deposition for January 27, 2005, but then rescheduled it for Saturday, January 30, 2005.[1] However, counsel for GCS refused to attend a Saturday deposition on the grounds that Saturdays are for personal and family time. On January 26, 2005, one day before the deposition originally was scheduled, the defendants filed a motion for a protective order seeking to block the depositions of Derbus, the GCS employees, and the Relizon representatives on the grounds that these depositions were "irrelevant." In addition, at some point between January 26 and 28, 2005, defense counsel contacted Derbus because on January 29, 2005, Derbus informed counsel for the plaintiffs that she be-

---

[1] Although the plaintiffs first state that the motion for protective order was filed on January 26, 2005, the correct date, the plaintiffs later state that both sides of this dispute were in contact with Derbus between January 26 and 28, 2005, and that the defendants filed their motion for a protective order on January 29, 2005. While these dates are minorly inconsistent, it is apparent that the relevant events unfolded over a very short period of time immediately preceding the scheduled deposition.

lieved she did not need to be deposed because of the pending motion for a protective order.

This court is not aware of any precedent that allows a party to cancel the deposition of a cooperative non-party witness 48 hours before the deposition is scheduled, three weeks after it has been noticed, and for no better reasons than that Saturdays are for personal time and the deposition is "irrelevant." While it is true that the FDCPA is a strict-liability statute in which intent is not relevant to establish liability, intent is an aspect of the bona fide error defense that GCS has raised in this case. *See, e.g.,* ***Randolph v. IMBS, Inc.,*** 368 F.3d 726, 730 (7th Cir. 2004). Section 1692k(c) of the FDCPA essentially requires GCS to establish by a preponderance of the evidence that if GCS made an error, it was a) not intentional and b) that it was made despite adequate procedures in place to avoid the error. *See* 15 U.S.C. ß1692k(c). Therefore, the plain language of the FDCPA appears to establish intentionality and procedural safeguards as the cornerstones of GCS' bona fide error defense. While the defendants have argued vigorously that intent should not be considered, the parties have not consented to the magistrate judge, and this court refuses to determine an issue in the resolution of a discovery dispute that is more appropriately before the District Court.

Moreover, had GCS timely complied with this court's November 3, 2004 order, it would have produced the names of those individuals the plaintiffs now seek to depose as people with relevant

6

information.  GCS produced the names on December 14, 2004.  In
addition, on February 2, 2005, this court ruled that the plain-
tiffs are entitled to seek information from Diana Derbus and
Relizon, as well as at least two GCS employees.  Derbus previ-
ously testified to knowledge of the defendants' quality control
procedures.  *See* Pl. Reply Exh. C.  While GCS may not choose to
name Derbus as a witness, the plaintiffs certainly may.  The
depositions of Relizon representatives and GCS employees also are
likely to be probative of GCS' procedural safeguards.  With
respect to GCS' concern that the plaintiffs will seek to depose
more of its employees than Michael Sullivan and Michael Ellis in
the search for relevant information, the court notes that GCS
would have decreased this likelihood had GCS provided more
forthcoming discovery responses in the first place.

In any event, GCS has not made a showing that the plaintiffs
are attempting to seek excessive and unnecessary depositions.
The subpoena names only Michael Sullivan and any employees who
ordered preprinted letters or paper, who were responsible for the
appearance of the letter sent to the plaintiffs, and who answer
to the pseudonym "Sam A. Marshall."  The court cannot fault the
plaintiffs for not naming more specific individuals when GCS did
not even produce three possible witness names until December 14,
2004.  Accordingly, the depositions cannot be characterized as
annoying, embarrassing, or oppressive under Federal Rule of Civil
Procedure 26(c).

In addition to the defendants' dilatory tactics, the plain-

7

tiffs aver that counsel for the defendants has been less than
forthcoming with the plaintiffs on two counts. First, the
plaintiffs indicate that counsel for GCS said Derbus knows
nothing about the printing of GCS letters and has not worked for
GCS for four years. (Pl. Reply in Support 3rd Mot. to Compel, p.
3) However, as noted above, Derbus' testimony in a previous case
against GCS also clearly exhibits that she does have knowledge
regarding GCS letters. (*See* Pl. Reply Exh. C) Second, the
defendants affirmatively stated that GCS performed all printing
in-house. (*See* Pl. Reply Exh. F) Later, GCS stated that it used
a third-party printer but had no contracts with any entity to
print or mail letters such as those sent to the Lucases. (*See*
Pl. Mot. for Order to Show Cause Exh. A) However, Relizon has
produced three purchase orders with GCS for the printing of
dunning letters. Whether Relizon had a contract with GCS to
produce the specific letters sent to the Lucases remains to be
seen, but Relizon's third-party production certainly raises the
inference that such a contract exists. This evasive conduct is
further indication that the defendants have not heeded the
court's two previous warnings.

In an objection to the Lucas' motion to respond to new
arguments, GCS argues that a sur-reply is not necessary because
the plaintiffs' sur-reply only disputes arguments raised in GCS'
brief in support of a protective order and GCS' reply brief. GCS
also argues that the plaintiffs' motion should be denied because
Magistrate Judge Paul R. Cherry denied a motion to file a sur-

8

reply in another case, because Local Rule 7.1(a) does not provide for a sur-reply, and because the plaintiffs failed to file their motion to file a sur-reply separate from their brief. GCS then argues that if the court allows the plaintiffs to file a sur-reply, then GCS should be permitted to file a "sur-sur-reply."

While this court respects the opinions of Judge Cherry, his rulings are not binding on this court, particularly in unrelated cases. In addition, although Local Rule 7.1(a) does not provide for the filing of a sur-reply, the Seventh Circuit recognizes that permission to file a sur-reply is well within the trial court's discretion. *See **Anthony v. Country Life Manufacturing, L.L.C.***, 70 Fed. Appx. 379, 384 n.4 (7th Cir. 2003). The fact that the Lucases filed their motion to file a sur-reply in conjunction with their sur-reply is of no consequence at this point. If GCS wishes to adopt a puritanical approach to the federal rules, then GCS should have filed its own alternative motion to file a "sur-sur-reply" in a separate motion rather than in conjunction with their response to the plaintiffs' motion. In any event, this court denies both parties' efforts to perpetuate this discovery dispute in such a petty manner.

Finally, GCS argues that the plaintiffs' repeated petitions to get the discovery they are due are really only attempts to "engorge their attorney's fees." (*See* Def. Mot. for Protective Order, p. 2) While this accusation is so meritless it barely warrants discussion, the defendants' gross disregard for the rules of discovery and for this court's orders necessitate

9

response. By repeatedly obstructing discovery, the defense counsel has done far more to generate needless fees for their own clients than the plaintiffs ever could have accomplished on their own. Moreover, the ongoing nature of this discovery dispute has wasted the resources of both this court and the District Court, severely impeded the District Court's hearing of the merits of this case, and led to the sanctions which this court now imposes.

---

For the foregoing reasons, the Motion to Compel Depositions filed by the plaintiffs, Paul and Ruby Lucas, on January 19, 2005 is **DENIED AS MOOT**, the Motion for Protective Order filed by the defendants, GC Services, L.P., DLS Enterprises, Inc. and GC Financial Corporation, on January 26, 2005 is **DENIED**, and the Motion to Respond to New Arguments Raised in Defendants' Reply filed by the plaintiffs on February 11, 2005 is **DENIED**. Pursuant to Rule 37(b)(2)(c), the court hereby **ORDERS** all of the defendants' pleadings **STRICKEN**, and all of the allegations contained in the plaintiffs' amended complaint are **DEEMED ADMITTED**.

ENTERED this 28th day of February, 2005

s/ ANDREW P. RODOVICH
United States Magistrate Judge

10

# APPENDIX N

Case: 3:04-cv-50244 Document #: 29 Filed: 06/16/05 Page 163 of 182 PageID #:553






**MRS** *A Receivables Management Company* technology | training | management

| HOME | ABOUT US | RESOURCE CENTER | CAREERS | CONTACT |

*"Revolutionizing Accounts Recovery"*

# ▲ our divisions

**FINANCIAL COLLECTIONS**
▲ Affiliations
   Request Information
   Placement Form

**COMMERCIAL RECOVERY & OUTSOURCING**

**GOVERNMENT/ EDUCATIONAL COLLECTIONS**

**LEGAL SOLUTIONS**

SITE MAP

**ACCOUNT ACCESS**

## FINANCIAL COLLECTIONS
## Affiliations


ACA International
The Association of Credit and Collection Professionals




NARCA
NATIONAL ASSOCIATION OF RETAIL COLLECTION ATTORNEYS


CollectionIndustry.com


RESOURCE MANAGEMENT SERVICES, INC.
*Consultants in Collection and Recovery Management*


THOMSON


DEBT BUYERS' ASSOCIATION


COLLECTION ADVISOR
CREDIT, BILLING, RECEIVABLES, & RECOVERY

---

MRS Associates Inc.
3 Executive Campus
Suite 400
Cherry Hill, NJ 08002
(888) 334-5677

HOME | ABOUT US | RESOURCE CENTER | CAREERS | CONTACT

# APPENDIX O

Register Now or log in at left of your screen.

Update your email address, and more... ▼

**Collection**Industry.com
A KAULKIN MEDIA PUBLICATION

| News | Jobs | Publications | Discussion | Columns | Directory |

**Discussion Forum**
Register Now in order to participate!

■■ KAULKIN
■■ GINSBERG
**Advice, Expertise, Information**

**Email Address**

**Password** (Forgot?)

**Log In →**

Home

**News and Articles**
Industry News
Columns
Industry Views
Industry Leaders
Agency News
Technology News

**Resources**
The Business Exchange
Events
Directory
Discussion Forum
Jobs
Publications

**Kaulkin Rewards**
Current Balance:
Refresh Balance
About Kaulkin Rewards
Current Promotions
Cool Stuff

Navigation: Debt Collection ▼

customize   new topic   search   today   help   home

**FORUMS > DEBT COLLECTION**                    [ REFRESH ]

**Thread Title:** Post Dated Checks Illegal?
**Created On** Saturday 05/28/05 7:34 PM

📄 Saturday 05/28/05 7:34 PM                    💡 🖨️

**Superirish2005**
Member

Posts: 60
Joined: May 2005

I have heard many people say that post dated checks are illegal in some states. How can this be possible or are the debtors just flat out lying as a stall tactic!

Reply    Quote    Top    Bottom

📄 Saturday 05/28/05 7:42 PM                    💡 ✂️ 🖨️

**TBSCOLLECTS**
Member

Posts: 73
Joined: Apr 2005

In collections, you should always keep yourself updated with new FDCPA laws, both federal and state. For instance, in Pennsylvania it is illegal for you to solicit post dated checks to consumers, but a way to get around it is if the debtor offers a post dated check then you can accept it. Our agency prints checks, so the checks dont print until the day they are post dated for anyways.

--------------------------
No bird soars too high if he soars with his own wings.
William Blake

Reply    Quote    Top    Bottom

📄 Sunday 05/29/05 9:45 AM                    💡 🖨️

**Superirish2005**
Member

Posts: 60
Joined: May 2005

TBS Collects, thanks for the answer. I pretty much knew about Pennsylvania and Iowa laws. We solicit PDC's all the time and it is a major way we collect our money!!!!!!!!!!

Reply    Quote    Top    Bottom

📄 Sunday 06/05/05 12:25 PM                    💡 ✂️ 🖨️

**Chisto**
Junior Member

Posts: 15
Joined: Nov 2004

Its best to avoid accepting, or for that matter elicitting, post dated checks because the FDCPA requires that you notify debtors prior to cashing them. If you are running a large operation, this step can be easily forgotten and lead to multiple violations.

Reply    Quote    Top    Bottom

📄 Sunday 06/05/05 2:34 PM                    💡 ✂️ 🖨️

**Superirish2005**
Member

Posts: 60
Joined: May 2005

we have a letter automatically generated that is sent when we take a post dated check. The proper answer to this thread is NO. Post dated checks are not illegal and anyone who tells me otherwise I psuh them even more for a PDC or wanr them of the consequences.....

Reply    Quote    Top    Bottom

📄 Monday 06/06/05 12:44 AM                    💡 ✂️ 🖨️

**Tarrant**
Member

Posts: 36
Joined: Jan 2005

You are partially correct. It IS legal to take postdated checks but in some states, as was previously stated, it is illegal to solicit them. I always got around it by stating we could accept postdates and set up easy free drafts but you have to be careful in those states about stating that debtors MUST give postdates.

At least that has always been my understanding.

Reply    Quote    Top    Bottom

📄 Monday 06/06/05 7:04 AM                    💡 ✂️ 🖨️

**infuego**
Member

Posts: 41

**Joined: Jan 2005**

I agree with si2005. Postdates are one of the biggest tools of the trade. I typically start out the month with at least half of my quota secured with postdated checks. You just have to know which states you cannot solicit them in.

Reply    Quote    Top    Bottom

**TBSCOLLECTS**
Member

Posts: 73
Joined: Apr 2005

📄 Monday 06/06/05 7:20 AM

There is no doubt that post dates are a major part of a collectors fee each month, I was simply stating that it is good to be aware of the state laws so the agency doesnt get sued over solicitation. I urge my collectors to build up there post dates, especially for the slow months. I also make sure they are well aware of the state laws. and mostly just to document the account properly so they cover there backs.

--------------------------
No bird soars too high if he soars with his own wings.
William Blake

Reply    Quote    Top    Bottom

**Superirish2005**
Member

Posts: 60
Joined: May 2005

📄 Monday 06/06/05 6:29 PM

I solicit PDC's in all states and if someone questions my tactis I tell them that they suggested that form of method and then back off.....LOL

Reply    Quote    Top    Bottom

**TBSCOLLECTS**
Member

Posts: 73
Joined: Apr 2005

📄 Tuesday 06/07/05 7:17 AM

It has a lot to do with how you document, but you may find yourself on the short end of a recorded conversation one day.

--------------------------
No bird soars too high if he soars with his own wings.
William Blake

Reply    Quote    Top    Bottom

**Tarrant**
Member

Posts: 36
Joined: Jan 2005

📄 Tuesday 06/07/05 8:58 AM

Exactly. It's much the same in my opinion as collecting during overshadowing. Instead of demanding provide an incentive. State that you CAN accept pd's and then offer an incentive to give them in those certain states that prohibit solicitation such as stopping interest while pd's are active and rolling. Much like how, during overshadowing, I'll never tell a D they MUST pay the debt within the 30 day period but instead offer a sif as an incentive if paid during that timespan that will not be available after.

Even this could potentially be considered grey since you are coercing however I think if you are going to push a little for something like these that are moderately grey much better to provide a carrot then try to intimidate with a stick. Fewer debtors will complain that you offered them a deal then will if you harrassed or pressured them.

**Edited:** Tuesday 06/07/05 **at** 8:59 AM **by** Tarrant

Reply    Quote    Top    Bottom

**collector1**
Senior Member

Posts: 423
Joined: Sep 2004

📄 Wednesday 06/08/05 8:39 AM

The easiest thing is " you don't have to do anything, but to avoid involuntary action here's one option.".

Reply    Quote    Top    Bottom

**johnmill**
Junior Member

Posts: 2
Joined: Apr 2005

📄 Wednesday 06/08/05 1:13 PM

It is illegal to solicit postdated checks in Massachusetts. See 209 CMR 18.17 (3):

http://mass.gov/dob/209cmr18.htm#seventeen

Though you may accept them as payment. As a precaution our office never does for debtor in this state.

**Edited:** Wednesday 06/08/05 **at** 1:13 PM **by** johnmill

Reply    Quote    Top    Bottom

**Satellite93**
Senior Member

Posts: 268

📄 Monday 06/13/05 7:45 PM

Joined: Jan 2003

I agree. Massachusetts is the only state I am aware that it is a problem. Violation of state law. they are not illegal under FDCPA.

We stay away from them in that state when possible but I have seen lots of people take them there without a problem. Not that I would recommend it....

------------------------
Make it happen!!!

| | Reply | Quote | Top | Bottom |

☐ Tuesday 06/14/05 7:25 AM

**collector1**
Senior Member

Posts: 423
Joined: Sep 2004

I believe in NC it is also illegal to solicit PD's

| | Reply | Quote | Top | Bottom |

☐ Tuesday 06/14/05 7:50 AM

**Average Joe**
Senior Member

Posts: 539
Joined: Apr 2004

North Carolina?

Here are the NC statutes:

**NC Statutes**

UCC:

**NC UCC**

I can't find anything that says you can't solicit PDCs in North Carolina.. Do you have a source or link Coll1 ? Because if it's true, I need to update my state laws summary..

------------------------
Let's skip the rent this month.

**Edited:** Tuesday 06/14/05 **at** 7:54 AM **by** Average Joe

| | Reply | Quote | Top | Bottom |

FORUMS > DEBT COLLECTION                                    [ REFRESH ]

FuseTalk 3.1 - Copyright © 1999-2002 e-Zone Media Inc. All rights reserved.

Home | About Us | Advertise | Contact Us | Privacy Policy | Terms of Use
Copyright © 2005 CollectionIndustry.com, a Kaulkin Media publication

# APPENDIX P


RMS **RESOURCE MANAGEMENT SERVICES, INC.**
*Consultants in Collection and Recovery Management*

**Resource Management
Services
June 14, 2005**

Home

Our Company

Consulting

Auditing Services

Publications

Software

Training

Research

Networking

Conferences

Contact Us

Join the thousands
of others that
have directly
benefited through
the use of our
Collection Agency
Audits, Collection
and Recovery
Consulting,
Training Seminars
and Research
Projects.

Our services have
helped other
Companies like
yours to
strengthen both
their outsourced
*and* internal
collection efforts.

# Training and Development ©

Resource Management Services, Inc. knows that quality
training and development is necessary for success. Our staff
trainers are experts in their field and have years of operational
experience doing the exact same jobs for which you'll be
training. This enables us to provide our clients with the
highest quality training possible.

We have 2 key training programs:

- **Auditing**
- **Custom**

---

### Agency Auditor Training
Learn Agency Management and Audit Techniques to Maximize
Results from your outside vendors.

2005 Classes have been completed. Dates for 2006 classes
have not been set. Please call to register your interest.

### The High-points:
- Four day training seminar in Southern California.
- Learn fundamental auditing techniques for 3rd
  party agencies/attorneys.
- Learn where and how to look for compliance
- Custom training can be conducted on-site at the
  client location.
- Vital for effective management of outside
  collection vendors!

 **Now you can hear what 2 recent
attendess had to say about the course!**

### The Details:

The Auditor Training course offered by Resource Management
Services, Inc. (RMS) provides the attendee with an
understanding of what a collection vendor auditor should be
looking for. The course covers evaluation of a vendor's
collection performance and what the auditor should be looking
for in remittance activity. The OAAP Pro™ program itself is an
available tool, which makes this process more efficient. Cost is
$1,500 per attendess (does not include meals or
accomodations). Class to be held at the Marriott Norwalk,
California.

The course covers specifics on what to look for and how to evaluate the findings. For instance, it has been proven that the more efficiently an account is activated (first letter and phone call), the sooner the debtor is contacted and ultimately the sooner payments are collected. Evaluating areas as obvious as activation or as obsolete as follow-up action on a busy signal is the basis of the training. The significance, the philosophy and the value for each of these actions are addressed.

The training program offers this type of in-depth training in fifty-eight (58) specific areas.

In addition, the participant is instructed in:

- The Audit Approach (Auditor Posture)
- Preparation
- Sampling
- Evaluating and Finding Risk
- Developing Work Standards
- Managing With the Audit

As part of the training, the participant is given and is trained to utilize forms, which will help to organize and expedite the process. The participant will leave the class with a complete understanding of the collection vendor arena, its abilities, its actual performance, and its potential. Over the course of time, RMS has had some attendees who have not purchased the OAAP Pro™ software used by RMS, but have taken the knowledge gained in the class and developed their own custom auditing programs. It is our understanding that those attendees have experienced great success with their programs. The OAAP Pro™ software is an available tool by which the auditing process may be performed consistently and efficiently, but it is not necessary to the development of an auditing program. A limited version of OAAP Pro™ will be given to each attendee. With this version, the user has limited use of the program! Data may be entered, but reports cannot be run.

**Feedback:**

Here is what a few attendees said about the course:

"Since I've never audited before, this class was great and gave me a lot to think about."

"I learned more valuable information in these 4 days than I had in 10 months as an agency auditor."

"The training class was very informative. The class offered many different ways to determine what your agencies/attorneys are doing with your paper."

"The part of the class where we went through sample accounts to rate them and then went over the answers, helped to get a better understanding of how to figue out what information is needed."

"The class dealt with my exact needs. I feel I now have the tools I need to organize an audit."

"It covered basic audit principles when auditing agencies, and what to look for."

"I was very new to the auditing process and actually feel I can walk away being comfortable in an auditing situation."

"Fundamentals of auditing. Recognizing the terminology. Understanding what is important to look at. What an agency thrives on and what we need them to thrive on. "

"It helped define and oranize my thoughts on how to develop an auditing program."

"The class is very specific when explaining auditing guidelines and procedures"

"It helped me realize that I was missing some critical information from my audits which I will incorporate into any reviews moving forward." _____

## Client Specific Training

Custom training programs can also be designed to meet specific client needs.

For specific information on how our training can be customized to meet your organizations' needs, as well as for pricing information, please contact us at (562) 906-1101 or via **e-mail.**

Copyright © 2005 **Resource Management Services, Inc.**
10440 Pioneer Blvd., Suite 2 Santa Fe Springs, CA 90670-8235
Phone (562) 906-1101 * Fax (562) 906-1212

# APPENDIX Q

## Conference Agenda

# Wednesday, October 20, 2004

**3:30 PM - 5:00 PM**
**Industry Specific Town Hall Meetings**

**M&A - Michael Ginsberg**
*President & CEO*
**Kaulkin Ginsberg**

**Outsourcing – Nitin Kapila**
*President*
**GRM Group**

**Debt Sales/Buy & Sell - Sean McVity**
*Managing Partner*
**Garnet Capital Advisors, LLC**

**5:00 PM**
**Keynote Presentation**
*State of the Economy*

**Allen Grommet**
*Senior Economist*
**Cambridge Consumer Credit Index**

**5:45 PM - 7:45 PM**
**Welcoming Reception in Exhibit Hall**

# Thursday, October 21, 2004

**7:00 AM**
**Registration Continental Breakfast in Registration Area**

**7:45 AM**
**Chairperson's Welcoming Remarks**

**Kit Ladwig**
*Editor*
**Collections & Credit Risk Magazine and Creditcollectionsworld.com**

**8:00 AM**
**Keynote Presentation**
*How Are You Getting Ready for the Next Wave?*

Bill Herberger
*Operations Executive, EVP Customer Support Division*
**Bank One Card Services**

**8:45 AM**
*I Fought the Law and the Law Won:*
*A Cautionary Tale of Regulatory Compliance for Bankers and Their Agency Partners*

Christine Maia-Fleres
*Senior Compliance Officer*
**First Repulic Bank**

**9:30 AM - 10:30 AM**
*Morning Refreshment and Networking Break*
Exhibit Hall Opens

Sponsored by:



**10:30 AM**
*FDCPA Compliance: Legal Update/Defense & Compliance*

Jesse L. Riddle, Esq.
*President*
**Riddle & Associates, P.C.**

**11:15 AM**
*PAY?? NO WAY!!! Debtor Scams and Consumer Fraud*

Moderator:
Eric M. Berman, Esq.
*President*
**Eric M. Berman, P.C.**

Panelists:
David J. Harmer, Esq.
*Deputy General Counsel*
**Providian Financial Corp.**

Harvey M. Moore, Esq.
*Principal*
**Bidna & Keys, APLC**

**12:00 PM - 12:45 PM**
**Luncheon for Participants, Speakers and Sponsors**

**12:45 PM - 2:00 PM**
*Dessert & Afternoon Networking Break in Exhibit Hall*

**2:00 PM**
*Globalization & Offshore: Hype or Reality?*

Moderator:
Nitin Kapila
*President*
**GRM Group**

Edward Chen
*CEO and President*
**Riscuity**

Panelists:
John Frey
*Senior Vice President, Collections*
**Compass Bank**

Dennis Sholl
*Chief Executive Officer*
**GlobalVantedge**

**2:45 PM**
*Partnership Outsourcing*

Joe Barry
*Senior Vice President*
**First National Bank of Omaha**

**3:30 PM - 4:00 PM**
**Afternoon Refreshment Break**

**4:00 PM**
*Managing Agency Relationships*

James V. Panzarino
*Senior Vice President, Cardmember Assistance*
**Discover Financial Services**

**4:45 PM**
*Hot Topics in Scoring -- Panel Discussion*

Moderator:
Shelly Ehrman
*VP, Marketing*
**Fair Isaac**

Panelists:
Keith Carroll

Case: 3:04-cv-50244 Document #: 29 Filed: 06/16/05 Page 176 of 182 PageID #:566

*VP Collections, Strategy, Analysis and Reporting*
**General Electric Capital Corporation**

Bill Mengershausen
*SVP - Manager Risk Reward Management*
**US Bancorp**

Jacques A. Machol, III
*Manager*
**Option Card**

**5:30 PM - 7:15 PM**
**Opening Night Reception**

# Friday, October 22, 2004

**7:30 AM**
**Continental Breakfast in Registration Area**

**7:45 AM**
**Chairperson's Introduction**

Jim Daly
*Editor & Associate Publisher*
**Credit Card Management Magazine**

**8:00 AM**
**Keynote Presentation**
*Running Collections as a Leading Business*

Robert R. Box
*Consumer Risk Operations Group Executive*
**Bank of America Corporation**

**8:45 AM**
*How Will Recent Developments in Bankruptcy Law Affect Your Business*

Bill Weinstein
*Director*
**Weinstein, Treiger & Riley**

**9:30 AM**
*Workforce Recruitment and Retention Strategies in the Global Marketplace*

Anthony V. Marino
*President & CEO*
**Nationwide Credit, Inc.**

**10:00 AM - 11:15 AM**
**Morning Refreshment & Networking Break in Exhibit Hall - Exhibit Hall Closes**

Case: 3:04-cv-50244 Document #: 29 Filed: 06/16/05 Page 177 of 182 PageID #:567

**11:15 AM**
*The Collections Report Card - Where Does Your Institution Stack Up?*

Stan Myers
*Managing Director*
**Card Analytics Consulting, Inc.**


**11:45 AM**
*Using the National Shared Account Databases to Minimize Collections and Chargeoffs*

Glen Sgambati
*SVP and Payments Products Business Manager*
**Primary Payment Systems, A First Data Company**


**12:15 PM**
*Managing Credit Counseling: Reducing Risk, Improving Performance*

Moderator:
Mike Morency
*President & CEO*
**Peregrin Services Corp.**

Panelists:
Thomas Carey
*Vice President*
**MasterCard RPPS**

William Kadish
*Vice President*
**Federated Stores**

Brian Reinhart
*Senior Vice President*
**Bank of America**


**12:45 PM**
**Conference Concludes**

©2004 Thomson Media

Back to top

---

# THOMSON

**One State Street Plaza**
**New York, New York 10004**

# APPENDIX R

# DEBT BUYERS' ASSOCIATION

Building the Foundation for Industry Standards

Search

June 14, 2005

## Main Menu
- Home
- Events
- How to Join
- Industry Terms
- Disclaimer

## Members Only
- Super Search
- Members List
- Legislative Donors
- Insurance
- Laws
  - Federal Laws
  - State Laws
- Court Decisions
  - Federal Cases
  - State Cases
- Newsletter
- Archives
- UDB Program
- Member Calendar
- Your Account

## Other Options
- Dictionary
- FAQ

### Who's Online

There are currently, 3 guest(s) and 0 member(s) online.

You are an Anonymous user. Members can login by clicking here

## This Just in...

**Debt Buyers' Association 9th Annual DBA Conference
February, 2006 in Las Vegas, NV
The Mirage Casino - Hotel**

**Click here for past event information.**

## Who We Are... And What We Offer

Industry Professionals, Networked and dedicated to building a reliable and credible market for delinquent receivables.

...a code of ethics
Bringing a code of ethics, standards and reliability to an evolving market place.

...networking opportunities
Network with peers, sellers and industry service providers.

...educational resource
for members; strengthen knowledge and increase professional growth.

## Reasons To Join

1. Industry Code of Ethics
2. Create a fair and equitable market place.
3. Network with peers: bi-monthly conference calls, annual conventions, periodic tie-in meetings.
4. Gain insight into a new era.
5. Keep apprised of latest breaking industry news.
6. Educational opportunities.
7. Resource for buyers and sellers.
8. Support industry legislative issues.
9. SuperSearch: Searchable database of buyers and sellers.

### Login

Nickname

Password

Login

Don't have a password yet? DBA members can Email us and get one created.

If you are not a DBA member you may be able to join by filling out the application.

Forgot your password? Click here to retrieve it

### Contact Us

10440 Pioneer
Suite #2
Santa Fe Springs
CA 90670
(562) 903-7222

All logos and trademarks on this site are the property of their respective owners. All comments and stories are owned by the people posting them. The Debt Buyers' Association is not responsible for, nor do we necessarily agree with or endorse their content and/or the opinions expressed therein. Other data and information © 2001 Debt Buyers' Association

# APPENDIX S

# COLLECTION ADVISOR
### CREDIT, BILLING RECEIVABLES & RECOVERY

**Be seen and recognized by 24,000 owner/managers of collection offices.**

Web: *www.collectionadvisor.com*

eMail: *kris@collectionadvisor.com*
*jason@collectionadvisor.com*

**888-610-1144    Fax: 817-442-1177**

*Collection Advisor* is mailed to 24,000 qualified collection professionals who own or manage collection offices. With pass-along readership, the total publication audience reaches more than 72,000.

# Rate Card Specifications



## Black & White

| Size | 18x | 12x | 6x | 3x | 1x |
|------|-----|-----|-----|-----|-----|
| **Full Page** | 3,400 | 3,600 | 3,800 | 4,000 | 4,200 |
| **⅔ Page** | 3,200 | 3,400 | 3,500 | 3,700 | 3,900 |
| **½ Page** | 2,700 | 2,800 | 3,000 | 3,100 | 3,300 |
| **⅓ Page** | 1,700 | 1,800 | 1,900 | 2,000 | 2,100 |
| **⅙ Page** | 1,200 | 1,250 | 1,300 | 1,400 | 1,500 |

· Guaranteed rate protection for the duration of the insertion order.
· Rates based on consecutive insertions.

## Color
4 color process add $1,400; 2 color add $800

## Special Position
Add 15% (Covers add 20%)

## Agency Commission
15% off gross rate for recognized agencies

## Inserts
Inserts are a great way to reach your direct mail audience at a fraction of the cost. In most cases, the cost is less than the postage cost to do the mailing yourself. Priced at full-page rates per ½ oz.

*Collection Advisor* publishes 6 targeted issues per year.

## Deadlines

| ISSUE | MAIL DATE | CLOSING DATE |
|-------|-----------|--------------|
| Jan./Feb. | 01/01 | 11/15 |
| March/April | 03/01 | 01/15 |
| May/June | 05/01 | 03/15 |
| July/Aug. | 07/01 | 05/15 |
| Sept./Oct. | 09/01 | 07/15 |
| Nov./Dec. | 11/01 | 09/15 |

| AD SIZES | LIVE AREA | TRIM | BLEED |
|----------|-----------|------|-------|
| Full Page Spread | 15 x 10 | 16 X 10½ | 16¼ x 10¾ |
| Full Page | 7 x 10 | 8 X 10½ | 8¼ x 10¾ |
| ⅔ Page | 5 x 10 | | |
| ½ Page | 7 x 4½ | | |
| ⅓ Page | 4⅝ x 4⅞ | | |
| ⅙ Page | 3⅜ x 3 | | |

## Specifications
**Trim Size:** 8" x 10½"
**Printing:** Web Offset
**Materials:** Digital files only.
**Electronic Specs:**
*File Formats* – EPS, JPEG, BMP or TIFF (Macintosh compatible).
*Media* - 3.5: Mac disks, Zip or CD.
*Applications* – Maximum of Quark 4.1.1, InDesign CS, PageMaker 6, Illustrator 10, Photoshop 7.

### Tips:
· Send a final laser proof of your ad so we may verify all images and fonts, and text flow.
· Include all your original graphics files. Without these files, your placed images will print as low-resolution "jaggies."
· For best results, scale, crop, and/or rotate your graphic images in Photoshop before importing them or placing them into your layout program.
· Include all fonts used. Please use only Postcript fonts. TrueType fonts are unpredictable. Quark users: Do not "style" fonts in the measurements palette (Clicking the B or I to bold or italicize). Fonts styled in this way will not print correctly.

Please Send ad materials to:
CPA Magazine, 218 W. Wall Street, Grapevine, TX 76051, or call 888-610-1144 for FTP instructions.

# COLLECTION ADVISOR
### CREDIT, BILLING RECEIVABLES & RECOVERY



**Collection Advisor** is mailed to 24,000 qualified collection professionals who own or manage collection offices. With pass-along readership, the publication reaches an audience of more than 72,000.

**Be seen and recognized by 24,000 owner/managers of collection offices.**

**Web:** www.collectionadvisor.com
**eMail:** scott@collectionadvisor.com
**214-739-3060    Fax: 214-739-3061**

# Editorial Calendar

| Issue Dates | Features | Software Reviews | Product Round-Ups |
|---|---|---|---|
| **Jan/Feb 2006**<br>**Municipalities & Utilities**<br>Editorial Due:  10/19<br>Ad Space Reserved:  11/15<br>Ad Materials Due:  11/30 | · Technology Trends for '06 | · Medical<br><br>· First-Party Receivables | · Web-Enabled Collections<br><br>· Web-Enabled Skip Tracing |
| **Mar/Apr 2005**<br>**Commercial Collections**<br>Editorial Due:  12/21<br>Ad Space Reserved:  1/15<br>Ad Materials Due:  1/25 | · Employee Training | · Web-Enabled Collections<br><br>· Web-Enabled Skip Tracing | · Scoring<br><br>· Mail Services<br><br>· Small Office Collections |
| **May/June 2005**<br>**Credit Card Collections**<br>Editorial Due:  2/16<br>Ad Space Reserved:  3/15<br>Ad Materials Due:  3/30 | · Debt Buying & Selling | · Scoring<br><br>· Mail Services<br><br>· Small Office Collections | · Mid-Range Collections<br><br>· Electronic Payments |
| **July/Aug 2005**<br>**Mortgage Collections**<br>Editorial Due:  4/15<br>Ad Space Reserved:  5/15<br>Ad Materials Due:  5/28 | · Scripts & Letters<br><br>· Leaders in the Profession | · Mid-Range Collections<br><br>· Electronic Payments | · Skip Tracing<br><br>· Hi-End Collection<br>Software |
| **Sept/Oct 2005**<br>**Cable & Phone**<br>Editorial Due:  6/22<br>Ad Space Reserved:  7/15<br>Ad Materials Due:  7/27 | · Succession Planning | · Skip Tracing<br><br>· Hi-End Collection<br>Software | · Predictive Dialers<br><br>· Banking & Legal<br>Collection Software |
| **Nov/Dec 2005**<br>**Medical Collections**<br>Editorial Due:  8/17<br>Ad Space Reserved:  9/15<br>Ad Materials Due:  9/28 | · CAT Expo Agenda<br><br>· Top 100 Products | · Predictive Dialers<br><br>· Banking & Legal<br>Collection Software | · Medical<br><br>· First-Party Receivables |